IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA, | |
| Plaintiff, | |
| v. | No. 12 C 8733 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER and DR. DAVID SONG, individually, | Judge James B. Zagel<br>Magistrate Judge Sidney I. Schenkier |
| Defendants. | |

## ANSWER OF DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER TO COMPLAINT OF PLAINTIFF DR. MARIA ARTUNDUAGA

Defendant, University of Chicago Medical Center ("Defendant UCMC" or "Defendant"),

for its Answer to the Complaint of Plaintiff Dr. Maria Artunduaga, states as follows:

## ALLEGATION NO. 1:

This is an action for damages caused by Defendants' discrimination and a hostile work environment on the basis of national origin and unlawful retaliation against Dr. Artunduaga, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 (hereinafter "Section 1981").

## ANSWER:

Defendant UCMC admits that this is an action against it and Defendant Dr. David Song

("Defendant Song") for national origin discrimination and retaliation under Section 1981.

Defendant UCMC denies that any such violation occurred and denies all remaining allegations.

## ALLEGATION NO. 2:

Dr. Artunduaga also brings claims of defamation *per se* against Dr. Song, individually, and UCMC.

**ANSWER:**

Defendant UCMC admits that Plaintiff brings claims of defamation *per se* against it and Defendant Song. Further answering, Defendant UCMC states that it has moved to dismiss those claims.

**ALLEGATION NO. 3:**

Finally, Dr. Artunduaga brings a claim of tortious interference with employment and a claim of prospective economic advantage against Dr. Song.

**ANSWER:**

Defendant UCMC admits that Plaintiff bring claims of tortious interference with employment and interference with prospective economic advantage against Defendant Song.

<strong>JURISDICTION AND VENUE</strong>

**ALLEGATION NO. 4:**

This Court has jurisdiction of this action under 28 U.S.C. § 1331. This Court may exercise supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**

Admitted.

**ALLEGATION NO. 5:**

The unlawful employment practices and tortious acts described herein were committed within the State of Illinois, at Defendant UCMC's Chicago campus. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**ANSWER:**

Admitted that Plaintiff was a Resident at Defendant Chicago campus and within the State of Illinois. Further admitted that venue in this District is proper. All remaining allegations are denied.

## PARTIES

**ALLEGATION NO. 6:**

Dr. Artunduaga was employed by Defendant UCMC as a Physician Resident from on or about June 20, 2011 until on or about June 30, 2012.

**ANSWER:**

Admitted that Plaintiff was appointed as a Resident at Defendant from June 20, 2011 to

June 30, 2012. All remaining allegations are denied.

**ALLEGATION NO. 7:**

Dr. Artunduaga resides in Chicago, Illinois, in this judicial district.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

**ALLEGATION NO. 8:**

Defendant UCMC is an Illinois corporation engaged in the health care industry.  Its principal office is located at 5841 South Maryland Avenue, Chicago, Illinois 60637.

**ANSWER:**

Admitted; but, further answering, Defendant states that it is an Illinois not-for-profit

corporation.

**ALLEGATION NO. 9:**

Throughout Dr. Artunduaga's employment with UCMC, Defendant Dr. Song was her supervisor.

**ANSWER:**

Defendant admits that Defendant Song was the Program Director for Plaintiff's program

and as such had supervisory responsibility for her during the time period she was a Resident at

Defendant.  All remaining allegations are denied.

CHICAGO/#2393022.1

## FACTUAL ALLEGATIONS

**ALLEGATION NO. 10:**

Dr. Artunduaga was born and raised in Neiva, Colombia, and attended combined college and medical school at Pontificia Universidad Javeriana, one of the top medical schools in Colombia.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph.

**ALLEGATION NO. 11:**

Dr. Artunduaga's first language is Spanish.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph.

**ALLEGATION NO. 12:**

Dr. Artunduaga received a national scholarship for her academic achievements and was chosen to participate in the "Scholars for Colombia" program. She graduated in the top-10 of her medical school class.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph.

**ALLEGATION NO. 13:**

Dr. Artunduaga finished her medical school training at Harvard Medical School, Mount Sinai School of Medicine, and Baylor College of Medicine in 2003, and received "honors" during her clinical rotations.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph.

**ALLEGATION NO. 14:**

Dr. Artunduaga graduated from medical school in December 2003, and practiced medicine in Colombia for approximately 3 years.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

**ALLEGATION NO. 15:**

From 2007 through 2011, Dr. Artunduaga was enrolled in a post-doctoral research program in human genetics at Harvard Medical School in Boston, Massachusetts. She completed her post-doctoral work in May 2011.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

**ALLEGATION NO. 16:**

Dr. Artunduaga published her research in multiple high profile publications and was invited to speak at national and international conferences about her work from 2007 to 2011.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

**ALLEGATION NO. 17:**

In 2010, Dr. Artunduaga completed a 2-month surgical sub-internship at the University of Washington, and received very strong letters of recommendations from her supervising physicians.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

CHICAGO/#2393022.1

**ALLEGATION NO. 18:**

From October 2010 through January 2011, eighteen (18) surgical training programs heavily recruited Dr. Artunduaga.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

**ALLEGATION NO. 19:**

In March 2011, Dr. Artunduaga was one of two plastic and reconstructive surgery residents "matched" to UCMC pursuant to the matching program administered by the Accreditation Council for Graduate Medical Education ("ACGME").

**ANSWER:**

Admitted.

**ALLEGATION NO. 20:**

Dr. Artunduaga was the only international medical graduate in the country who was accepted to an integrated training program in Plastic and Reconstructive Surgery for the 2011 – 2012 academic year.

**ANSWER:**

Denied.

**ALLEGATION NO. 21:**

On May 18, 2011, Dr. Artunduaga obtained rare U.S. residency pursuant to the National Interest Waiver program from the United States Customs and Immigration Service, which deemed her an alien of "extraordinary ability" in light of the scientific contributions she made during her post-doctoral work.

**ANSWER:**

Denied.

**ALLEGATION NO. 22:**

At all times relevant to this Complaint, Dr. Song served as the Program Director of UCMC's Residency Program and Chief of Plastic and Reconstructive surgery,

-6-

**ANSWER:**

    Admitted.

**ALLEGATION NO. 23:**

    On June 20, 2011, Dr. Artunduaga began her employment as a PRS Physician Resident ("Resident") at UCMC.

**ANSWER:**

    Admitted that under her contract as a Resident Plaintiff's appointment commenced on June 20, 2011. All remaining allegations are denied.

**ALLEGATION NO. 24:**

    At the same time, Dr. Deana Shenaq joined UCMC as the only other first year PRS Resident.

**ANSWER:**

    Admitted.

**ALLEGATION NO. 25:**

    Dr. Shenaq's first language is English.

**ANSWER:**

    Denied.

**ALLEGATION NO. 26:**

    Dr. Shenaq received her medical training in the United States.

**ANSWER:**

    Admitted.

**ALLEGATION NO. 27:**

    Dr. Shenaq's national origin is not Colombia.

**ANSWER:**

    Admitted.

**ALLEGATION NO. 28:**

Throughout her employment with UCMC, Dr. Artunduaga performed her job satisfactorily.

**ANSWER:**

Denied.

**ALLEGATION NO. 29:**

During her employment, Dr. Artunduaga was the only first year Resident in her class of 18 Residents in the Department of Surgery whose first language was not English.

**ANSWER:**

Denied.

**ALLEGATION NO. 30:**

During her employment, Dr. Artunduaga was the only first year Resident in her class of 18 Residents in the Department of Surgery who attended medical school in a foreign, non-English speaking country.

**ANSWER:**

Admitted that Plaintiff was the only first year Resident in her class of 18 Residents in the

Department of Surgery who attended medical school in a foreign, non-English speaking country.

All remaining allegations are denied.

**ALLEGATION NO. 31:**

During her employment, Dr. Artunduaga was the only Resident in the Section of Plastic and Reconstructive Surgery who received medical training in a language other than English.

**ANSWER:**

Denied.

**ALLEGATION NO. 32:**

Throughout her employment, Dr. Artunduaga's co-Residents mocked her on the basis of her national origin by imitating her Spanish accent.

**ANSWER:**

Denied.

**ALLEGATION NO. 33:**

Throughout her employment, Dr. Artunduaga's co-Residents made derogatory remarks about Hispanics in front of her. They also made comments about her national origin, including, but not limited to the following:

    a.    In or around October, 2011, Dr. Melinda Stack, Resident, suggested that Dr. Artunduaga dress up as "Dora the Explorer," a Hispanic children's cartoon character, for Halloween;

    b.    Dr. Stack and other Residents mocked Dr. Arunduaga's Colombian national origin by reciting certain phrases in Spanish from "Dora the Explorer"; and

    c.    Other Residents made derogatory references about Colombia, specifically regarding the Revolutionary Armed Forces of Colombia, or "FARC," including statements such as "In Colombia, people treat this group as if they were heroes," and "The only remarkable thing about Colombia is the FARC terrorist group."

**ANSWER:**

Denied.

**ALLEGATION NO. 34:**

Throughout her employment, Dr. Artunduaga received less favorable assignments than her first year co-Residents; for example, she was consistently assigned to cover undesirable clinics that other Residents or nurses did not want to attend.

**ANSWER:**

Denied.

**ALLEGATION NO. 35:**

Throughout her employment, Dr. Artunduaga was excluded from academic activities and social events. For example:

    a.    She was not allowed to participate in surgical skills sessions with her co-Resident Dr. Deana Shenaq,

    b.    She did not receive "protected time" to attend the plastic surgery core curriculum; and

       c.      She was the only Resident excluded from the 2012 – 2013 plastic surgery recruitment season.

**ANSWER:**

Denied.

**ALLEGATION NO. 36:**

Residents such as Dr. Artunduaga gain clinical experience, which is essential to their surgical training, primarily by working on surgical cases.

**ANSWER:**

Denied.

**ALLEGATION NO. 37:**

From the outset of her employment at UCMC, before her work could be evaluated, Dr. Artunduaga was assigned significantly fewer surgical cases than her non-Colombian co-Residents. For example:

       a.      During the week of July 11, 2011, Dr. Artunduaga received 2 surgical cases; her non-Colombian co-Resident received 9;

       b.      During the week of July 17, 2011, Dr. Artunduaga received 2 surgical cases; her non-Colombian co-Resident received 11;

       c.      During the week of July 25, 2011, Dr. Artunduaga received no surgical cases; her non-Colombian co-Resident received 11;

       d.      During the week of September 12, 2011, Dr. Artunduaga received no surgical cases; her non-Colombian co-Resident received 4;

       e.      During the week of September 26, 2011, Dr. Artunduaga received no surgical cases; her non-Colombian co-Resident received 3.

**ANSWER:**

Denied.

**ALLEGATION NO. 38:**

In July 2011, Dr. Artunduaga was assigned to work under the supervision of Dr. Haejin In, Surgical Oncology fellow.

-10-

**ANSWER:**

Admitted.

**ALLEGATION NO. 39:**

In July 2011, Dr. In ignored her during rounds, excluded her from teamwork and assigned her almost no surgical cases during a rotation where first year Residents are expected to complete between 25 and 30 surgical cases. Instead, Dr. In assigned Dr. Artunduaga duties that were more consistent with a personal assistant rather than a first year surgical Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 40:**

The unequal distribution of surgical cases deprived Dr. Artunduaga of clinical experience that was essential to her success as a Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 41:**

In August 2011, Dr. Artunduaga was assigned to work under the supervision of Dr. John Seal, General Surgery Chief Resident.

**ANSWER:**

Admitted.

**ALLEGATION NO. 42:**

In August 2011, Dr. Seal made several remarks about Dr. Artunduaga's Spanish accent, and claimed that she lacked "communication skills."

**ANSWER:**

Denied.

**ALLEGATION NO. 43:**

In August 2011, Dr. Seal assigned significantly more clinical cases to non-Colombian first year co-Residents than he assigned to Dr. Artunduaga. For example:

a.  During the week of August 1, 2011, Dr. Seal assigned 7 cases to Dr. Artunduaga, and 9 cases to the non-Colombian first-year co-Resident;

b.  During the week of August 8, 2011, Dr. Seal assigned 6 cases to Dr. Artunduaga, and 11 cases to the non-Colombian first-year co-Resident;

c.  During the week of August 15, 2011, Dr. Seal assigned 5 cases to Dr. Artunduaga, and 9 cases to the non-Colombian first-year co-Resident; and

d.  During the week of August 22, 2011, Dr. Seal assigned 5 cases to Dr. Artunduaga, and 9 cases to the non-Colombian first-year co-Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 44:**

During rounds, Dr. Seal often ignored Dr. Artunduaga entirely, and would speak only to other first-year Residents and medical students.

**ANSWER:**

Denied.

**ALLEGATION NO. 45:**

Dr. Seal's treatment of Dr. Artunduaga deprived her of clinical experience that was essential to her success as a Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 46:**

In August 2011, Dr. Seal told Dr. Sara Dickie, Plastic Surgery Chief Resident, that Dr. Artunduaga did not lack the requisite knowledge or motivation to succeed as a Resident, and that he believed that she was "teachable."

**ANSWER:**

Admitted.

**ALLEGATION NO. 47:**

During that discussion, Dr. Seal told Dr. Dickie that one of Dr. Artunduaga's main problems was her Spanish accent.

CHICAGO/#2393022.1

**ANSWER:**

Denied.

**ALLEGATION NO. 48:**

Dr. Dickie forwarded this assessment, along with other feedback from Dr. Seal, to Dr. Song in an e-mail dated August 31, 2011.

**ANSWER:**

Admitted that Dr. Dickie forwarded an email dated August 31, 2011 to Defendant Song containing assessments of Plaintiff's performance by Dr. Seal and others. All remaining allegations are denied.

**ALLEGATION NO. 49:**

In August 2011, Dr. Nora Jaskowiak stated in an evaluation of Dr. Artunduaga's performance that "there seem to be some critical issues that may be cultural."

**ANSWER:**

Admitted that in August 2011 Dr. Nora Jaskowiak stated in an evaluation: "There seem to be some critical issues that may be cultural – as she has not worked in the American medical system before." All remaining allegations are denied.

**ALLEGATION NO. 50:**

In September 2011, Dr. Artunduaga complained to Dr. Song about national origin discrimination and the hostile work environment. Dr. Song responded by informing Dr. Artunduaga that she was not a "good cultural fit" to UCMC. He told Dr. Artunduaga that she had to begin a rotation in Plastic Surgery so that the department's faculty could "have a closer look at her performance."

**ANSWER:**

Denied.

**ALLEGATION NO. 51:**

There are no faculty evaluations from Plastic Surgery attending physicians from October 2011.

**ANSWER:**

Denied.

**ALLEGATION NO. 52:**

In November 2011, Dr. Mark Ferguson, Professor of Surgery, dismissed Dr. Artunduaga from the operating room multiple times due to her short stature. He also claimed that Dr. Artunduaga's Spanish accent was a problem, and that she lacked "communication skills."

**ANSWER:**

Admitted that Dr. Ferguson stated in an email that Plaintiff's "areas of weakness are numerous and include lack of technical skills, basic medical knowledge, organizational/prioritization skills, communication skills and information processing abilities." All remaining allegations are denied.

**ALLEGATION NO. 53:**

Beginning in late July 2011, Dr. Artunduaga complained about the unequal case distribution, training opportunities and other disparate treatment she received due to her national origin.

**ANSWER:**

Denied.

**ALLEGATION NO. 54:**

Specifically, between July and October 2011, Dr. Artunduaga complained to Dr. Justine Lee, Dr. Sara Dickie, Dr. Jonathan Bank, Dr. Trang Nguyen, Dr. Essie Kueberuwa, and Dr. Deana Shenaq about the hostile work environment and discrimination based upon her national origin.

**ANSWER:**

Denied.

**ALLEGATION NO. 55:**

Despite her multiple complaints, UCMC took no action to remedy the hostile work environment and discrimination. Rather, things continued to deteriorate as Dr. Artunduaga's complaints continued.

-14-

**ANSWER:**

Denied.

**ALLEGATION NO. 56:**

In November 2011, both Dr. Artunduaga and her husband contacted Jonathan Rothstein, UCMC Director of Labor Relations. In an e-mail dated November 21, 2011, Mr. Rothstein explained that UCMC's Office of Employee & Labor Relations "does not deal with any issues related to the graduate medical education program or participants in that program."

**ANSWER:**

Admitted that in November 2011 Plaintiff's husband contacted Jonathan Rothstein,

Defendant UCMC's Director, Labor Relations and that he sent Plaintiff's husband an email

containing the quoted language. All remaining allegations are denied.

**ALLEGATION NO. 57:**

Mr. Rothstein took no steps on behalf of UCMC to address Dr. Artunduaga's complaints about discrimination and the hostile work environment, nor did he tell her which department or office would properly address her complaints.

**ANSWER:**

Denied.

**ALLEGATION NO. 58:**

On November 2, 2011, Dr. Artunduaga met with Dr. Song, Dr. Julie Park, Assistant Professor of Surgery, and Akilah Williams, UCMC Residency Program Coordinator, to discuss her performance as a Resident.

**ANSWER:**

Admitted.

**ALLEGATION NO. 59:**

During the November 2, 2011 meeting, Drs. Song and Park explained that UCMC was considering placing Dr. Artunduaga on probation.

**ANSWER:**

Admitted.

-15-

**ALLEGATION NO. 60:**

Dr. Song summarized the topics discussed during the November 2, 2011 meeting in a memo dated November 2, 2011 (hereinafter, the "November 2 Memo").

**ANSWER:**

Admitted.

**ALLEGATION NO. 61:**

In the November 2 Memo, Dr. Song wrote the following statements:

a.      "It was unanimous amongst the numerous evaluators across the Department of Surgery, particularly within our section, that the issues Dr. Artunduaga has will be extremely difficult to correct within the time allotted during residency period."

b.      "[I]t was quite clear to all of the reviewers that Surgery, and in particular Plastic and Reconstructive Surgery, just would not be the best fit for Dr. Artunduaga."

c.      "[Dr. Artunduaga] feels that she has improved, however, no one else in the entire section and across the department has recognized that fact."

**ANSWER:**

Admitted.

**ALLEGATION NO. 62:**

Dr. Song's statements quoted in Paragraphs 61(a) through (c) above were false.

**ANSWER:**

Denied.

**ALLEGATION NO. 63:**

The November 2 Memo was delivered to Dr. Artunduaga on November 4, 2011.

**ANSWER:**

Admitted.

**ALLEGATION NO. 64:**

As of November 2, 2011, Dr. Edwin Kaplan and Dr. Peter Angelos had provided Dr. Artunduaga with positive evaluations.  Specifically:

a.     Dr. Edwin Kaplan, Department of Surgery, wrote in an evaluation dated September 6, 2011 that "[Dr. Artunduaga] is good now but she will make a fine resident as she gains more experience and gains more confidence."

b.     Dr. Peter Angelos, Department of Surgery, wrote in an evaluation dated October 13, 2011 that "despite [certain] weaknesses, she improved during the rotation.   I am convinced that her operative skills will improve since I saw improvement over the course of the month."  Dr. Angelos also stated that "[h]er ability to work up patients in clinic strengthened throughout the rotation.  She will need some monitoring, but I believe that she has the intelligence and desire to improve that she [sic] should be given a chance to do so."

**ANSWER:**

Denied.

**ALLEGATION NO. 65:**

In early November 2011, Dr. Song identified critical mistakes made by Dr. Jonathan Lusardi, a non-Colombian first year co-Resident.  Dr. Song said that Dr. Artunduaga displayed clinical deficiencies because she did not supervise Dr. Lusardi, and that this played a part in the decision to place Dr. Artunduaga on probation.

**ANSWER:**

Denied.

**ALLEGATION NO. 66:**

Dr. Artunduaga provided Dr. Song with a detailed explanation that included Dr. Lusardi's responsibility for the mistakes identified by Dr. Song.

**ANSWER:**

Denied.

**ALLEGATION NO. 67:**

Dr. Lusardi was not investigated or disciplined for his involvement in those mistakes.

**ANSWER:**

Denied.

**ALLEGATION NO. 68:**

In the November 2 Memo, Dr. Song wrote about "several misses" that happened during the October rotation, held Dr. Artunduaga solely responsible for those misses, and did not mention Dr. Lusardi's involvement in the same.

**ANSWER:**

Admitted that Defendant Song wrote about "several" misses that happened during the October rotation. All remaining allegations are denied.

**ALLEGATION NO. 69:**

On November 15, 2011, upon Dr. Song's recommendation, UCMC formally placed Dr. Artunduaga on probation.

**ANSWER:**

Defendant admits that it placed Plaintiff probation on November 15, 2011. All remaining allegations are denied.

**ALLEGATION NO. 70:**

Dr. Artunduaga remained on probation until the termination of her employment with UCMC.

**ANSWER:**

Admitted.

**ALLEGATION NO. 71:**

Due to the nature of the ACGME matching process, a medical resident who has been placed on probation has virtually no chance of being accepted into any other residency program, should they be dismissed from their original program. As a result, probation and termination constitute a virtual death sentence for a medical career.

**ANSWER:**

Denied.

**ALLEGATION NO. 72:**

After placing Dr. Artunduaga on probation and continuing until the end of her employment, Dr. Song and UCMC continued their refusal to provide her with any meaningful opportunity to gain essential experience as a Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 73:**

These efforts included removing Dr. Artunduaga from her clinical duties entirely or allowing her to participate only under "heightened supervision" with almost no clinical assignments during April 2012, and assigning an "independent study program" which consisted of reading and summarizing a plastic surgery textbook during the last two months of her employment.

**ANSWER:**

Denied.

**ALLEGATION NO. 74:**

Despite Dr. Song's and UCMC's efforts to prevent her from doing so, Dr. Artunduaga did display significant improvement from the time she was placed on probation through the end of her employment with UCMC.

**ANSWER:**

Denied.

**ALLEGATION NO. 75:**

On or about March 27, 2012, Dr. Song informed Dr. Artunduaga that UCMC would not renew her contract for a second year.

**ANSWER:**

Admitted.

**ALLEGATION NO. 76:**

In reaching this decision, Dr. Song and UCMC intentionally disregarded a significant number of evaluations stating that Dr. Artunduaga's performance had improved, that her performance was satisfactory, and that she had not been provided with an adequate opportunity to learn the requisite skills.

**ANSWER:**

Denied.

**ALLEGATION NO. 77:**

Due to the nature of the ACGME matching process, a medical resident who is dismissed from her residency program will not likely be accepted into any other residency program without a letter of recommendation from her previous program.

**ANSWER:**

Denied.

**ALLEGATION NO. 78:**

Dr. Song has refused to provide Dr. Artunduaga with a letter of recommendation for the sole purpose of applying to other residency programs.

**ANSWER:**

Denied.

**ALLEGATION NO. 79:**

Had Dr. Artunduaga completed the 6-year residency program at UCMC, she would have been in a position to begin work in a high-paying, prestigious position as a plastic surgeon at the end of the program.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief about the truth

of the allegations in this Paragraph.

**ALLEGATION NO. 80:**

The November 2 Memo containing Dr. Song's false statements in Paragraphs 60(a) through (c) was distributed to approximately twenty (20) UCMC employees between November 2011 and May 2012.

**ANSWER:**

Denied.

**ALLEGATION NO. 81:**

Dr. Song's false statements quoted in Paragraphs 61(a) through (c) indicate that Dr. Artunduaga was unable to perform her employment duties as a Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 82:**

Dr. Song's false statements quoted in Paragraphs 61(a) though (c) indicate that Dr. Artunduaga lacks certain professional abilities.

**ANSWER:**

Denied.

**ALLEGATION NO. 83:**

During a grievance hearing that took place on May 16, 2012, Dr. Song read aloud the e-mail he received from Dr. Dickie on August 31, 2011 regarding Dr. Seal's feedback.

**ANSWER:**

Admitted.

**ALLEGATION NO. 84:**

In reading the August 31, 2011 email aloud, Dr. Song included a critical assessment of Dr. Artunduaga that Dr. Dickie had not articulated.

**ANSWER:**

Denied.

**ALLEGATION NO. 85:**

Specifically, the original quote reads: "Maria's main problems stem from communication, which he [Dr. Seal] detailed as such:

- accent

- a jumbled and somewhat frenetic thought process that comes out when presenting patients

- too much confidence when it comes to patient management

- with patients she comes across as abrupt, arrogant, and lacking in empathy"

**ANSWER:**

Denied.

**ALLEGATION NO. 86:**

When Dr. Song read this e-mail aloud during the May 16, 2012 grievance hearing, he said: "Maria's main problems stem from communication, jumbled and somewhat frenetic thought process in presenting patients, too much confidence when it comes to patient management <u>without the knowledge</u> she comes across as abrupt, arrogant and lacking empathy."

**ANSWER:**

Denied.

**ALLEGATION NO. 87:**

Dr. Song's assertion that the August 31, 2011 e-mail stated that Dr. Artunduaga lacked knowledge was false.

**ANSWER:**

Denied.

**ALLEGATION NO. 88:**

Dr. Song inaccurately recited Dr. Dickie's e-mail in front of Dr. John McConville, Dr. Margaret Mueller, Dr. Eric Beck, Dr. Michael Hernandez, Dr. Antonio Copete, and attorneys Krista Curell, Anne Duprey, and Jane McAtee.

**ANSWER:**

Denied.

**ALLEGATION NO. 89:**

Dr. Song's inaccurate recitation of Dr. Dickie's August 31, 2011 e-mail falsely indicated that Dr. Artunduaga lacked the knowledge required to perform her employment duties as a Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 90:**

In a letter dated April 30, 2012, Dr. Song stated that Dr. Artunduaga had "continued to exhibit disruptive and unprofessional behavior," and that she had "failed to fully participate in the Endocrine assignment."

**ANSWER:**

Admitted.

**ALLEGATION NO. 91:**

In the same letter, Dr. Song told Dr. Artunduaga that "[a]ny further incidents of unprofessional behavior, insubordination, harassment, threats or dereliction of your responsibilities will result in your immediate termination from the program."

**ANSWER:**

Admitted.

**ALLEGATION NO. 92:**

The statements recounted in Paragraphs 90 and 91, which claim that Dr. Artunduaga was disruptive and lacked professionalism, are false.

**ANSWER:**

Denied.

**ALLEGATION NO. 93:**

Dr. Song sent his April 30, 2012 letter to Dr. Artunduaga with copies to Barry Kamin, Director of Graduate Medical Education, and Jane McAtee, Associate General Counsel.

**ANSWER:**

Admitted.

**ALLEGATION NO. 94:**

Dr. Song's false statements recounted in Paragraphs 90 and 91 indicate that Dr. Artunduaga was unable to perform her employment duties as a Resident.

**ANSWER:**

Denied.

**ALLEGATION NO. 95:**

Dr. Song's false statements recounted in Paragraphs 90 and 91 indicate that Dr. Artunduaga lacks the ability to behave professionally.

**ANSWER:**

Denied.

**ALLEGATION NO. 96:**

Dr. Song relied on the false statements recounted in Paragraphs 61(a) through (c), 86, 90, and 91 to support his decision not to renew Dr. Artunduaga's contract for a second year, intentionally depriving her of the economic advantage she would have gained through continued employment with UCMC.

**ANSWER:**

Denied.

**ALLEGATION NO. 97:**

As a result of Defendants' willful, wanton, and outrageous conduct, Dr. Artunduaga has suffered emotional distress, damage to her reputation, lost employment opportunities, costs, expenses, and diminished earning capacity.

**ANSWER:**

Denied.

**COUNT I – DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
IN VIOLATION OF 42 U.S.C. § 1981 AGAINST UCMC AND DR. SONG**

**ALLEGATION NO. 98:**

Dr. Artunduaga restates and incorporates Paragraphs 1 through 97 as though fully set forth herein.

**ANSWER:**

Defendant UCMC incorporates its answers to Paragraphs 1 through 97 as though fully set forth herein.

**ALLEGATION NO. 99:**

Dr. Artunduaga was deprived of a meaningful opportunity to receive training as a Resident during her employment with Defendants because of her national origin.

**ANSWER:**

Denied.

## ALLEGATION NO. 100:

Dr. Artunduaga was subjected to a hostile work environment during her employment with Defendants because of her national origin.

## ANSWER:

Denied.

## ALLEGATION NO. 101:

As a direct and proximate result of these acts of discrimination and because of the hostile work environment, Dr. Artunduaga has suffered and continues to suffer irreparable injury, including loss of income and other benefits, and has suffered and continues to suffer emotional distress, costs, expenses, and damage to her reputation.

## ANSWER:

Denied.

## ALLEGATION NO. 102:

Defendants' actions in this regard were willful, wanton, and outrageous, warranting the imposition of punitive damages.

## ANSWER:

Denied.

**COUNT II – RETALIATION IN VIOLATION OF SECTION 1981
AGAINST UCMC AND DR. SONG**

## ALLEGATION NO. 103:

Dr. Artunduaga restates and incorporates Paragraphs 1 through 102 as though fully set forth herein.

## ANSWER:

Defendant UCMC restates and incorporates its answers to Paragraphs 1 through 102 as though fully set forth herein.

## ALLEGATION NO. 104:

By terminating Dr. Artunduaga's employment as described above, Defendants have retaliated against Dr. Artunduaga for asserting her right to make and enforce her employment contract regardless of her national origin, in violation of Section 1981.

CHICAGO/#2393022.1

**ANSWER:**

Denied.

**ALLEGATION NO. 105:**

Defendants' retaliation against Dr. Artunduaga was willful, wanton, and outrageous, warranting the imposition of punitive damages.

**ANSWER:**

Denied.

## COUNT III – DEFAMATION *PER SE* AGAINST DR. SONG

Count III is not brought against Defendant UCMC, and therefore it does not require an answer.

## COUNT IV – DEFAMATION *PER SE* AGAINST UCMC

Defendant UCMC has moved to dismiss Count IV, and therefore it does not require an answer.

## COUNT V – INTENTIONAL INTERFERENCE WITH EMPLOYMENT AGAINST DR. SONG

Count V is not brought against Defendant UCMC, and therefore it does not require an answer.

## COUNT VI – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST DR. SONG

Count VI is not brought against Defendant UCMC, and therefore it does not require an answer.

## AFFIRMATIVE DEFENSES

1.      Plaintiff has failed to mitigate her damages.

2.      Plaintiff is not entitled to punitive damages because no supervisor or manager of Defendant UCMC acted with malice or reckless disregard of Plaintiff's rights.

3.      Plaintiff is not entitled to punitive damages because Defendant UCMC has at all times acted in good faith to comply with the laws prohibiting discrimination.

4.      Plaintiff's claims of harassment because of her national origin are barred because Plaintiff unreasonably failed to take advantage of preventative and corrective opportunities provided.

WHEREFORE, Defendant University of Chicago Medical Center prays that the Complaint of Plaintiff Maria Artunduaga be dismissed with prejudice and that it be awarded its costs and attorney's fees and such other relief as the Court deems just and proper.

Respectfully submitted,

UNIVERSITY OF CHICAGO MEDICAL CENTER

By:      s/ Michael G. Cleveland
         One of Its Attorneys

Michael G. Cleveland, Bar No. 00460915
Andrea L. Lewis
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois  60601-1003
T:  +1 (312) 609-7500

Dated:  December 14, 2012

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he caused copies of the foregoing ANSWER OF DEFENDANT UNIVERSITY OF CHICAGO MEDICAL CENTER TO COMPLAINT OF PLAINTIFF DR. MARIA ARTUNDUAGA to be served upon:

Alejandro Caffarelli
Madeline Kate Engel
Caffarelli & Siegel Ltd
Two Prudential Plaza
180 North Stetson, #3150
Chicago, Illinois 60601

by electronic means on December 14, 2012.

s/  Michael G. Cleveland
Michael G. Cleveland