IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA, | |
| Plaintiff, | |
| v. | No. 12 C 8733 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER and DR. DAVID SONG, individually, | Judge James B. Zagel<br>Magistrate Judge Sidney I. Schenkier |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT COUNTS III TO VI OF DEFENDANTS THE UNIVERSITY OF CHICAGO MEDICAL CENTER AND DR. SONG

Plaintiff Dr. Maria Artunduaga was a plastic surgery resident at Defendant University of Chicago Medical Center ("UCMC") for one year, during which time her performance was criticized and she was placed on probation. When she was not given a contract for a second year of residency, she sued UCMC and Dr. David Song, who supervised her, in a six-Count complaint.

Count I is brought against both Defendants and alleges that Plaintiff was discriminated against because of her Colombian national origin in violation of 42 U.S.C. § 1981. Count II is also brought against both Defendants and alleges that she was retaliated against in violation of § 1981 for complaining of national origin discrimination. Defendants UCMC and Dr. Song have answered Counts I and II.

Count III alleges claims of defamation *per se* against Dr. Song, and Count IV alleges that UCMC is responsible for Dr. Song's alleged defamation *per se* on the basis of *respondeat*

*superior*.  Defendants have moved to dismiss those Counts, and this memorandum is submitted in support of their motion.

Counts V and VI are brought against Dr. Song.  Count V alleges that he intentionally interfered with Plaintiff's legitimate expectation of continued employment with UCMC.  Count VI alleges that he interfered with Plaintiff's reasonable expectation of obtaining gainful employment after completing her residency.  Dr. Song has moved to dismiss both those Counts, and this Memorandum is also submitted in support of his motion.

## I.    COMPLAINT ALLEGATIONS

Plaintiff's Complaint alleges the following:[1]

In March 2011, Plaintiff matched to the Plastic and Reconstructive Surgery program at UCMC pursuant to the matching program administered by the American Council of Graduate Medical Education.  (Cmplt. ¶ 19.)  Plaintiff was a Resident in the program from June 20, 2011 to June 30, 2012.  (Cmplt. ¶ 6.)  Dr. Song was the Program Director, chief of Plastic and Reconstructive Surgery and her supervisor.  (Cmplt. ¶¶ 9, 22.)  The program is six years long. (Cmplt. ¶ 79.)

On November 2, 2011, Dr. Song and others met with Plaintiff to discuss her performance as a Resident.  (Cmplt. ¶ 58.)  He informed her that UCMC was considering placing her on probation.  (Cmplt. ¶ 59.)  That same day, Dr. Song summarized the meeting in a memo that contains three statements, set out in the Argument section of this Memorandum, that Plaintiff alleges are "false" and "indicate that she was unable to perform her duties as Resident" and "lacks certain professional abilities."  (Cmplt. ¶¶ 61, 62, 81, 82.)  Plaintiff alleges that this memo was distributed to approximately 20 UCMC employees between November 2011 and May 2012

---

[1] As required, Defendants accept as true the well-pleaded allegations of Plaintiff's Complaint for the purposes of this motion only.

CHICAGO/#2393951.5

but does not state who made the distribution or identify the employees.  (Cmplt. ¶ 80.)  A copy of the memo is attached as Exhibit 1.[2]

Plaintiff was placed on probation on November 15, 2011.  (Cmplt. ¶ 69.)  On March 27, 2012, Dr. Song informed her that UCMC would not renew her contract for a second year. (Cmplt. ¶ 75.)

Dr. Song sent Plaintiff a letter dated April 30, 2012 containing statements, also set out in the Argument section of this Memorandum, that Plaintiff alleges are "false" and "indicate that she was unable to perform her duties as a Resident" and "lacks the ability to behave professionally."  (Cmplt. ¶¶ 94, 95.)  Dr. Song sent copies of this letter to Barry Kamin, Director of Graduate Medical Education and Jane McAtee, Associate General Counsel.  (Cmplt. ¶ 83.)  A copy of the letter is Exhibit 2 to this Memorandum.

At a grievance hearing held on May 16, 2012, Dr. Song read aloud an August 31, 2011 email containing critical comments about Plaintiff's performance by General Surgery Chief Resident, John Seal.  (Cmplt. ¶ 83.)  In reading the email, Dr. Song included a critical assessment of Plaintiff's performance that was not articulated in the email.  (Cmplt. ¶¶ 85, 86.) Plaintiff alleges that it was false that the email contained the statement recited by Dr. Song and that his "inaccurate recitation of the email indicated that Plaintiff lacked the knowledge necessary for her to perform her duties as a Resident."  (Cmplt. ¶¶ 87, 89.)  The statement Plaintiff complains of is set out in the Argument section of this Memorandum, and a copy of the email is attached as Exhibit 3.  Present when Dr. Song read the email were five doctors and three attorneys.  (Cmplt. ¶ 88.)

---

[2] Because this memo and the other documents Defendants attach to this brief are referred to in the Complaint and central to Plaintiff's claims, the Court may consider them without converting this motion to one for summary judgment.  *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

3

Plaintiff alleges that she had a reasonable expectation of continuing as a resident after her first year contract expired and also of employment after her residency "in a high-paying, prestigious position as a plastic surgeon." (Cmplt. ¶¶ 79, 115, 120.) She asserts that Dr. Song's defamatory statements and refusal to provide her a "meaningful residency experience" interfered with those expectations. (Cmplt. ¶¶ 116, 121.)

## II.   ARGUMENT

### A.   Count III should be dismissed

A plaintiff in a defamation action must plead that: (1) the defendant made a false statement about her, (2) there was an unprivileged publication to a third party, and (3) the publication damaged her. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). For a statement to be defamatory *per se*, as Plaintiff alleges all of the complained-of statements are, its harm must be obvious and apparent on its face. *Id.* There are five categories of words that are considered defamatory *per se*: (1) words that impute that a person has committed a crime; (2) words that impute that a person is infected with a loathsome communicable disease; (3) words that impute that a person is unable to perform or lacks integrity in performing her employment duties; (4) words that impute that a person lacks ability or otherwise prejudice that person in his or her profession; and (5) words that impute that a person has engaged in adultery and fornication. *Id.*

Statements of opinion are not actionable. *Lifton v. Board of Ed. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005); *Rose v. Hollinger Int'l, Inc.*, 889 N.E. 2d 644, 647 (Ill. App. Ct. 2008). When determining whether a statement conveys an opinion, courts consider three factors: (1) whether the language of the statement has a precise and readily understood meaning; (2) whether the context in which the statement appears negates the impression that the statement has factual content; and (3) whether the statement can be objectively verified as true or false. *Hopewell v. Vitullo*, 701 N.E.2d 99, 103 (Ill. App. Ct. 1998).

4

Even if a statement would otherwise fall into one of the limited categories of defamation *per se*, it is not actionable if it is reasonably capable of an innocent construction. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). In determining whether a statement is capable of innocent construction, courts consider the context in which the statement was made. *Tuite*, 866 N.E.2d at 128; *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1301 (Ill. 1996).

A statement that is defamatory *per se* is may be qualifiedly privileged and not actionable. The elements of the privilege are: (1) good faith by the defendant; (2) an interest or duty to be upheld; (3) a statement limited in scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and only to proper parties. *Muthuswamy v. Burke*, 646 N.E.2d 616 (Ill. App. Ct. 1995). To overcome that privilege, a plaintiff must plead that the statement was made "with knowledge of its falsity or in reckless disregard for its truth or falsity." *Robinson v. Morgan Stanley*, No. 06 C 5158, 2008 U.S. Dist. LEXIS 47597, at *17 (N.D. Ill. June 18, 2008).

Here, as shown below, Plaintiff has failed to adequately plead defamation *per se* by Dr. Song; and so Count III should be dismissed. The statements of which she complains do not impute that she lacks ability or otherwise prejudice her in her profession as a physician, as they must to be *per se* defamatory. Further, the complained-of statements are non-actionable opinion and readily capable of innocent construction. Plaintiff's claim also fails because all of the communications at issue are shown by her own complaint to be privileged.

### 1. The statements Plaintiff complains of are not defamatory *per se*

#### a. The statements in the November 2 memorandum

Plaintiff claims the following three statements in the November 2 memo are *per se* defamatory (Cmplt. ¶ 61), but none is:

It was unanimous amongst the numerous evaluators across the Department of Surgery, particularly within our section, that the issues Dr. Artunduaga has will be extremely difficult to correct within the time allotted during residency period.

[I]t was quite clear to all of the reviewers that Surgery, and in particular Plastic and Reconstructive Surgery, just would not be the best fit for Dr. Artunduaga.

[Dr. Artunduaga] feels that she has improved, however, no one else in the entire section and across the department has recognized that fact.

On their face, none of these statements impute to Plaintiff a general inability to perform in her profession. The statements, made in a memo specifically directed towards Plaintiff's performance as a surgical resident in the UCMC Plastic Surgery program, say nothing about whether Plaintiff was incapable of being a physician and so cannot be deemed defamatory *per se*. *Hach v. Laidlaw Transit, Inc.*, No. 02 C 996, 2002 WL 31496240, at * 2-3 (N.D. Ill. Nov. 7, 2002) (statement that plaintiff's management was "failing" and that operating results under her management "were dwindling" did not impute a general inability to perform comparable work in a different setting).

Furthermore, all of these statements are clearly opinion under the standards set out in *Hopewell* and other cases. Whether it would be "extremely difficult" to correct identified issues within the residency period, whether surgery and plastic surgery was not the "best fit" for her and whether others "recognized" the improvement she felt she had made do not have a precise and readily understood meaning. *See Rose*, 889 N.E.2d at 652-53 (statement that "[i]t will be some time before we can undo the damage that [plaintiff] has wrought to our finances" did not have a precise and readily understood meaning). The context of the statements does not give the impression that they have factual content. And none of these statements can be objectively verified as true or false. *See Hopewell*, 701 N.E.2d at 104 (statement Plaintiff had been fired for "incompetence" was non-actionable opinion).

6

Finally, all three statements may be innocently construed to convey only that Plaintiff was failing to perform as a UCMC Plastic Surgery resident. As many cases hold, statements concerning a plaintiff's performance failures in a particular position, as opposed to those that impute a general inability to perform in other positions, are reasonably capable of innocent construction. *Mirocha v. Palos Cmty. Hosp.*, No. 11-cv-4542, 2012 WL 3638171, at *4 (N.D. Ill. Aug. 22 2012) (statement in disciplinary memorandum that plaintiff's failure as a supervisor was his continued inability identify his job duties and then work well independently did not impute a general inability to perform); *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1302 (Ill. 1996) (statement that plaintiff did not follow up on assignments innocently construed "to mean simply that the plaintiff did not fit in with the organization of the employer . . . and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future positions").

The November 2 memo further supports an innocent construction of the statements. It states, "we would like to move forward in every way possible to support [Plaintiff's] transition into another specialty or another program" and speaks of a "transition in [Plaintiff's] career," These statements alone negate any argument that Dr. Song imputed an inability to perform as a resident in a different position or in her profession. *Green v. Rogers*, 917 N.E.2d at 465 (invitation to plaintiff to continue to assist his son's little league team with practices and pre-game activities led to conclusion that defendant's statements that plaintiff had "abused" and engaged in "misconduct" with players and others were not to be interpreted as claiming that plaintiff had committed sexual or physical abuse or misconduct.)

**b.      The statements in the April 30, 2012 letter**

Plaintiff alleges that the following statements made in Dr. Song's April 30, 2012 letter to her were defamatory *per se*: that she had "continued to exhibit disruptive and unprofessional

7

behavior"; that she had "failed to fully participate in the Endocrine assignment"; and that "[a]ny further incidents of unprofessional behavior, insubordination, harassment, threats or dereliction of your responsibilities will result in your immediate termination from the program." (Cmplt. ¶¶ 90, 91.) These statements do not indicate that Plaintiff was unable to perform duties in a residency position or behave professionally in a residency position other than in a Plastic Surgery residency at UCMC. All may be innocently construed to impute a performance failure in Plaintiff's particular surgical residency position as opposed to a general inability to perform. *Van Vliet v. Cole Taylor Bank*, No. 10 CV 3221, 2011 WL 148059, at *5-7 (N.D. Ill. Jan. 18 2011) (statements in final written warning that plaintiff had exhibited a "general lack of management" and "failed to verify the status of insurance coverage" of a property were reasonably capable of innocent construction that plaintiff had performance failures in his current job and not that he had general inability to perform in future positions).

Similarly, comments that Plaintiff engaged in "insubordination, harassment or threats" may be innocently construed as describing her relationship with her co-workers or supervisors in the UCMC Plastic Surgery residency program. They do not concern or relate to her functioning in any other residency program or to her knowledge or ability in her profession as a physician. Those statements are thus not defamatory *per se*. *See Powers v. Delnor Hosp.*, 499 N.E.2d 666, 668 (Ill. App. Ct. 1986) (criticism of plaintiff's poor relationships with her co-workers did not implicate her knowledge and ability as a nurse and so were not defamatory *per se*).

c.      **The email as read during Plaintiff's grievance hearing**

Plaintiff alleges that during her grievance hearing Dr. Song read an email that contained criticisms of her by Chief Resident John Seal. The email states: "Maria's main problems stem from communication, which [Dr. Seal] detailed as … - too much confidence when it comes to patient management - with patients she comes across as abrupt, arrogant, and lacking in

8

empathy."  But Plaintiff alleges that when Dr. Song read the email aloud, he read: "Maria's main problems stem from communication … too much confidence when it comes to patient management without the knowledge she comes across as abrupt, arrogant and lacking empathy."

The statement as allegedly read by Dr. Song is plainly opinion.  It does not have a readily understood meaning, and does not impugn her ability in her profession as a physican; and it cannot be verified.  Dr. Song did not state what Plaintiff allegedly lacked knowledge of or how patient management may have been impacted; and no individual present at the grievance hearing could have verified the truth of this broad statement.  *Kakuris v. Klein*, 410 N.E.2d 984, 986 (Ill. App. Ct. 1980) (employer's statement that plaintiff "did not have the qualifications needed to achieve the objectives of the profession" was nonactionable opinion).

Moreover, the statement allegedly read by Dr. Song is reasonably capable of an innocent construction.  Because Plaintiff was a first-year resident, attendees at the hearing may reasonably have understood that Plaintiff lacked knowledge to justify the amount of confidence that she exhibited when managing patients roughly four months into her residency.  The comment would have nothing to do with Plaintiff's general ability to perform work as a resident in other programs or as a physician in general.  *See Hach*, 2002 WL 31496240, at *2-3 (comment that Plaintiff's "management posture and attitude was that of a victim and not that of a winner" was context-specific and did not impute a general inability to perform.)  The statement as read is thus not defamatory *per se*.

### 2. Dr. Song's statements were privileged

The allegedly defamatory statements about which Plaintiff sues were made by Dr. Song in the memo in which he told her she was being placed on probation, in the April 30, 2012 letter concerning her performance and the new assignment she was being given and in reading an

email about her performance at her grievance hearing. Plaintiff's complaint shows that the privilege applies.

Clearly, Dr. Song, as her supervisor and Program Director, in dealing with issues related to her performance, had an interest or duty to be upheld; and the statements were made in fulfillment of that purpose and on a proper occasion. Thus, all those elements of the privilege are readily established. While Plaintiff alleges that he did not provide her a meaningful residency experience and his conduct was "willful, wanton and outrageous", such vague and formulistic allegations are irrelevant to whether she has stated a claim. Finally, the complaint does not allege anything showing that his statements were not published in a proper manner and only to proper parties. The April 30, 2012 letter was copied to a lawyer for UCMC and the Director of Graduate Medical Education. The email was read to those doctors and lawyers participating in the hearing on Plaintiff's grievance. While Plaintiff alleges that the November 2, 2011 memo was distributed to approximately 20 UCMC employees between November 2011 and May 2012, she does not state who made the distribution (much less claim that Dr. Song did), how the distribution was made or identify the employees who allegedly received it. Nothing therefore suggests that Dr. Song's statements in the November 2, 2011 memo were not properly published to proper parties.

Plaintiff's complaint contains no allegations that Dr. Song's statements were made with knowledge of their falsity or in reckless disregard for their truth or falsity, which she would have to claim to avoid the application of the privilege. Thus, even if any of the complained-of statements were deemed defamatory *per se*, Plaintiff still has no claim because her complaint establishes that they were privileged.

CHICAGO/#2393951.5

### B.    Count IV should be dismissed

Plaintiff alleges that UCMC is liable for Dr. Song's defamation on the basis of *respondeat superior*. (Cmplt. ¶ 112.) Because Plaintiff has not pled a claim of defamation against Dr. Song, she has not pled a claim against UCMC either; and so Count IV should be dismissed.

### C.    Count V should be dismissed

Plaintiff's Count V claim that Dr. Song intentionally interfered with her continued employment with UCMC should be dismissed. Illinois recognizes a cause of action for tortious interference with a business expectancy if a plaintiff can show: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from developing into a business relationship; and (4) damages. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009); *Dry Enters., Inc. v. Sunjut AS*, No. 07 C 1657, 2008 WL 904902, at *9 (N.D. Ill. Mar. 31, 2008).

The expectancy must be a legitimate one. *Ali v. Shaw*, 481 F.3d 942, 944-45 (7th Cir. 2007); *Fellhaur v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). The mere hope of continued engagement upon the expiration of a contract, without more, does not constitute a reasonable expectancy. *Werblood v. Columbia College of Chicago*, 536 N.E.2d 750, 755 (Ill. App. Ct. 1989).

To plead intentional interference, a plaintiff must allege that the defendant took action directed toward a specific third party. *Ali*, 481 F.3d at 946 (7th Cir. 2007); *L&W/Lindco Prods., Inc. v. Pure Asphalt Co.*, 979 F. Supp. 632, 640 (N.D. Ill. 1997). Action by the agent of a principal does not amount to third-party interference. *Ali*, 481 F.3d at 946. The actions of an agent on behalf of his principal are privileged if limited in scope to that purpose and are made on

a proper occasion, in a proper manner and with respect to proper parties only. *Muthuswamy v. Burke*, 646 N.E.2d 616, 621 (Ill App. Ct. 1993). That privilege can be overcome only by a showing that the agent's action was taken intentionally and without justification. *Delloma v. Consol. Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993).

Plaintiff's Count V claim fails because she has alleged nothing more than the hope of continuing her residency; Dr. Song took no action toward a third party; and Dr. Song's actions were privileged. It should be dismissed.

### 1.    Plaintiff's hope of continuing her residency is inadequate

While Plaintiff may have hoped to continue her residency after the first year, she has not alleged anything showing she had a legitimate expectation of doing so. Plaintiff's hope is not enough. *Cooper v. Durham Sch. Servs.*, No. 03 C 2431, 2003 WL 22232833, at *9 (N.D. Ill. Sept. 22, 2003) (plaintiff's hope of conducting future business with defendant following the completion of a contract was not a reasonable expectation); *Williams v. Weaver*, 495 N.E.2d 1147 (Ill. App. Ct. 1986) (hope that a school would renew plaintiff's one-year teaching contract, without more, did not constitute a reasonable expectancy).

Further, the terms of Plaintiff's residency contract defeat any claim of expectation. Her contract, Exhibit 4 to this Memorandum, provides in Section 1 that its term is from June 20, 2011 to June 30, 2012. Section 13 is entitled "Renewal of Agreement" and states: "The Resident/Fellow understands and acknowledges that this Agreement expires no later than the date set forth in Section 1 and that UCMC makes no commitment to renew this Agreement." It further states that "[r]eappointment is at the discretion of UCMC" and is contingent upon a non-exclusive list of factors including satisfactory completion of training, satisfactory performance evaluations, program accreditation and UCMC financial ability. The contract itself shows that

Plaintiff could not have had a reasonable expectation of continued employment with UCMC beyond its one-year term.

### 2. Plaintiff has not alleged that Dr. Song acted with regard to a third party

Even if Plaintiff had sufficiently pled that she had a reasonable expectation of continued employment with UCMC, her claim still fails because has not alleged that Dr. Song took any action as to a third party to interfere with her employment. Dr. Song was the Program Director of UCMC's Plastic Surgery residency program, Chief of Plastic and Reconstructive Surgery and her supervisor in the program; and Plaintiff alleges that UCMC is responsible for his actions on the basis of *respondeat superior*. Thus, Plaintiff's claim is essentially that UCMC, through Dr. Song, interfered with its own employment relationship with her. That is legally impossible and cannot support a claim of tortious interference. *Williams*, 495 N.E.2d at 1152-53.

### 3. Dr. Song's actions were privileged

As shown, Plaintiff own complaint alleges that Dr. Song acted on behalf of UCMC and that the privilege applies. Plaintiff does not allege that Dr. Song acted intentionally and without justification, as she would have to do to attempt to overcome the privilege. Count V should thus be dismissed because on its face it shows Dr. Song's action were privileged.

### D. Count VI should be dismissed

Plaintiff's claim for intentional interference with prospective economic advantage by Dr. Song fails as well. To state such a claim, a plaintiff must allege: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damages. *Anderson*, 667 N.E.2d at 1299. Actions by an agent acting on behalf of the interests of his principal are privileged if they are limited in scope

to that purpose and are made on a proper occasion, in a proper manner and with respect to proper parties only. *Muthuswamy* 646 N.E.2d at 621. That privilege can be overcome only by a showing that the agent's action was taken intentionally and without justification. *Delloma.* 996 F.2d at 171.

As was the case with Count V, Plaintiff has failed to adequately allege that Dr. Song interfered with a reasonable expectation of a business relationship, has not alleged that he took any action toward a third party and has not alleged that his actions were not privileged.

### 1. Plaintiff's claimed expectation is unreasonable and speculative

As a threshold matter, Plaintiff's allegation that Dr. Song interfered with her expectancy of obtaining employment after her residency is not only unreasonable, it is utterly speculative. A chance of receiving a job offer on unknown terms from some unknown putative employer at least five years in the future is not a sufficient expectancy to allege tortious interference with a prospective economic advantage. *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998) (interference claim dismissed where plaintiff had not alleged that he had applied or interviewed for other positions); *Myers v. Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 U.S. Dist. LEXIS 21635, at *9 (N.D. Ill. Oct. 25, 2004); *Anderson*, 667 N.E.2d 1299-1300 (plaintiff's hope that she would receive a particular job offer was not sufficient, even though she had progressed past the first round of interviews). Further, the mere suggestion that employers might not hire Plaintiff in the future is inadequate. *See Genender Int'l, Inc. v. Skagen Designs, LTD.*, No. 07 C 5993, 2008 WL 2521894, at *4 (N.D. Ill. Apr. 14, 2008) (mere possibility of losing business opportunities, without more, was insufficient to show that plaintiff lost a legitimate expectancy).

14

### 2. <u>Dr. Song did not direct his actions toward a third party</u>

Plaintiff has not, as she must, alleged that Dr. Song took any action toward a third party; and thus her claim fails. *Atanus v. Am. Airlines, Inc.*, 932 N.E.2d 1044, 1051 (Ill. App. Ct. 2010) ("The element of purposeful or intentional interference refers to some impropriety committed by the defendant in interfering with the plaintiff's expectancy of entering into a valid business relationship with an identifiable third party"); *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 992 (N.D. Ill. 2006); *Dry Enters., Inc. v. Sunjut AS*, No. 07 C 1657, 2008 WL 904902, at *9 (N.D. Ill. Mar. 31, 2008);

### 3. <u>Dr. Song's actions were privileged</u>

Plaintiff's own complaint shows that Dr. Song's actions were taken on behalf of UCMC and so were privileged. It does not allege that he acted intentionally and without justification, which that might overcome that privilege. Count VI should thus be dismissed because on its face it shows Dr. Song's action were privileged.

## III. <u>CONCLUSION</u>

For all of these reasons, Count III to VI of the Complaint of Plaintiff Maria Artunduaga should be dismissed.

Respectfully submitted,

THE UNIVERSITY OF CHICAGO
MEDICAL CENTER AND DR. DAVID
SONG

By:    <u>s/ Michael G. Cleveland</u>
       One of His Attorneys

Michael G. Cleveland, Bar No. 00460915
Andrea L. Lewis, Bar No. 06306438
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois  60601-1003
T:  +1 (312) 609-7500

Dated:  December 14, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused copies of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT COUNTS III TO VI OF DEFENDANTS THE UNIVERSITY OF CHICAGO MEDICAL CENTER AND DR. SONG to be served upon:

Alejandro Caffarelli
Madeline Kate Engel
Caffarelli & Siegel Ltd
Two Prudential Plaza
180 North Stetson, #3150
Chicago, Illinois  60601

by electronic means on December 14, 2012.

s/  Michael G. Cleveland
Michael G. Cleveland

CHICAGO/#2393951.5