IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA, | |
| Plaintiff, | |
| v. | No. 12 C 8733 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER and DR. DAVID SONG, individually, | Judge James B. Zagel<br>Magistrate Judge Sidney I. Schenkier |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND COUNT III AND COUNTS IV TO VII OF PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS THE UNIVERSITY OF CHICAGO MEDICAL CENTER AND DR. SONG**

Plaintiff Dr. Maria Artunduaga was a plastic surgery resident at Defendant University of Chicago Medical Center ("UCMC") for one year, during which time her performance was criticized and she was placed on probation. She was not given a contract for a second year of residency and now sues UCMC and Dr. David Song, who supervised her, in an eight-Count First Amended Complaint.[1]

Counts I, II and first Count III are brought against UCMC under 42 U.S.C. § 1981.[2] Count I alleges that Plaintiff was discriminated against because of her Colombian national origin; Count II alleges a hostile environment; and first Count III alleges retaliation for complaining of national origin discrimination. Defendant UCMC has answered those Counts.

---

[1] Defendants moved to dismiss Plaintiff's initial Complaint. Rather than respond to Defendants' motion, Plaintiff filed her First Amended Complaint, which adds claims of defamation *per quod*, drops her prior claim of tortious interference with prospective economic advantage and adds other allegations not made in her initial Complaint.

[2] Plaintiff's First Amended Complaint contains two Court IIIs, referred to here as first Count III and second Count III.

Second Count III alleges claims of defamation *per se* against Dr. Song, and Count IV alleges that UCMC is responsible for Dr. Song's alleged defamation *per se* on the basis of *respondeat superior*. Count V alleges a claim of defamation *per quod* against Dr. Song, and Count VI alleges that UCMC is responsible for the alleged defamation *per quod* on the basis of *respondeat superior*. Count VII is brought against Dr. Song and alleges that he intentionally interfered with Plaintiff's legitimate expectation of continued employment with UCMC. Defendants have moved to dismiss all those Counts, and this memorandum is submitted in support of their motion.

## I. FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff's First Amended Complaint alleges the following:[3]

In March 2011, Plaintiff matched to the Plastic and Reconstructive Surgery program at UCMC pursuant to the matching program administered by the Accreditation Council of Graduate Medical Education. (First Am. Cmplt. ¶ 19.) Plaintiff was a Resident in the program from June 20, 2011 to June 30, 2012. (First Am. Cmplt. ¶ 6.) Dr. Song was the Program Director, chief of Plastic and Reconstructive Surgery and her supervisor. (First Am. Cmplt. ¶¶ 9, 22.) The program is six years long. (First Am. Cmplt. ¶ 84.)

On November 2, 2011, Dr. Song and others met with Plaintiff to discuss her performance as a Resident. (First Am. Cmplt. ¶ 58.) He informed her that UCMC was considering placing her on probation. (First Am. Cmplt. ¶ 59.) That same day, Dr. Song summarized the meeting in a memo that contains three statements, set out in the Argument section of this Memorandum, that Plaintiff alleges are "false" and "indicate that she was unable to perform her duties as Resident" and "lacks certain professional abilities." (First Am. Cmplt. ¶¶ 61, 62, 86, 87.) Plaintiff alleges

---

[3] As required, Defendants accept as true the well-pleaded allegations of Plaintiff's First Amended Complaint for the purposes of this motion only.

2

that this memo was distributed to approximately 20 UCMC employees between November 2011 and May 2012 but does not state who made the distribution or identify the employees. (First Am. Cmplt. ¶ 85.) A copy of the memo is attached as Exhibit 1.[4]

Plaintiff was placed on probation on November 15, 2011. (First Am. Cmplt. ¶ 69.) On March 27, 2012, Dr. Song informed her that UCMC would not renew her contract for a second year. (First Am. Cmplt. ¶ 80.)

Dr. Song sent Plaintiff a letter dated April 30, 2012 containing statements, also set out in the Argument section of this Memorandum, that Plaintiff alleges are "false" and "indicate that she was unable to perform her duties as a Resident" and "lacks the ability to behave professionally." (First Am. Cmplt. ¶¶ 99, 100.) Dr. Song sent copies of this letter to Barry Kamin, Director of Graduate Medical Education and Jane McAtee, Associate General Counsel. (First Am. Cmplt. ¶ 98.) A copy of the letter is Exhibit 2 to this Memorandum.

At a grievance hearing held on May 16, 2012, Dr. Song read aloud an August 31, 2011 email containing critical comments about Plaintiff's performance by General Surgery Chief Resident John Seal. (First Am. Cmplt. ¶ 88.) In reading the email, Dr. Song included a critical assessment of Plaintiff's performance that was not articulated in the email. (First Am. Cmplt. ¶¶ 90, 91.) Plaintiff alleges that it was false that the email contained the statement recited by Dr. Song and that his "inaccurate recitation of the email indicated that Plaintiff lacked the knowledge necessary for her to perform her duties as a Resident." (First Am. Cmplt. ¶¶ 92, 94.) The statement Plaintiff complains of is set out in the Argument section of this Memorandum, and a

---

[4] Because this memo and the other documents Defendants attach to this brief are referred to in the First Amended Complaint and central to Plaintiff's claims, the Court may consider them without converting this motion to one for summary judgment. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

3

copy of the email is attached as Exhibit 3. Present when Dr. Song read the email were five doctors and three attorneys. (First Am. Cmplt. ¶ 93.)

Plaintiff alleges that she had a reasonable expectation of continuing as a resident after her first year contract expired and a legitimate expectation that her contract would be renewed each year until she had completed the residency. (First Am. Cmplt. ¶¶ 84, 105, 144.) She asserts that Dr. Song's defamatory statements and refusal to provide her a "meaningful residency experience" interfered with those expectations. (First Am. Cmplt. ¶¶ 145.)

## II. ARGUMENT

### A. Second Count III should be dismissed

A plaintiff in a defamation action must plead that: (1) the defendant made a false statement about her, (2) there was an unprivileged publication to a third party, and (3) the publication damaged her. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). For a statement to be defamatory *per se*, as Plaintiff alleges in her second Count III all of the complained-of statements are, its harm must be obvious and apparent on its face. *Id.* There are five categories of words that are considered defamatory *per se*: (1) words that impute that a person has committed a crime; (2) words that impute that a person is infected with a loathsome communicable disease; (3) words that impute that a person is unable to perform or lacks integrity in performing her employment duties; (4) words that impute that a person lacks ability or otherwise prejudice that person in her profession; and (5) words that impute that a person has engaged in adultery and fornication. *Id.*

Statements of opinion are not actionable. *Lifton v. Board of Ed. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). When determining whether a statement conveys an opinion, courts consider three factors: (1) whether the language of the statement has a precise and readily understood meaning; (2) whether the context in which the statement appears negates the

4

impression that the statement has factual content; and (3) whether the statement can be objectively verified as true or false. *Hopewell v. Vitullo*, 701 N.E.2d 99, 103 (Ill. App. Ct. 1998).

Even if a statement would otherwise fall into one of the limited categories of defamation *per se*, it is not actionable if it is reasonably capable of an innocent construction. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). In determining whether a statement is capable of innocent construction, courts consider the context in which the statement was made. *Tuite*, 866 N.E.2d at 128; *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1301 (Ill. 1996).

A defamatory statement may be qualifiedly privileged and not actionable. The elements of the privilege are: (1) good faith by the defendant; (2) an interest or duty to be upheld; (3) a statement limited in scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and only to proper parties. *Muthuswamy v. Burke*, 646 N.E.2d 616 (Ill. App. Ct. 1995). To overcome that privilege, a plaintiff must plead that the statement was made "with knowledge of its falsity or in reckless disregard for its truth or falsity." *Robinson v. Morgan Stanley*, No. 06 C 5158, 2008 U.S. Dist. LEXIS 47597, at *17 (N.D. Ill. June 18, 2008).

Here, as shown below, Plaintiff has failed to adequately plead defamation *per se* by Dr. Song; and so second Count III should be dismissed. The statements of which she complains do not impute that she lacks ability or otherwise prejudice her in her profession as a physician, as they must to be *per se* defamatory. Further, the complained-of statements are non-actionable opinion and are readily capable of innocent construction. Plaintiff's claim also fails because all of the communications at issue are shown by her own First Amended Complaint to be privileged.

### 1. The statements Plaintiff complains of are not defamatory *per se*

a. **The statements in the November 2 memorandum**. Plaintiff claims the following three statements in the November 2 memo are *per se* defamatory (First Am. Cmplt. ¶ 61), but none is:

> It was unanimous amongst the numerous evaluators across the Department of Surgery, particularly within our section, that the issues Dr. Artunduaga has will be extremely difficult to correct within the time allotted during residency period.
>
> [I]t was quite clear to all of the reviewers that Surgery, and in particular Plastic and Reconstructive Surgery, just would not be the best fit for Dr. Artunduaga.
>
> [Dr. Artunduaga] feels that she has improved, however, no one else in the entire section and across the department has recognized that fact.

None of these statements impute to Plaintiff a general inability to perform in her profession. The statements, made in a memo specifically directed towards Plaintiff's performance as a surgical resident in the Plastic Surgery program, say nothing about whether she was incapable of being a physician and so cannot be deemed defamatory *per se*. *Hach v. Laidlaw Transit, Inc.*, No. 02 C 996, 2002 WL 31496240, at * 2-3 (N.D. Ill. Nov. 7, 2002) (saying that plaintiff's management was "failing" and operating results "dwindling" did not impute a general inability to perform comparable work in a different setting).

Furthermore, all of these statements are clearly opinion under the standards set out in *Hopewell* and other cases. Whether it would be "extremely difficult" to correct identified issues within the residency period, whether surgery and plastic surgery was not the "best fit" for her and whether others "recognized" the improvement she felt she had made do not have a precise and readily understood meaning. *Rose v. Hollinger Int'l, Inc.*, 889 N.E. 2d 644, 652-53 (Ill. App. Ct. 2008) (statement that "[i]t will be some time before we can undo the damage that [plaintiff] has wrought to our finances" did not have a precise and readily understood meaning). The context of the statements does not give the impression that they have factual content. And none

6

of these statements can be objectively verified as true or false. *See Hopewell*, 701 N.E.2d at 104 (statement plaintiff had been fired for "incompetence" was non-actionable opinion).

Finally, all three statements may be innocently construed to convey only that Plaintiff was failing to perform as a UCMC Plastic Surgery resident. As many cases hold, statements concerning a plaintiff's performance failures in a particular position, as opposed to those that impute a general inability to perform in other positions, are reasonably capable of innocent construction. *Mirocha v. Palos Cmty. Hosp.*, No. 11-cv-4542, 2012 WL 3638171, at *4 (N.D. Ill. Aug. 22 2012) (statement that plaintiff's failure as a supervisor was his continued inability identify his job duties and then work well independently did not impute a general inability to perform); *Anderson*, 667 N.E.2d at 1302 (statement that plaintiff did not follow up on assignments innocently construed "to mean simply that the plaintiff did not fit in with the organization of the employer . . . and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future positions").

The November 2 memo further supports an innocent construction of the statements. It states, "we would like to move forward in every way possible to support [Plaintiff's] transition into another specialty or another program" and speaks of a "transition in [Plaintiff's] career," These statements alone negate any argument that Dr. Song imputed an inability to perform as a resident in a different position or in her profession. *Green*, 917 N.E.2d at 465 (invitation to plaintiff to continue to assist his son's little league team with practices and pre-game activities led to conclusion that defendant's statements that plaintiff had "abused" and engaged in "misconduct" with players and others were not to be interpreted as claiming that plaintiff had committed sexual or physical abuse or misconduct.)

7

  **b.**   **The statements in the April 30, 2012 letter**. Plaintiff alleges that the following statements made in Dr. Song's April 30, 2012 letter to her were defamatory *per se*: that she had "continued to exhibit disruptive and unprofessional behavior"; that she had "failed to fully participate in the Endocrine assignment"; and that "[a]ny further incidents of unprofessional behavior, insubordination, harassment, threats or dereliction of your responsibilities will result in your immediate termination from the program." (First Am. Cmplt. ¶¶ 95, 96.) These statements do not indicate that Plaintiff was unable to perform duties in a residency position or behave professionally in a residency position other than in a Plastic Surgery residency at UCMC. All may be innocently construed to impute a performance failure in Plaintiff's particular surgical residency position as opposed to a general inability to perform. *Van Vliet v. Cole Taylor Bank*, No. 10 CV 3221, 2011 WL 148059, at \*5-7 (N.D. Ill. Jan. 18 2011) (statements that plaintiff had exhibited a "general lack of management" and "failed to verify the status of insurance coverage" of a property were reasonably capable of innocent construction that he had performance failures in his current job and not that he had general inability to perform in future positions).

  Similarly, comments that Plaintiff engaged in "insubordination, harassment or threats" may be innocently construed as describing her relationship with her co-workers or supervisors in the UCMC Plastic Surgery residency program. They do not concern or relate to her functioning in any other residency program or to her knowledge or ability in her profession as a physician. Those statements are thus not defamatory *per se*. *See Powers v. Delnor Hosp.*, 499 N.E.2d 666, 668 (Ill. App. Ct. 1986) (criticism of plaintiff's poor relationships with her co-workers did not implicate her knowledge and ability as a nurse and so were not defamatory *per se*).

  **c.**   **The email as read during Plaintiff's grievance hearing**. Plaintiff alleges that during her grievance hearing Dr. Song read an email that contained criticisms of her by Chief

8

Resident John Seal.  The email states: "Maria's main problems stem from communication, which [Dr. Seal] detailed as … -  too much confidence when it comes to patient management  -  with patients she comes across as abrupt, arrogant, and lacking in empathy."  But Plaintiff alleges that when Dr. Song read the email aloud, he read: "Maria's main problems stem from communication … too much confidence when it comes to patient management without the knowledge she comes across as abrupt, arrogant and lacking empathy."

The statement as allegedly read by Dr. Song is plainly opinion.  It does not have a readily understood meaning, and does not impugn her ability in her profession as a physician; and it cannot be verified.  Dr. Song did not state what Plaintiff allegedly lacked knowledge of or how patient management may have been impacted; and no individual present at the grievance hearing could have verified the truth of this broad statement.  *Kakuris v. Klein*, 410 N.E.2d 984, 986 (Ill. App. Ct. 1980) (employer's statement that plaintiff "did not have the qualifications needed to achieve the objectives of the profession" was nonactionable opinion).

Moreover, the statement allegedly read by Dr. Song is reasonably capable of an innocent construction.  Because Plaintiff was a first-year resident, attendees at the hearing may reasonably have understood that Plaintiff lacked knowledge to justify the amount of confidence that she exhibited when managing patients roughly four months into her residency.  The comment would have nothing to do with Plaintiff's general ability to perform work as a resident in other programs or as a physician in general.  *See Hach*, 2002 WL 31496240, at *2-3 (comment that Plaintiff's "management posture and attitude was that of a victim and not that of a winner"  did not impute a general inability to perform.)  The statement as read is thus not defamatory *per se*.[5]

---

[5] In First Amended Complaint ¶ 104, Plaintiff adds the following allegation: "On information and belief, Dr. Song made and published additional false statements about [her] during and after her employment with UCMC."  This perfunctory allegation does her no good because it provides none of the specifics

**2.     Dr. Song's statements were privileged**.  The allegedly defamatory statements about which Plaintiff sues were made by Dr. Song in the memo in which he told her she was being placed on probation, in the April 30, 2012 letter concerning her performance and the new assignment she was being given and in reading an email about her performance at her grievance hearing.  Plaintiff's First Amended Complaint shows that the privilege applies.

Clearly, Dr. Song, as her supervisor and Program Director, in dealing with issues related to her performance, had an interest or duty to be upheld; and the statements were made in fulfillment of that purpose and on a proper occasion.  Thus, all those elements of the privilege are readily established.  While Plaintiff alleges that he did not provide her a meaningful residency experience and his conduct was "willful, wanton and outrageous", such vague and formulistic allegations are irrelevant to whether she has stated a claim.  Finally, the First Amended Complaint does not allege anything showing that his statements were not published in a proper manner and only to proper parties.  The April 30, 2012 letter was copied to a lawyer for UCMC and the Director of Graduate Medical Education.  The email was read to those doctors and lawyers participating in the hearing on Plaintiff's grievance.  While Plaintiff alleges that the November 2, 2011 memo was distributed to approximately 20 UCMC employees between November 2011 and May 2012, she does not state who made the distribution (much less claim that Dr. Song did), how the distribution was made or identify the employees who allegedly received it.  Nothing therefore suggests that Dr. Song's statements in the November 2, 2011 memo were not properly published to proper parties.

---

required for a *per se* claim; nor does it plead, as it must, facts supporting Plaintiff's so-called information and belief.  *Rogers*, 917 N.E.2d at 495 – 96; *Keen v. Blue Energy Servs., Inc.*¸ No. 11 C 7754, 2012 WL 1118215, at *5 (N.D. Ill. March 30, 2012).

10

In an effort to avoid the clearly privileged character of Dr. Song's alleged statements, Plaintiffs has added to her First Amended Complaint claims that he made the complained-of statements "knowing they were false" and "with reckless disregard for whether the statement were true." (First Am. Cmplt. ¶¶ 137-38.) However, such boilerplate, unaccompanied by any facts to support the claim, is wholly inadequate to overcome the privilege. *Spencer v. Comm. Hosp. of Evanston*, 408 N.E.2d 981, 987 (Ill. App. Ct. 1980) ("Bare conclusions regarding malice and intent must be clothed with factual allegations from which the actual malice might reasonably be said to exist."); *Robinson*, 2008 U.S. Dist. LEXIS 47597, at *17. Thus, even if any of the complained-of statements were deemed defamatory *per se*, Plaintiff still has no claim because her First Amended Complaint establishes that they were privileged.

Thus, second Count III should be dismissed.

### B. Count IV should be dismissed

Plaintiff alleges that UCMC is liable for Dr. Song's defamation *per se* on the basis of *respondeat superior*. (First Am. Cmplt. ¶ 112.) Because Plaintiff has not pled a claim of defamation *per se* against Dr. Song, she has not pled a claim against UCMC either; and so Count IV should be dismissed.

### C. Count V should be dismissed

Plaintiff's Count V defamation *per quod* claim fares no better than did her *per se* claim. Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face and extrinsic facts are required to explain its defamatory meaning. *Kurczaba v. Pollock*, 742 N.E.2d 425 (1st Dist. 2000).[6] A claim of defamation *per quod* requires

---

[6] A plaintiff may also claim *per quod* defamation if she alleges that the defamatory character of a statement is apparent on its face but the statement does not fit within any *per se* defamation category. *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 103 (1996). Here, Plaintiff does not make that

11

that a plaintiff allege both an unprivileged communication of a false statement to a third party and special damages. *Green*, 917 N.E.2d at 459. It requires allegations of "extrinsic facts showing the defamatory nature of the language, as well as allegations of specific facts establishing the plaintiff's special damages." *Anderson*, 667 N.E.2d at 1303. The special damages requirement mandates pleading "specific damages of actual financial injury." FRCP 9(g); *Muzikowski v Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). Thus, general allegations of damage to an individual's reputation or of economic loss, without extrinsic facts to support these claims, are inadequate for a *per quod* claim. *Taradash v. Adelet/Scott-Fetzer Co.*, 628 N.E.2d 884, 888 (Ill. App. Ct. 1993).

Here, Plaintiff's claim of defamation *per quod* by Dr. Song fails. The statements of which she complains are privileged. She does not allege extrinsic facts showing the statements are defamatory, and she has failed to plead special damages.

  **1.**  **<u>Dr. Song's statements were privileged</u>**. As already shown, the statements about which Plaintiff complains were qualifiedly privileged on the face of her own complaint. Because Plaintiff has not adequately alleged that Dr. Song abused his privilege, her *per quod* claim should be dismissed.

  **2.**  **<u>Plaintiff does not plead extrinsic facts</u>**. Even assuming that the privilege did not apply, Plaintiff's claim fails because she does not plead sufficient facts showing that Dr. Song's alleged comments about her were given a defamatory meaning by anyone. *See Anderson*, 667 N.E.2d at 1303-04 (dismissing *per quod* complaint where plaintiff failed to allege defendant's

---

sort of claim because in support of her *per quod* count she simply repeats the allegations she says make the complained-of statements defamatory *per se*. *Darovec Marketing Group, Inc.*, 42 F. Supp. 2d 810, 817-18 (N.D. Ill. 1999).

CHICAGO/#2410516.3

comments about her were given defamatory meaning); *Walker v. Braes Feed Ingredients, Inc.*, No. 02 C 9236 2003 WL 1956162 at *4 (N.D. Ill. April 23, 2003)[7]

    **3.** **Plaintiff does not plead special damages**. Plaintiff's *per quod* claim also fails because she has not pled special damages. She merely claims that she lost income and employment opportunities, suffered emotional distress, and that her reputation with UCMC was damaged as a result of Dr. Song's comments. (First Am. Cmplt. ¶¶ 106, 134.) Courts have found similar allegations insufficient to plead special damages. *E.g. Anderson*, 667 N.E.2d at 1303-04 (plaintiff's claim that she was "damaged monetarily by losing gainful employment and wages" and "suffered great mental pain and anguish" not adequate); *Muzikowski*, 322 F.3d at 927. For this reason as well, Count V should be dismissed.

    **D.** **Count VI should be dismissed**

Plaintiff again alleges that UCMC is liable for Dr. Song's defamation *per quod* on the basis of *respondeat superior*. (First Am. Cmplt. ¶ 141.) Because Plaintiff has not stated a claim of defamation *per quod* against Dr. Song, she has not stated a claim against UCMC either; and so Count VI should be dismissed.

    **E.** **Count VII should be dismissed**

Plaintiff's Count VII claim that Dr. Song intentionally interfered with her continued employment with UCMC should be dismissed. Illinois recognizes a cause of action for tortious interference with a business expectancy if a plaintiff can show: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from developing into a business relationship; and (4) damages. *Botvinick v. Rush*

---

[7] Plaintiff's unexplicated allegation that Dr. Song "made and published additional false statements" about her (First Am. Cmplt. ¶ 101) meets none of the requisites of a *per quod* claim.

13

*Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009). The expectancy must be a legitimate one. *Ali v. Shaw*, 481 F.3d 942, 944-45 (7th Cir. 2007). The mere hope of continued engagement upon the expiration of a contract, without more, does not constitute a reasonable expectancy. *Werblood v. Columbia College of Chicago*, 536 N.E.2d 750, 755 (Ill. App. Ct. 1989). To plead intentional interference, a plaintiff must allege that the defendant took action directed toward a specific third party. *Ali*, 481 F.3d at 946 (7th Cir. 2007). Action by the agent of a principal does not amount to third-party interference. *Ali*, 481 F.3d at 946. The actions of an agent on behalf of his principal are privileged if limited in scope to that purpose and are made on a proper occasion, in a proper manner and with respect to proper parties only. *Muthuswamy v. Burke*, 646 N.E.2d 616, 621 (Ill App. Ct. 1993). That privilege can be overcome only by a showing that the agent's action was taken intentionally and without justification. *Delloma v. Consol. Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993).

Plaintiff's Count VII claim fails because she has alleged nothing more than the hope of continuing her residency; Dr. Song took no action toward a third party; and Dr. Song's actions were privileged. It should be dismissed.

      **1.** **<u>Plaintiff's hope of continuing her residency is inadequate</u>**. While Plaintiff may have hoped to continue her residency after the first year, she has not alleged anything showing she had a legitimate expectation of doing so. Plaintiff's hope is not enough. *Cooper v. Durham Sch. Servs.*, No. 03 C 2431, 2003 WL 22232833, at *9 (N.D. Ill. Sept. 22, 2003) (hope of conducting future business following completion of a contract not a reasonable expectation); *Williams v. Weaver*, 495 N.E.2d 1147 (Ill. App. Ct. 1986). Further, Plaintiff's residency contract defeats any claim of expectation. Section 13 of her contract, Exhibit 4 to this Memorandum, is entitled "Renewal of Agreement" and states: "The Resident/Fellow

understands and acknowledges that this Agreement expires no later than the date set forth in Section 1 and that UCMC makes no commitment to renew this Agreement." It further states that "[r]eappointment is at the discretion of UCMC" and is contingent upon a non-exclusive list of factors including satisfactory completion of training, satisfactory performance evaluations, program accreditation and UCMC financial ability. The contract shows that Plaintiff could not have had a reasonable expectation of continuing as a resident beyond its one-year term.

    2.    **Plaintiff has not alleged action with regard to a third party**. Even if Plaintiff had sufficiently pled that she had a reasonable expectation of continued employment with UCMC, her claim still fails because has not alleged that Dr. Song took any action as to a third party to interfere with her employment. Dr. Song was the Program Director of UCMC's Plastic Surgery residency program, Chief of Plastic and Reconstructive Surgery and her supervisor in the program; and Plaintiff alleges that UCMC is responsible for his actions on the basis of *respondeat superior*. Thus, Plaintiff's claim is essentially that UCMC, through Dr. Song, interfered with its own employment relationship with her. That is legally impossible and cannot support a claim of tortious interference. *Williams*, 495 N.E.2d at 1152-53.

    3.    **Dr. Song's actions were privileged**. As shown, Plaintiff's own First Amended Complaint alleges that Dr. Song acted on behalf of UCMC and that the privilege applies. Though Plaintiff now also alleges that Dr. Song acted intentionally and without justification (First. Am. Cmplt. ¶146), she pleads nothing to support that bare conclusory claim and so does not overcome the privilege. Count V should thus be dismissed because Dr. Song's actions were privileged.

### III.   CONCLUSION

For all of these reasons, second Count III and Counts IV to VII of the First Amended Complaint of Plaintiff Maria Artunduaga should be dismissed.

Respectfully submitted,

THE UNIVERSITY OF CHICAGO
MEDICAL CENTER AND DR. DAVID
SONG


By:    s/ Michael G. Cleveland
       One of Their Attorneys

Michael G. Cleveland, Bar No. 00460915
Andrea L. Lewis, Bar No. 06306438
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
T: +1 (312) 609-7500

Dated: February 1, 2013

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he caused copies of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND COUNT III AND COUNTS IV TO VII OF PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS THE UNIVERSITY OF CHICAGO MEDICAL CENTER AND DR. SONG to be served upon:

Alejandro Caffarelli
Madeline Kate Engel
Caffarelli & Siegel Ltd
Two Prudential Plaza
180 North Stetson, #3150
Chicago, Illinois 60601

by electronic means on February 1, 2013.

s/ Michael G. Cleveland
Michael G. Cleveland