UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO MEDICAL CENTER and DR. DAVID SONG, individually,<br><br>        Defendants. | No. 12-cv-08733<br><br>Judge James B. Zagel<br><br>Magistrate Judge Sidney I. Schenkier |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND COUNT III AND COUNTS IV TO VII OF HER FIRST AMENDED COMPLAINT**

Plaintiff, Dr. Maria Artunduaga, by and through her attorneys, Caffarelli & Siegel Ltd., responds to the Motion to Dismiss by Defendants the University of Chicago Medical Center ("UCMC") and Dr. Song as follows:

**INTRODUCTION**

As a result of Defendants' wrongful actions, and because of the monopolistic nature of the residency matching program, Plaintiff's once-bright future in medicine has been nipped in the bud before it ever had a chance to thrive. After years of grueling study, advanced degrees, and accolades, Ms. Artunduaga's professional fate now rests with this Court. Plaintiff has presented a well-pleaded First Amended Complaint that includes a wealth of facts in support of her claims of defamation *per se*, defamation *per quod*, and tortious interference with prospective economic advantage in her employment relationship. See First Amended Complaint, D.E. 11 (hereinafter "FAC"). In light of the facts, and drawing all reasonable inferences in Plaintiff's

favor, Defendants have not established that Plaintiff's claims fail to state a claim as a matter of law. Plaintiff therefore requests that this Court deny Defendants' Motion to Dismiss.

## ARGUMENT

**I. PLAINTIFF'S FIRST AMENDED COMPLAINT PROPERLY STATES CLAIMS OF DEFAMATION *PER SE* AGAINST DR. SONG AND UCMC.**

Defendants correctly recite the basic elements of a defamation claim. As required under Illinois law, the FAC establishes that (1) Dr. Song made false statements about Dr. Artunduaga; (2) Dr. Song made an unprivileged publication of those statements; and (3) the publication damaged Dr. Artunduaga. See Green v. Rogers, 917 N.E.2d 450, 459 (Ill. 2009). In Illinois, a statement is defamatory *per se* if it falls into one of five prescribed categories, two of which are relevant in this case: first, statements that impute that a person is unable to perform or lacks integrity in performing her employment duties; and second, statements that impute that a person lacks ability or otherwise prejudice that person in her profession. Id. Therefore, Dr. Artunduaga's allegations of defamation *per se* state a claim upon which relief can be granted, and should survive Defendants' motion.

**A. Dr. Song's Statements are *Per Se* Defamatory**

**1. The November 2, 2011 Memo**

At a minimum, the following three statements made by Dr. Song in his Memorandum dated November 2, 2011 (hereinafter the "November 2 Memo") constitute defamation *per se*:

1. "It was unanimous amongst the numerous evaluators across the Department of Surgery, particularly within our section, that the issues that Dr. Artunduaga has will be extremely difficult to correct within the time allotted during residency period."

2. "[I]t was quite clear to all of the reviewers that Surgery, and in particular Plastic and Reconstructive Surgery, just would not be the best fit for Dr. Artunduaga."

3. "[Dr. Artunduaga] feels that she has improved, however, no one else in the entire section and across the department has recognized that fact."

Exhibit A, November 2, 2011 Memorandum.

These statements fall squarely into the two categories identified above, which Illinois courts have deemed defamatory *per se*. Green, 917 N.E.2d at 459. Each statement definitively declares that every single person who supervised or worked with Dr. Artunduaga concluded that she was not fit for any surgical specialty, and that only Dr. Artunduaga herself believed otherwise. The only reasonable reading of these statements is that Dr. Artunduaga was unable to perform not only as a plastic surgeon, but as a surgeon in any capacity.

A statement is defamatory *per se* in the employment context where it imputes that a person either (1) is unable to perform or lacks integrity in performing her employment duties; or (2) lacks ability or otherwise prejudices her in her profession. E.g., id. To determine whether a statement imputes either or both of these traits, the court is to give the words at issue "their most natural and obvious meaning," particularly in light of the context in which they appear. Bryson v. News Am. Publ'ns, 672 N.E.2d 1207, 1217 (Ill. 1996). Dr. Song presented each of the statements at issue as an absolute: "it was unanimous" that Dr. Artunduaga stood no chance of improving; "it was quite clear to all of the reviewers" that Dr. Artunduaga was not cut out to be a surgeon; and "no one else in the entire section" besides Dr. Artunduaga believed she had shown improvement. These statements cannot be innocently construed.

The import of these words cannot be overstated: It is one thing for Dr. Song to communicate his own opinions about Dr. Artunduaga's performance as a plastic surgery resident – but it is another matter entirely for him to speak in his capacity as the Program Director, purportedly on behalf of the entire Department of Surgery, and falsely attribute negative opinions to individuals who have submitted written reports stating just the opposite of what Dr. Song described. FAC ¶ 64 (supervising physicians' evaluations stated that Dr. Artunduaga's

3

performance had been good, that she "will make a fine resident," and that she had shown improvement during the period in question and should be given the opportunity to further improve). Additionally, it is reasonable to conclude that UCMC relied upon Dr. Song's false statements about other evaluators' opinions because he is the Program Director.

Defendants propose that this Court attach an innocent meaning to Dr. Song's statements, and find that the mention of a transition in Plaintiff's career must imply that Dr. Song believed Dr. Artunduaga was capable of working as a physician elsewhere. Dr. Song buried these few neutral words in a resoundingly critical review of Plaintiff's abilities; to suggest that he intended to endorse her promise as a physician elsewhere is a contortion that Illinois law does not allow. Tuite v. Corbitt, 866 N.E.2d 114, 127 (Ill. 2006). Read in context of the entire memorandum, as well as everything else that had transpired between Dr. Song and Dr. Artunduaga, a reasonable jury could only conclude that these statements were meant to facilitate the termination of Dr. Artunduaga's contract – not as an endorsement of her skills.

In Tuite, a criminal defense attorney brought a claim of defamation *per se* based upon statements made in a book about organized crime and corruption which detailed plaintiff's involvement in the same. Id. at 117–18. Arguing for an innocent construction, the defendants there relied upon discrete references to innocuous terms such as "better representation," "retainer," and "legal fees." Id. at 128. The defendants argued that these words, when used in relation to the plaintiff, effectively removed him from any association with the book's overarching theme of corruption. Id. The court refused to accept defendants' proposed innocent construction, stating that "there is simply no basis for a reasonable reader to believe that defendants implicitly intended to compliment [plaintiff]'s trial skills in the middle of a book about organized crime and corruption." Id. at 129. Specifically, the context of otherwise neutral

4

terms could not reasonably be read to paint a flattering picture of the plaintiff, because "the isolated use of those terms does not control the meaning of the excerpt." Id.

The statements appear here in a memorandum informing Dr. Artunduaga that she is being placed on formal probation due to her allegedly substandard performance. See generally Ex. A. In order to make his point, Dr. Song not only makes the universal statements at issue, but also refers to "all of the reviewers," a "360 degree evaluation," of Plaintiff, and "issues being thematically universal when it came to her performance or lack thereof." Ex. A. The Memo concludes by declaring that even a probationary period "would not lead to successful remediation," and that he instead wanted to see her "transition into another specialty or program." Ex. A at 2. The message – and therefore the context – is clear: Dr. Song wished to relay that Dr. Artunduaga could not perform as a surgeon or plastic surgeon, and urged her to choose the path of least resistance by withdrawing from the program instead of inevitably being terminated. Nowhere does he suggest that she can or will succeed moving forward.

Tuite should dictate the result here. Just as in that case, Dr. Song's message is clear and there is no room for interpretation with regard to what he meant to relay in his November 2 Memorandum. The fact that he purports to extend the courtesy of assisting in her transition to make the termination easier for UCMC to swallow does not negate the core message running throughout the entire memorandum. Just as the Illinois Supreme Court rejected the defendant's attempt to cherry-pick a few innocuous references to change the clear meaning of the text at issue, so should the court here. See Tuite, 866 N.E.2d at 128–29. At best, the mention of a transition is an attempt to entice Dr. Artunduaga to leave quietly, but certainly not an implicit endorsement of her promise as a resident in another program.

Defendants' proposed innocent construction of the November 2 Memo statements is also wholly distinguishable from the Green case on which they rely. 917 N.E.2d 450 (Ill. 2009). In Green, the plaintiff alleged that statements regarding his unspecified "misconduct" with and "abuse" of little league players as a coach falsely implied that plaintiff had engaged in some criminal conduct. Id. at 456. Green did not allege that the statements referenced any specific actions that were sexual or otherwise criminal in nature, or that they even referred exclusively to plaintiff's interactions with children. Id. at 461–62. After determining that the allegedly defamatory statements were vague and therefore subject to a number of interpretations, the court looked to the context in which the statements were made. Id. at 463–64 . There, subsequent to the defamatory statements, the defendant had invited Green to participate in little league games and practices in a capacity in which he would interact with children. Id. at 464–65. The court reasoned that the defendant would not have extended such an invitation to an individual who criminally abused children; as such, the only reasonable interpretation of the "abuse" and "misconduct" at issue was the more innocuous one. Id. at 465. As explained above, however, the context of Dr. Song's language leaves no room for interpretation.

Not only does the First Amended Complaint allege that Dr. Song's statements were false when he made them – it specifically alleges that Dr. Song's statements are capable of being proven false. In fact, the FAC includes direct quotes from supervising physicians that contradict Dr. Song's statements. FAC ¶ 64. In light of this, the statements purporting to relay a universal sentiment regarding Dr. Artunduaga's abilities are not an opinion, as a matter of law. See Moriarty v. Greene, 732 N.E.2d 730, 739 (Ill. App. Ct. 2000) (citing Kirchner v. Greene, 691 N.E.2d 107 (Ill. 1998)) (where a statement can be proven as true or false, it is actionable). The consistently definitive nature of Dr. Song's words also remove them from the realm of an

6

opinion, since each statement explicitly and falsely claims that not a single individual in the Department believed that Dr. Artunduaga could adequately perform as a surgeon. See Haynes v. Alfred A. Knopf, 8 F.3d 1222, 1227 (7th Cir. 1993) (listing "precision of the statement" as the first factor to be considered in determining whether a statement is an opinion). Words such as "unanimous," "no one," and "all" are too specific and precise to be dismissed as opinion. See id.

### 2. The April 30, 2012 Letter

For the same reasons explained with respect to the November 2 Memo, Dr. Song's April 30 letter cannot be construed innocently. Dr. Song claims twice in his letter that Plaintiff was unprofessional and in dereliction of her duties. Exhibit B, Apr. 30, 2012 Letter from Dr. Song to Dr. Artunduaga. These global statements do not relate to specific performance failures like those in the cases cited by Defendants. See Anderson v. Vanden Dorpel, 667 N.E.2d 1296, 1302 (Ill. 1996) (statement related only to discrete duty of "following up on assignments"); Mirocha v. Palos Cmty. Hosp., No. 11-cv-4552, 2012 WL 3638171, at *4 (statement related to plaintiff's ability to identify his discrete job duties and work independently); Hach v. Laidlaw Transit, Inc., No. 02 C 996, 2002 WL 31496240, at *2–3 (N.D. Ill. Nov. 7, 2002) (statements were made only with respect to the effect they had on the employer's operations).

Here, Dr. Song's words impute a general inability to properly and professionally carry out her duties as a resident. It is axiomatic that professional behavior and completion of one's job duties are the reasonable expectations of any employer, and not just what UCMC requires of its medical residents. In addition, these criticisms fit squarely into the definition of one of the categories of defamation *per se*. See Green, 917 N.E.2d at 459. These words cannot be read to imply that Dr. Artunduaga is suited for work elsewhere.

7

Additionally, the context of the letter forecloses the possibility that Dr. Artunduaga may succeed in a residency program elsewhere. First, it references the decision to place her on probation, thereby bringing the November 2 Memo into the picture. Second, the letter repeatedly references Dr. Artunduaga's "deficiencies." In sum, there is no room for an innocent interpretation of these words. Even if these statements could be read to mean that Dr. Artunduaga could succeed in a different residency program, a non-surgical residency amounts to an entirely different profession. While the medical degree required for a non-surgical position may be the same, the skill set required and job opportunities available are entirely different. Such positions are not within the realm of the professional Plaintiff has sought since beginning her medical education.

### B. Dr. Song Cannot Assert Privilege as a Matter of Law

Neither Dr. Song's November 2 Memo nor his April 30 letter is entitled to any privilege as a matter of law. As an initial matter, privilege is an affirmative defense. E.g., Quinn v. Jewel Food Stores, Inc., 658 N.E.2d 1225, 1233 (Ill. App. Ct. 1995). As such, a plaintiff in a defamation action is not required to plead any facts to defeat a privilege. Id. In any event, even though Illinois law does not require it to do so, the language of the FAC forecloses the application of any privilege as a matter of law.

A defendant's statement is qualifiedly privileged only where he can show (1) good faith in making the statement; (2) an interest or duty to uphold; (3) that the statement was limited in scope to that interest or duty; (4) a proper occasion; and (5) publication in a proper manner and to proper parties. Kuwik v. Starmark Star Mktg. and Admin., Inc., 619 N.E.2d 129, 133 (Ill. 1993). Here, the FAC states facts showing that the statements were not made in good faith. The FAC includes claims of national origin discrimination and retaliation in violation of 42 U.S.C.§

1981.  FAC ¶ 1.  Several of the factual allegations supporting those claims implicate Dr. Song's actions during the relevant time period, including but not limited to his statement that Plaintiff was not a good "cultural fit" at UCMC.  FAC ¶ 50.  Accepting as true that Dr. Song was motivated by unlawful discrimination or retaliation, his statements cannot have been made "in good faith" as a matter of law.  Defendants therefore cannot establish even this first element of the privilege to defeat Plaintiff's defamation claims.  See Kuwik, 619 N.E.2d at 133.

Even if the court were to accept the argument that Dr. Song's statements were privileged, this is not the end of the inquiry.  If the privilege has been abused, the defamation claim survives.  Parker v. House O'Lite Corp., 756 N.E.2d 286, 289 (Ill. App. Ct. 2001).  Although Plaintiff is not required to anticipate the affirmative defense of privilege, the FAC also includes allegations sufficient to raise a factual issue as to whether Dr. Song abused his privilege.

Where a party publishes false information as a result of his failure to investigate the truth of the matter, the publication is not privileged.  Kuwik, 619 N.E.2d at 136.  Specifically, where a supervisor had access to information which may have contradicted an allegation leveled against an employee, such supervisor has a duty to seek out and review the records available to him that may confirm or refute the allegation.  Gibson v. Phillip Morris Inc., 685 N.E.2d 638, 645 (Ill. App. Ct. 1997).  As Dr. Artunduaga's supervisor, Dr. Song had access to any and all evaluations of Dr. Artunduaga's performance.  The statements included in the November 2 Memo, however, indicate that he either failed to review those evaluations, or that he reviewed them and then lied about them, either of which destroys the privilege.  If Dr. Song was aware at the time that he wrote the November 2 Memo that he was misrepresenting the reviews of Plaintiff's performance, that constitutes the required recklessness to destroy the privilege.  Kuwik, 619 N.E.2d at 135–36 (holding that any "reckless act which shows a disregard for the defamed party's rights"

9

constitutes an abuse of the privilege); see also Delloma v. Consolidation Coal Co., 996 F.2d 168, 172 (7th Cir. 1993) (noting that "if the defendant knew the statements were false, he would be unjustified in making them" and no privilege would apply).

In Illinois, the question of whether the privilege has been abused is one of fact and therefore cannot be resolved on a motion to dismiss. See Kuwik, 619 N.E.2d at133. Here, Plaintiff's FAC presents sufficient evidence to create an issue of fact as to whether Dr. Song abused any privilege he may establish. As a result, Plaintiff's defamation claim should not be dismissed.

### C. Defamation Against UCMC

As explained above, Dr. Song was acting in his capacity as an agent of UCMC, and outside the bounds of any available privilege when he made the statements contained in the November 2 Memo and April 30 Letter. As such, UCMC is liable for his actions pursuant to the doctrine of *respondeat superior*.

## II. PLAINTIFF'S FIRST AMENDED COMPLAINT PROPERLY STATES CLAIMS OF DEFAMATION PER QUOD AGAINST DR. SONG AND UCMC.

### A. Dr. Song's Statements Were Not Privileged.

Plaintiff herein references her discussion regarding the privilege issue, *supra*. For the same reasons Dr. Song cannot establish privilege as a defense to Dr. Artunduaga's claim of defamation *per se*, he cannot establish privilege as a defense to her *per quod* claim.

### B. Plaintiff Need Not Plead Extrinsic Facts in Support of her *Per Quod* Claim.

In light of the nature of the statements at issue, Plaintiff is not required to allege any extrinsic facts to support her *per quod* claim. Where a statement is defamatory on its face, even if it does not fall into any category of defamation *per se*, it is actionable even without extrinsic

facts. Bryson, 672 N.E.2d at 1221–22. Extrinsic facts are required only where they are necessary to demonstrate the defamatory meaning of a statement. Id. at 1221. Here, the statements claim on their face that (1) every individual who had observed Dr. Artunduaga's work believed she would not succeed as a surgeon; or (2) she was unprofessional and failed to carry out her job duties; no explanation as to the harmful nature of the statements is required. Id. (statement that plaintiff was a "slut" is defamatory on its face; failure to plead extrinsic facts is not a valid basis for dismissal of defamation *per quod* claim); Gibson, 685 N.E.2d at 644 (statement that plaintiff violated company policy requires no extrinsic facts).

        C.      **Plaintiff Has Properly Alleged Special Damages.**

Plaintiff has satisfied the requirement that she plead special damages in support of her defamation claim. In order to establish special damages, a party must identify the source of the income she would have received but for the defamatory statements. Such allegations "clearly" satisfy the special damages requirement where they identify annual compensation and benefits. Hach, 2002 WL 31496240, at *4. Here, Plaintiff claims that Dr. Song relied on his own defamatory statements when he refused to renew Plaintiff's contract for a second year, thereby depriving her of the income she would have earned under that contract. FAC ¶ 102.

Plaintiff had already completed the rigorous application process and secured a position as a resident at UCMC. Thus, the Anderson case on which Defendants rely is inapposite. The Anderson plaintiff failed to identify where the alleged lost income would have come from, stating only that she lost "gainful employment" at an organization that had never hired her. Anderson, 667 N.E.2d at 1303–04. The Anderson plaintiff also premised her claim for damages on her unfounded presumption that she would have received a job offer but for defendant's

11

statements about her, despite the fact that the position was never offered nor otherwise guaranteed to her. Id. at 1299–1300. These factors rendered her claim for lost income too hypothetical. As a result, Anderson is inapplicable here.

### D. Defamation Against UCMC

As explained above, Dr. Song was acting in his capacity as an agent of UCMC, and outside the bounds of any available privilege when he made the statements contained in the November 2 Memo and April 30 Letter. As such, UCMC is liable for his actions pursuant to the doctrine of *respondeat superior*.

### III. PLAINTIFF'S FIRST AMENDED COMPLAINT PROPERLY STATES A CLAIM OF TORTIOUS INTERFERENCE WITH HER EMPLOYMENT RELATIONSHIP AGAINST DR. SONG.

As is required to establish a claim of tortious interference with her continued employment at UCMC, Plaintiff's FAC establishes (1) her reasonable expectation of entering into (or, in this case, continuing) a valid business relationship; (2) Dr. Song's knowledge of her expectancy; (3) purposeful interference by Dr. Song; and (4) damages resulting from the interference. Fellhauer v. City of Geneva, 568 N.E.2d 870, 877–78 (Ill. 1991). Contrary to Defendants' assertions, Plaintiff has established her reasonable expectation, and Dr. Song's actions are not entitled to any privilege or other bar on liability. Plaintiff's interference claim should not be dismissed.

### A. Plaintiff had a Legitimate Expectation that her Employment at UCMC Would Continue Beyond her First Year.

The Illinois Supreme Court has declared that the existence of a fixed-term employment contract does not defeat an employee's reasonable expectation of continued employment after the expiration of the contract term. Fellhauer, 568 N.E.2d at 878 (where plaintiff was a "holdover appointee" appointed by a mayor whose term had ended and was therefore expected to be replaced, he still had a legitimate expectation of his continued employment). Regardless of

12

the term of the contract at issue, the FAC shows Plaintiff's reasonable expectation that her employment would have continued through the end of the six-year residency program. Namely, she alleges that as long as the residency program has existed, UCMC has never refused to renew a resident's contract after her first year or otherwise prohibited a resident from completing the program. FAC ¶¶ 103–104. In other words, the employment relationship does not in fact stop at the expiration of each contract year, but is one continuous relationship. Having experienced the lengthy and involved matching process, Plaintiff knew this, and reasonably expected that she would receive the same opportunity as every resident before her.

Plaintiff's well-pleaded complaint establishes far more than the plaintiffs in the cases cited by Defendants. Each of the plaintiffs in those cases failed to point to a single fact that would support their reasonable expectation of the employment with which the defendants allegedly interfered. See Werblood v. Columbia Coll. of Chicago, 536 N.E.2d 750, 755 (Ill. 1989); Williams v. Weaver, 495 N.E.2d 1147, 1152 (Ill. App. Ct. 1986); Cooper v. Durham School Serv., No. 03 C 2431, 2003 WL 22232833, at *9 (N.D. Ill. Sept. 22, 2003)  For her part, the Werblood plaintiff did not allege interference with her continued employment with the defendant, but rather with her employment at some other, unspecified institution "in the Chicago area" where she had not secured employment. Werblood, 536 N.E.2d at 755.

Finally, Defendants' authority on this point comes exclusively from appellate court opinions issued before the Illinois Supreme Court's decision in Fellhauer. See generally, Fellhauer, 568 N.E.2d 870 (Ill. 1991); Werblood, 536 N.E.2d 750 (Ill App. Ct. 1989); Williams, 495 N.E.2d 1147 (Ill. App. Ct. 1986); Cooper 2003 WL 22232833, at *9 (citing Williams). These cases each contradict the well-established, binding precedent that presumes a current employee's reasonable expectation of continued employment. Fellhauer, 568 N.E.2d at 878

13

(citing London Guarantee & Accident Co. v. Horn, 60 N.E.2d 526 (Ill. 1903)). The cases cited by Defendants should not control the outcome here.

### B. Dr. Song's Interference is Actionable and Not Privileged.

In light of the facts, Dr. Song need not have taken any action with respect to a third party in order for Dr. Artunduaga to state a claim for his tortious interference with her employment at UCMC. A supervisor tortiously interferes with the business relationship between his subordinate and the employer where the supervisor acts contrary to the interest of the employer. Hach, 2002 WL 31496240, at *6. Here, the FAC shows that Dr. Song's actions were inseparable from a pattern of unlawful discrimination and retaliation against Dr. Artunduaga. The interference claim also derives from Dr. Song's publication of his defamatory statements. Under no circumstances can these allegedly wrongful actions be said to have been in UCMC's interest, if for no other reason than because they expose UCMC to liability. Thus, the requirement that Dr. Song take some action with respect to a third party does not apply here, and Plaintiff's claim survives. Defendants' unsupported assertion that it is legally impossible for Dr. Song to have interfered with the employment relationship of his own employer has already been rejected by at least one court in this district. Hach, 2002 WL 31496240, at *6 (Nov. 7, 2002). Finally, as explained above, Dr. Song's actions with respect to Plaintiff were not privileged, and Plaintiff's interference claim should not be dismissed on this basis.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

Dated: February 15, 2013          Respectfully submitted,

Alejandro Caffarelli, #06239078          DR. MARIA ARTUNDUAGA
Madeline K. Engel, #06303249
Caffarelli & Siegel Ltd.
Two Prudential Plaza          By: /s/ Alejandro Caffarelli
180 North Stetson Ste. 3150             Attorney for Plaintiff
Chicago, IL 60601
Tel. (312) 540-1230
Fax (312) 540-1231

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the attached document, **Plaintiff's Response to Defendants' Motion to Dismiss Second Count III and Counts IV to VII of her First Amended Complaint**, was served upon the individuals listed below by electronically filing the same with the Clerk of the U.S. District Court of the Northern District of Illinois on February 15, 2013:

Michael G. Cleveland
Andrea L. Lewis
Vedder Price P.C.
222 N. LaSalle Street, Suite 2600
Chicago, Illinois 60601

A courtesy copy will be delivered to Judge Zagel within one business day of filing.

/s/ Alejandro Caffarelli
Attorney for Plaintiff