# Unpublished Opinions

2012 WL 3638171
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Joseph MIROCHA, Plaintiff,
v.
PALOS COMMUNITY HOSPITAL,
an Illinois corporation, and Ken
Lash, individually, Defendants.

No. 11–cv–4542. | Aug. 22, 2012.

Attorneys and Law Firms

Joseph Patrick Berglund, Kenneth Michael Mastny, Berglund & Mastny PC, Oak Brook, IL, for Plaintiff.

Jeremy J. Glenn, Amanda H. Suchecki, Meckler, Bulger Tilson Marick & Pearson, Chicago, IL, for Defendants.

Opinion

MEMORANDUM OPINION AND ORDER

ROBERT M. DOW, JR., District Judge.

*1 Plaintiff Joseph Mirocha filed an eight-count complaint against his former employer, Palos Community Hospital ("PCH"), and his former manager, Ken Lash, primarily asserting claims under the Age Discrimination in Employment Act ("ADEA"). Before the Court is Defendants' motion [17] to dismiss parts of Count II and Counts IV–VIII for failure to state a claim. For the reasons stated below, the motion [17] is granted.

I. Background[1]

[1] On a motion to dismiss, the Court accepts as true all well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn from them. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir.2005).

PCH, a hospital located in Palos Heights, Illinois, hired Mirocha in 2003 as an electrical supervisor in the electrical/physical plant department; he was 51 years old at the time. [2 at ¶¶ 3, 14–15.] As an electrical supervisor, Mirocha supervised assigned employees' work to ensure that it conformed with established procedures, policies, and regulations. [2 at ¶ 16.]

In 2010, the electrical shop facilitated a large electrical infrastructure cut-over. [2 at ¶ 21.] On December 30, Lash gave Mirocha a verbal warning and 30 days to bring the electrical department's database into full compliance. [2 at ¶ 17.] This task was not within Mirocha's job description. [2 at ¶ 19.] Rather, PCH's policies state that department managers, like Lash, are responsible for such issues. [2 at ¶¶ 24, 27.] On February 4, 2011, Lash gave Mirocha a written warning for failing to fulfill his job duties, citing electrical database deficiencies. [2 at ¶ 17.]

On February 18, Mirocha complained to human resources that he was being discriminated against because of his age. [2 at ¶ 28.] On March 4, Lash showed Mirocha a file memorandum indicating that Mirocha had satisfied Lash's earlier concerns. [2 at ¶ 29.] On March 8, however, Lash issued a revised memorandum, recanting his praise of Mirocha. [2 at ¶ 30.] At some point, Lash also wrote in a file memorandum that "[Mirocha's] most significant failure as the electrical supervisor has been his inability to identify what his job duties are and then to work well independently." [2 at ¶ 26.]

On March 28, Mirocha filed a charge of discrimination against PCH with the EEOC, alleging age discrimination and retaliation. [2 at ¶ 32, 18–1.] On April 8, Mirocha's employment was terminated. [2 at ¶ 33.] A human resources representative and Lash were present, but neither discussed the reasons for Mirocha's termination. [2 at ¶ 33.] That same day, Mirocha was escorted off the premises by a security guard. [2 at ¶ 35.] On April 11, Mirocha filed a second charge of discrimination against PCH with the EEOC, alleging retaliation. [2 at ¶ 2, 18–2.]

Rich Chapan, who was under 40 years old at the time, worked in PCH's plant engineering department, which underwent the same infrastructure cut-over as the electrical shop. [2 at ¶ 22.] Chapan and others employees in his department, however, were not warned or disciplined like Mirocha was. [2 at ¶ 22.]

On July 5, Mirocha filed a complaint in federal court, alleging eight counts: Count I (unlawful termination under the ADEA against PCH), Count II (retaliation under the ADEA, Title VII, and Section 1981 against PCH), Count III (retaliation under state law against PCH), Count IV (breach of agreement against PCH), Count V (defamation against PCH), Count VI (defamation against Lash), Count VII (negligent infliction of

emotional distress against PCH), and Count VIII (intentional infliction of emotional distress against PCH). PCH answered Count I, some of Count II, and Count III.[20.] PCH moved to dismiss the remaining counts pursuant to Federal Rule of Civil Procedure 12(b)(6). [17.]

## II. Legal Standard

*2 A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given " 'fair notice of what the * * * claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the " 'speculative level.' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n. 14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969.

## III. Analysis

PCH moves to dismiss parts of Count II and Counts IV–VIII for failure to state a claim. The Court will address each count in turn.

### A. Count II (Retaliation against PCH)

In Count II, Mirocha alleges that PCH took adverse action against him for engaging in protected activity, in violation of the ADEA, Title VII, and 42 U.S.C. § 1981. PCH moves to dismiss the Title VII and § 1981 claims. Mirocha concedes error on this point and withdraws his reference to those statutes. [32 at 2–3.] Accordingly, Count II's Title VII and § 1981 claims are dismissed.

### B. Count IV (Breach of Agreement against PCH)

In Count IV, Mirocha alleges that PCH breached an unidentified "agreement" to engage in progressive discipline before termination. In response to PCH's motion to dismiss, Mirocha attached policy 951 .708; PCH, in turn, attached policy 951.001, the introductory section of the policy manual.[2] [32–1, 37–1.] Under Illinois law, to overcome the presumption of an at-will employment, an employee must show that a handbook or policy meets the traditional contract formation requirements of offer, acceptance, and consideration. See *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (Ill.1987).

[2] Because PCH's policies were referenced in the complaint and are central to Mirocha's claims, the Court may consider the attachments without converting the motion to dismiss into a motion for summary judgment. See *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir.2009).

Mirocha argues that policy 951.708 contains sufficient "positive and mandatory" language to be deemed contractual under *Duldulao* and a similar case, *Nickum v. Village of Saybrook*, 972 F.Supp. 1160 (C.D.Ill.1997).[3] [32 at 6.] In *Duldulao*, the court found that the handbook in question presented an offer where it provided that termination "*cannot occur* without proper notice" and that employees "*are never* dismissed without prior written admonitions." 106 Ill.Dec. 8, 505 N.E.2d at 318 (emphasis added). In *Nickum*, the handbook likewise mandated that disciplinary action *"will* be given" and that a written report *"must* be submitted." 972 F.Supp. at 1165 (emphasis added).

[3] Mirocha also attempts to rely on *Munoz v. Expedited Freight Systems, Inc.*, No. 89 C 3700, 1990 WL 114589 (N.D.Ill. July 23, 1990). There, however, the employer conceded that the handbook created a binding contract between itself and the employee. *Id.* at *2.

*3 Here, by contrast, policy 951.708 states that "[w]hile action should *generally* begin with verbal counseling, the process *may be* initiated at a written counseling step or above for more serious offenses" and then proceeds to describe the possible steps. [32–1 (emphasis added).] The policy therefore indicates that progressive disciplinary procedures may be available but are not mandated. See *Fragakis v. Ill. State Toll Highway Auth.*, No. 05 C 2741, 2006 WL 533359, at *2 (N.D.Ill. Mar.3, 2006) (dismissing similar breach of contract claim); see also *St. Peters v. Shell Oil Co.*, 77 F.3d 184, 188 (7th Cir.1996) (collecting similar cases). Moreover, unlike in *Duldulao*, see 106 Ill.Dec. 8, 505 N.E.2d at 319, the manual here contains a disclaimer. Policy 951.001 states that the manual "serves as an overall guideline and nothing in this manual constitutes an employment contract between PCH and any of its employees." [37–1.] Because Mirocha has not

alleged "a promise clear enough that an employee would reasonably believe that an offer has been made" (*Duldulao,* 106 Ill.Dec. 8, 505 N.E.2d at 318), Count IV is dismissed.

### C. Count V (Defamation against PCH)
In Count V, Mirocha alleges that PCH defamed him by escorting him off the premises by a security guard as other people watched. Under Illinois law, to show defamation *per se,* acts must be so "obviously or naturally harmful" as to "falsely impute ... a lack of integrity in the discharge of plaintiff's duties of employment." *Dubrovin v. Marshall Field's & Co. Employee's Credit Union,* 180 Ill.App.3d 992, 129 Ill.Dec. 750, 536 N.E.2d 800, 803 (Ill.App.Ct.1989). Illinois courts have specifically held that escorting an employee off the premises, without more, is not defamation *per se* because such acts are reasonably susceptible to an innocent interpretation. See, *e.g., Davis v. John Crane, Inc.,* 261 Ill.App.3d 419, 199 Ill.Dec. 133, 633 N.E.2d 929, 938 (Ill.App.Ct.1994) (affirming summary judgment on defamation claim where plaintiff was escorted off premises by security guards); *Dubrovin,* 129 Ill.Dec. 750, 536 N.E.2d at 803 (affirming dismissal of defamation claim where plaintiff was escorted out of office and inspected by security guard). Mirocha fails to distinguish this precedent. Accordingly, Count V is dismissed.

### D. Count VI (Defamation against Lash)
In Count VI, Mirocha alleges that Lash defamed him by distributing disciplinary memoranda to others. Under Illinois law, several categories of statements are recognized as defamation *per se,* including words imputing: 1) an inability to perform or want of integrity in the discharge of duties of office or employment; or 2) lack of ability in a trade, profession, or business. *Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 206 (Ill.1992). But, as previously explained, even a statement falling into one of these categories is not defamatory *per se* if it is reasonably capable of an innocent construction. *Id.* "Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide." *Id.* at 207.

*4 Mirocha alleges that Lash's disciplinary memoranda held Mirocha responsible for tasks that were beyond his job description. Specifically, Lash wrote in a file memorandum that "[Mirocha's] most significant failure as the electrical supervisor has been his inability to identify what his job duties are and then to work well independently." [2 at ¶ 26.] But even this statement is readily subject to an innocent construction: Lash was documenting Mirocha's specific performance failures at this particular job, not imputing a general inability to perform. See *Van Vliet v. Cole Taylor Bank,* No. 10 CV 3221, 2011 WL 148059, at *6 (N.D.Ill. Jan.18, 2011) (collecting similar cases). For this reason, the case on which Mirocha primarily relies is inapposite. See *Randy Gibson v. Philip Morris, Inc.,* 292 Ill.App.3d 267, 226 Ill.Dec. 383, 685 N.E.2d 638, 644 (Ill.App.Ct.1997) (affirming trial court's finding of defamation *per se* where only reasonable construction of coworkers' statements was accusation that plaintiff violated company policy). [4]

---

[4] The Court does not reach Lash's alternative argument that his statements were protected by a qualified privilege because this argument was omitted in his opening brief. See *Nelson v. La Crosse Cnty. Dist. Attorney,* 301 F.3d 820, 836 (7th Cir.2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived.").

### E. Counts VII and VIII (Infliction of Emotional Distress against PCH)
In Counts VII and VIII, Mirocha alleges that PCH engaged in negligent infliction of emotional distress and intentional infliction of emotional distress, respectively. Under Illinois law, tort claims that are "inextricably linked" to a cause of action arising under the Illinois Human Rights Act are preempted. *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir.2000); see also 775 ILCS 5/8–111(D). The Act prohibits, among other things, age discrimination. 775 ILCS 5/1–102(A).

Here, Mirocha brings emotional distress claims based on "the acts complained of above," namely, his allegations of age discrimination. [2 at ¶¶ 59, 60.] Because PCH's conduct is only offensive if it was based on Mirocha's age, the emotional distress claims are inextricably linked to the ADEA claims. See *Krocka,* 203 F.3d at 516 (affirming dismissal of similar emotional distress claim). To the extent Mirocha contends that dismissal is inappropriate because his emotional distress claims depend only on his defamation claims [see 32 at 15], the latter claims are no longer viable. Accordingly, Counts VII and VIII are dismissed.

### IV. Conclusion
For these reasons, Defendants' motion to dismiss [17] is granted. In the event that Plaintiff believes that he can cure the deficiencies identified above in an amended complaint,

consistent with legal authority and Rule 11 concerns, Plaintiff is given 21 days in which to submit a motion for leave to file an amended complaint. If no such motion is filed—or if the motion is denied—the case will proceed with Counts I, II (ADEA claim only), and III.

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 31496240
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Robert E. HACH, Plaintiff,
v.
LAIDLAW TRANSIT, INC., d/b/a Laidlaw Education Services, Peter Widdrington and John R. Grainger, Defendants.

No. 02 C 996.  |  Nov. 7, 2002.

Opinion

### ORDER

GRADY, J.

*1 The defendants' motion to dismiss the complaint [ ] is granted in part and denied in part, as follows: The motion is granted as to Count I, and Count I is dismissed to all defendants; the motion to dismiss Count II is denied as to the defendants Laidlaw Transit, Inc. and John R. Grainger; the motion is allowed as to the defendant Peter Widdrington, and Count II is dismissed as to Widdrington; the motion to dismiss Counts III and IV is denied; and the motion to dismiss Count V is granted; the defendant Laidlaw Transit, Inc., is dropped from Count III.

This case is set for status on December 11, 2002 at 10:30 a.m.

Plaintiff's motion to strike an exhibit attached to defendants' reply memorandum [ ] is granted. (The court did not rely on this exhibit in ruling on the motion to dismiss, and the motion to strike is granted not on the merits but as a means of avoiding an unnecessary issue.)

### MEMORANDUM OPINION

Robert E. Hach, the plaintiff in this diversity case, sues his former employer, Laidlaw Transit, Inc., and two individuals, Peter Widdrington and John R. Grainger, alleging defamation, intentional interference with reasonable business expectancy, and breach of implied contract.

The defendant Laidlaw Transit, Inc. is a wholly owned subsidiary of Laidlaw, Inc., a Canadian Corporation that is presently in bankruptcy.

*2 Beginning in the early 1990s, Hach was employed in a series of executive positions with Laidlaw Education Services ("Laidlaw Education"), a division of Laidlaw Transit, Inc. Laidlaw Education is the largest provider of school business transportation services in North America. Neither Laidlaw Transit, Inc. nor Laidlaw Education is in bankruptcy.

The defendant John R. Grainger served in various executive positions with Laidlaw, Inc. and served on its board of directors as well as the board of Laidlaw Transit, Inc. The defendant Peter Widdrington served as chairman of the boards of directors of both Laidlaw, Inc. and Laidlaw Transit, Inc.

The complaint alleges that when Laidlaw, Inc. went bankrupt, Grainger and Widdrington conspired with each other to oust plaintiff from his position as president and chief executive officer of Laidlaw Education and to obtain the position for Grainger. This was allegedly accomplished by a series of defamatory statements that Grainger made about plaintiff at the October 12, 2001 meeting of the Laidlaw, Inc. board of directors. The complaint alleges that Grainger told the directors on that occasion:

(i) that Hach's management posture and attitude was that of a victim and not that of a winner;

(ii) that the operating results of Laidlaw Education under Hach's management were dwindling;

(iii) that Hach's management opinions and estimates as to Laidlaw Education's future performance were fragile and weak;

(iv) that Hach's management of his subordinates caused disruption over the issue of centralization of operations at Laidlaw Education;

(v) that Hach's management destroyed the previously healthy working relationship between Laidlaw Education and the Company personnel located in Burlington, Ontario; and

(vi) that because of Hach's failing management Hach should be terminated as President and Chief Executive Officer of Laidlaw Education and that Grainger should take said positions.

(Complaint, ¶ 26). The complaint alleges that Widdrington was present at the meeting and, "by his silence, affirmed

Grainger's false utterances to the members of the Board of Directors of Laidlaw, Inc." *Id.* at ¶ 28.

As a result of these statements by Grainger, the Laidlaw, Inc. board of directors terminated Hach as president and chief executive officer of Laidlaw Education and replaced him with Grainger.

The complaint alleges specifically why each of Grainger's statements to the board of directors was false, describing in detail Hach's outstanding performance throughout his employment with Laidlaw Education and specifically how the company prospered under his direction.

The defendants have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that none of the five counts states a claim upon which relief can be granted.

### The Defamation Counts

Count I sets forth the statements made by Grainger at the October 12 meeting and alleges that because they "falsely imputed a lack of ability on the part of Hach to perform, manage and engage in his profession and business," the statements were "defamatory *per se.*" Complaint, ¶ 40.

**\*3** Certain categories of defamatory statements are considered to be so injurious to reputation that no proof of special damage is required. Damage is presumed. One of these categories of *"per se"* defamation is "words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Bryson v. News America Publications, Inc.,* 672 N.E.2d 1207, 1215 (Ill.1996). The *per se* rule is subject to the companion rule that a statement "will not be found actionable *per se* if it is reasonably capable of an innocent construction." *Id.* Importantly, "[w]hether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide ." *Id. Bryson* dealt with a different category of *per se* defamation, imputation of fornication or adultery, and so is factually inapposite here. A case more useful on the facts is *Anderson v. Vanden Dorpel,* 667 N.E.2d 1296 (Ill.1996), which applied the innocent construction rule in an employment context. Plaintiff in that case brought suit against a former employer, alleging that defendant had defamed her by informing a prospective employer that she "did not follow up on assignments." *Id.* at 1298. The Illinois Supreme Court stated:

> We believe that Vanden Dorpel's alleged comment regarding the plaintiff's failure to follow up on assignments may be innocently construed and hence may not form the basis for a *per se* action. We agree with the defendants that the remark, construed in context, may be understood to mean simply that the plaintiff did not fit in with the organization of the employer making the assessment and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future positions.

*Id.* at 1302. The *Anderson* opinion discusses several other cases which had construed critical comment concerning a plaintiff's job performance as imputing simply a failure to perform satisfactorily in that particular job setting, not an inability to perform that kind of job regardless of the setting. We are persuaded by the *Anderson* discussion that Count I of Hach's complaint does not allege defamation *per se.* Each of the statements allegedly made by Grainger is context-specific, and none of them imputes a general inability to perform comparable work in some other setting.

Accordingly, Count I will be dismissed for failure to state a claim for *per se* defamation.

### Count II—Defamation Per Quod

A different Latin name is used to describe a defamation action in which "the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain the defamatory meaning." *Anderson* at 1303, citing *Kolegas v. Heftel Broad.,* 607 N.E.2d 201 (Ill.1992). Such an action is one for defamation *per quod.* In that kind of action, damages are not presumed but must be specially pleaded and proved. *Id.* Count II of Hach's complaint purports to allege defamation *per quod,* setting forth the statements made by Grainger, explaining why the statements were false and alleging that as a result of the defamatory statements plaintiff was discharged from his employment with Laidlaw Education, suffering a loss of income and other financial benefits.

*4 Defendants move to dismiss Count II on several grounds. First, they argue that special damages are not sufficiently pleaded. It is true that plaintiff cannot recover under Count II for his claimed "loss of his professional standing in the community," but the claimed "loss of his annual lucrative compensations, plus retirement and other benefits that, but for Grainger's, Widdrington's, and Laidlaw Transit, Inc.'s slanders, he would have received for many years," is clearly a sufficient allegation of special damage.[1]

[1] The defamation counts are brought against all three defendants, alleging that Grainger and Widdrington acted as "agents" of Laidlaw, Inc. in making the defamatory statements. We are not clear how the interests of Laidlaw, Inc. were advanced by the discharge of Hach from the employ of Laidlaw Education, and we would question whether this "agency" can be proved. However, that factual issue is not before us at this time.

Another ground asserted by defendants for dismissal of Count II is that the statements made by Grainger were simply opinions, not statements of fact that can be shown to have been either true or false. Proof of defamation requires a showing of falsity (truth is a complete defense, see *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir.1993)), and it is in the nature of an opinion that it is not demonstrably true or false.

Moreover, opinions, as opposed to statements of fact, enjoy First Amendment protection and are not actionable as defamation. *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1229–30 (Ill.App.Ct.1995).

Defendants argue that all of Grainger's statements were opinions; plaintiff counters that none of them were. We think some were and some were not. The assessment must be made in light of what the complaint alleges about Hach's accomplishments at Laidlaw Education and the alleged lack of any factual basis for finding fault with his performance. For purposes of this motion, we must assume the truth of these allegations.

Taking Grainger's alleged statements one at a time, our conclusions are as follows:

*Statement (i):* "That Hach's management posture and attitude was that of a victim and not that of a winner."

We think the words used in this statement are too vague to permit proof that the statement was true or false. What is a "posture?" An "attitude?" A "victim?" A "winner?" What did Grainger mean by these words, and what did each of the members of the board of directors understand each of the words to mean? It is difficult to imagine what kinds of evidence the parties would submit at trial, and in any event we doubt that a manageable issue could be framed for the jury.

*Statement (ii):* "That the operating results of Laidlaw Education under Hach's management were dwindling."

We have no problem with this as a statement that was either true or false (especially if, as alleged in the complaint, the profits of Laidlaw Education continually escalated under Hach's management). The jury can be given the dictionary definition of "dwindle"[2] and can be asked to find whether the statement was true or false. Cf. *Quinn*, 658 N.E.2d at 1231 (illustrating use of a dictionary in a defamation case).

[2] "To become steadily less: diminish in size, amount, or quality: SHRINK." *Webster's Third New International Dictionary*, 706 (1971).

*Statement (iii):* "That Hach's management opinions and estimates as to Laidlaw Education's future performance were fragile and weak."

*5 Whether this can be regarded as a factual statement will depend upon what Hach's "management opinions and estimates" actually were and whether there is a factual basis upon which the jury could determine whether they were timid or, on the other hand, realistic or even optimistic in light of Laidlaw's actual prospects. This could turn out to be something that is not factually provable, but that remains to be seen.

*Statement (iv):* "That Hach's management of his subordinates caused disruption over the issue of centralization of operations at Laidlaw Education."

"Disruption" is somewhat vague, but what if the facts show there was no problem whatever, which is what we would assume to be true from the allegations of the complaint? If Hach's subordinates can be shown to have been content with the centralization of operations, and there was no commotion over the issue, this statement could be found to have been factually untrue.

*Statement (v):* "That Hach's management destroyed the previously healthy working relationship between Laidlaw Education and the Company personnel located in Burlington, Ontario."

The word "destroyed" is specific enough to be capable of proof or disproof.

> *Statement (vi):* "That because of Hach's failing management, Hach should be terminated as President and Chief Executive Officer of Laidlaw Education and that Grainger should take said positions."

Everything here is an opinion except the introductory phrase "that because of Hach's failing management...." "Management" is a broad term, and its meaning in this specific context is problematic. And what is "failing" management? Apparently it would not need to be totally failing, but only sufficiently failing to justify Hach's replacement. How failing would that be? In sum, we think this is a statement that could not be shown in a trial to have been either true or false.

The motion to dismiss will be denied as to statements (ii), (iii), (iv) and (v) and granted as to statements (i) and (vi).

### The Defamation Claim Against the Defendant Widdrington

Widdrington is not alleged to have made the defamatory statements but simply to have been present when they were made, to have known they were false, and to have remained silent. He argues that this is not enough for liability, and we agree. Plaintiff has cited no authority for an affirmative duty to contradict a defamatory statement made by another. Count II alleges that Grainger and Widdrington had a "plan" to get rid of Hach, but it does not specifically allege that the plan contemplated that Grainger would make the specific defamatory statements he allegedly made to the Board. Even if it did, it would be necessary to allege facts that would support some kind of aiding and abetting theory some assistance that Widdrington rendered that made Grainger's defamation more likely to be acted on by the Board, for instance.

The only authority plaintiff cites in support of Widdrington's liability is *Van Horne v. Muller,* 705 N.E.2d 898 (Ill.1998). The case is clearly distinguishable because the accomplice there, unlike Widdrington, actually joined the principal defendant in making the defamatory statements. *Id.* at 718, 720.

*6 Count II will be dismissed as to the defendant Widdrington for failure to state a claim.

### Count III—Intentional Interference With Hach's Reasonable Business Expectancy

Count III alleges that the defendants, by means of the defamation alleged in the previous counts, caused Hach to lose what he reasonably expected would be continued employment with Laidlaw Education. All three defendants, including Laidlaw Transit, Inc., are named as defendants in the count, and, by reason of the incorporation of allegations from earlier portions of the complaint, Grainger and Widdrington are alleged to have acted as agents of Laidlaw Transit, Inc. Because of this, defendants have moved to dismiss, arguing that as a matter of law an employer cannot interfere with its own business relationship with its employees. Moreover, since the count alleges that Grainger and Widdrington were acting within the scope of their authority as agents of Laidlaw Transit, Inc., plaintiff cannot show that they were acting contrary to the interests of the corporation, a necessary allegation of an intentional interference claim.

In response, plaintiff states that the inclusion of Laidlaw Transit, Inc. in Count III was inadvertent and, in effect, asks that the corporation be dropped from Count III. It is clear from the allegations of Count III that plaintiff intends to allege that Grainger and Widdrington were not acting in the interest of Laidlaw Transit, Inc., but, rather, in the interest of Grainger: "[B]oth Widdrington and Grainger knew that the sole reason for getting rid of Hach and replacing Hach with Grainger as President and Chief Executive Officer of Laidlaw Education was not to benefit or further the corporation, nor for any reasonable and legitimate business reason, but solely to personally benefit Grainger...." Complaint, ¶ 64.

Laidlaw Transit, Inc, will be dropped from Count III, and the motion of the defendant Grainger to dismiss Count III will be denied.

The defendant Widdrington moves to dismiss Count III, again on the ground that his silence does not provide a basis for liability. We agree, and will dismiss Count III as to the defendant Widdrington.

### Count IV—Conspiracy to Interfere with Reasonable Business Expectancy

Defendants move to dismiss this claim on the basis that there is no independent tort of civil conspiracy, but only an action for a conspiracy to commit an underlying substantive tort. Because defendants believe Count III fails to state a claim against any defendant, they argue that Count IV should be dismissed as well. However, since we have held that Count III does state a claim as to Grainger, we will allow Count IV to stand as to all three defendants, Grainger, Widdrington and Laidlaw Transit, Inc.[3]

[3] The parties have not briefed the question of whether Widdrington and Laidlaw Transit, Inc. can be liable as conspirators even though they are not liable on the substantive count, and we will not address the issue at this time.

### Count V—Breach of Implied Contract

Count V of the complaint, brought against Laidlaw Transit, Inc. only, is based upon a theory of a contract implied in fact. When Hach was discharged by Laidlaw Transit, Inc., he was tendered a severance agreement which included a 2–stage payment rather than a payment in one lump sum, and which also included a non-compete clause. He alleges in Count V that all other executives who left the employ of Laidlaw were given severance agreements providing for one lump-sum payment and containing no non-compete provisions. He alleges that this "policy" of Laidlaw Transit, Inc. amounted to a promise implied in fact by Laidlaw that, if and when Hach's turn came, he would be tendered the same kind of severance agreement.

*7 We agree with Laidlaw that the allegations of Count V fail to state a claim. Hach may have had reason to hope that he would be treated the same as the other executives, but we find no factual allegations which, if proved, would establish that Laidlaw Transit, Inc. had impliedly promised to do that.[4]

[4] Laidlaw Transit, Inc. argues that in fact the circumstances were different as to each of these other executives, but, for purposes of this motion, we will assume there were no material differences.

Count V will be dismissed for failure to state a claim upon which relief can be granted.

### Conclusion

In summary, the court's rulings on the defendants' motion to dismiss the complaint are as follows:

The motion is granted as to Count I, and Count I is dismissed as to all defendants.

The motion to dismiss Count II is granted in part and denied in part as to the defendants Laidlaw Transit, Inc. and John R. Grainger. The motion is granted as to the defendant Peter Widdrington, and Count II is dismissed as to Widdrington.

The motion to dismiss Count III is denied as to the defendant Grainger and granted as to the defendant Widdrington. The defendant Laidlaw Transit, Inc., is dropped from Count III.

The motion to dismiss Count IV is denied as to all defendants.

The motion to dismiss Count V is granted.