UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNIVERSITY OF CHICAGO MEDICAL CENTER and DR. DAVID SONG, individually,<br><br>    Defendants. | No. 12 C 8733<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Maria Artunduaga has brought this action against the University of Chicago Medical Center ("UCMC") for employment discrimination, a hostile work environment, and retaliation, all in violation of 42 U.S.C. § 1981, and against UCMC and Dr. David Song for Defamation *per se*, and Defamation *per quod*, and against Dr. Song for Intentional Interference with Employment. Currently before the Court is Defendants' motion to dismiss the defamation and intentional interference claims, or Counts III-VII of the First Amended Complaint, for failure to state a claim.[1] Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' motion is granted.

### BACKGROUND

In June 2011, Plaintiff began a residency at UCMC in the Plastic and Reconstructive Surgery program. Her supervisor there was the individual defendant, Dr. David Song. Plaintiff signed a one-year residency contract, renewable at the University's discretion. If completed, the residency program would last six years.

---

[1] As Defendants note, the Complaint lists two "Count III's." The defamation claim at issue here is the second "Count III" in the complaint, but for purposes of this order will be referred to as simply Count III.

1

In November 2011, Plaintiff met with Dr. Song and others to discuss what Dr. Song apparently viewed to be unsatisfactory performance on the part of Plaintiff. The substance of this meeting was later summarized in a memo written by Dr. Song (the "November Memo") that was subsequently distributed to approximately 20 UCMC employees.

Plaintiff was placed on probation on November 15, 2011. Later, on March 27, 2012, she was informed that UCMC would not be renewing her contract for a second year. On April 30, 2012, Dr. Song sent Plaintiff a letter (the "April Letter") summarizing her status at UCMC and setting forth for her a new assignment for the completion of her internship year. Dr. Song sent copies of this letter to Barry Kamin, Director of Graduate Medical Education and Jane McAtee, Associate General Counsel.

Finally, a grievance hearing was held on May 16, 2012, where Dr. Song read aloud an August 31, 2011 email (the "Hearing Email") containing critical comments about Plaintiff's performance by General Surgery Chief Resident John Seal. While reading the email, Dr. Song is alleged to have included an additional critical assessment of Plaintiff's performance that was not actually articulated in the email.

Plaintiff points to specific statements included in the November Memo, the April Letter, and Dr. Song's recitation of the Hearing Email, alleging that they constitute defamation. Plaintiff also alleges that Dr. Song's conduct in connection with the three communications and their allegedly defamatory content constitutes intentional interference with employment.

## DISCUSSION

Although state law governs the substantive aspects of the claims currently before the Court, federal pleading rules apply. *See Fishering v. City of Chicago*, 2008 WL 834436, *2 (March 27, 2008, N.D.Ill. 2008). When considering a motion to dismiss for failure to state

claim, the court treats all well-pleaded allegations as true, and draws all reasonable inferences in plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level, that is, the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Id*.

**A. Defamation**

"A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him. *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 10 (1992). "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill.2d 478, 491 (2009).

Further, "statements of opinion, although defamatory, do not give rise to a defamation claim." *Giant Screen Sports v. Canadian Imperial Bank Of Commerce*, 553 F.3d 527, 534 (7th Cir. 2009) (and cited cases). Actionable defamation must contain an objectively verifiable factual assertion. *Id*. at 535. "Although in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law." *Id*.

3

Statements may be considered defamatory *per se* or defamatory *per quod*. When a statement is *per se* defamatory, the statement's defamatory character is apparent on its face. *Kolegas*, 154 Ill.2d at 10. The words used are so obviously and materially harmful to the plaintiff that the damages element of the claim is presumed. *Id*.

In Illinois, a statement that is allegedly *per se* defamatory must fit into one of five categories: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication. *Green*, 234 Ill.2d at 492.

Even if a statement were to fit within one of these categories, however, it still will not be actionable if it is reasonably capable of an innocent construction. *Id*. at 499. "Under the 'innocent construction rule,' a court must consider the statement *in context* and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Id*. (emphasis in original). "[A] statement reasonably capable of a non-defamatory interpretation, given its verbal or literary context, should be so interpreted. There is no balancing of reasonable constructions." *Id.* at 500.

Statements are considered defamatory *per quod* when the defamatory character of the statement is not apparent on its face. *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 417 (1996). Extrinsic facts are thus required to explain its defamatory meaning. *Id*. Unlike defamation *per se*, damages are not presumed, and the plaintiff must allege specific facts establishing special damages. *Id*.

Finally, the preliminary construction of an allegedly defamatory statement is a question

of law to be decided by the Court. *Green*, 234 Ill.2d at 492; *Tuite v. Corbitt*, 224 Ill.2d 490, 511 (2006).

There are problems with Plaintiff's complaint that are peculiar to the *per se* claims and there are problems with the complaint that are peculiar to the *per quod* claim. For example, the statements are largely susceptible of an innocent construction, fatal to Plaintiff's *per se* claims. And Plaintiff has not alleged any specific facts that establish special damages,[2] which is fatal to her *per quod* claims.

But the overarching problem with Plaintiff's defamation claims, both *per se* and *per quod*, is that the statements, while perhaps defamatory, are nevertheless non-actionable statements of opinion.

All of Dr. Song's statements, taken as a whole, reveal a supervisor who is frustrated with an employee who he believes is not performing satisfactorily. The tone, particularly in the case of the memo, is one of regret. Dr. Song describes what he apparently believes to be Plaintiff's shortcomings, along with several incidents that, in his view, evidenced those shortcomings. His language is not incendiary or gratuitous; it is even-tempered and professional throughout.

1. The November Memo

Consider a representative selection from the November Memo:

> Acknowledging that this was a very difficult meeting, we convened an urgent meeting with Dr. Maria Artunduaga after her most recent rotation on our service through the month of October. It was unanimous amongst the numerous evaluators across the Department of Surgery, particularly within our section, that the issues that Dr. Artunduaga has will be extremely difficult to correct within the time allotted during residency period. We all recognize that she is a pleasant, hard-working individual who most certainly is intelligent. However, the overwhelming issue was thematically agreed upon once again by all of the reviewers, including a 360 degree evaluation by a nurse practitioner who worked

---

[2] Plaintiff's residency contract stated explicitly that UCMC made "no commitment" to renew the Agreement. The term of the contract was fulfilled – Plaintiff only claims the loss of future potential income, which is insufficiently precise to satisfy a special damages requirement. *See Anderson*, 172 Ill.2d at 416-17.

5

with her extensively.

Throughout the entire course of the month, Dr. Artunduaga failed to communicate properly and failed to efficiently organize a system of rounding and patient follow-up. These are thematically consistent with the evaluations Dr. Artunduaga received in the months of July, August and September where it was seen that "she frequently appeared disorganized, unsure of her knowledge and at time had an unsuccessful doctor/patient relationship." Another set of reviewers stated that "she is often frazzled when presenting patient issues, and it was very difficult to keep her organized and goal oriented."

This is not just focusing on specific incidents, and I relayed to Dr. Artunduaga that if these incidents were isolated or if they were thematically different, we would have had a much different conversation of remediation. With all of these issues being thematically universal when it came to her performance or lack thereof, it was quite clear to all of the reviewers that Surgery, and in particular Plastic and Reconstructive Surgery, just would not be the best fit for Dr. Artunduaga.

Regrettably, this is painful for all of us to discover and we have assured Dr. Artunduaga that we would like to move forward in every way possible to support her transition into another specialty or another program. We discussed the probability of probation, but we agreed that probation at this level would not lead to successful remediation and only lead to a permanent deleterious record in her portfolio, thus jeopardizing her future possibilities. I have relayed this to Dr. Artunduaga and have confirmed that she has understood them clearly. I also as a courtesy have given her 24 hours to decide whether she would like to proceed with probation or if she would like to consider a transition in her career where we would all be helpful. She has agreed to get back with me in 24 hours.

The meeting ended with Dr. Artunduaga stating that she recognized and understood these issues, yet being adamant that she has improved. This has further reiterated to us that she feels that she has improved, however, no one else in the entire section and across the department has recognized that fact. Once again, this was a confirmatory step for us, understanding the disconnect between her skill set, the understanding of the situation and the reality of the situation at hand. Regrettably, these things have come to fruition and I have relayed to her both my personal and our collective disappointment at the situation, and have once again relayed to her that we will do whatever is in our power to facilitate her transition.

Out of this, Plaintiff extracts three statements that she alleges to be defamatory:

1) It was unanimous amongst the numerous evaluators across the Department of Surgery, particularly within our section, that the issues that Dr. Artunduaga has will be extremely difficult to correct within the time allotted during residency

6

period.

2) [I]t was quite clear to all of the reviewers that Surgery, and in particular Plastic and Reconstructive Surgery, just would not be the best fit for Dr. Artunduaga.

3) [Dr. Artunduaga] feels that she has improved, however, no one else in the entire section and across the department has recognized that fact.

Taken in context, I am not persuaded that these statements amount to more than non-actionable opinion. Even read in isolation, Plaintiff's argument is difficult to credit. Plaintiff contests that the word "unanimous" in the first statement is too specific and precise to be dismissed as opinion. That could be true, but not as the word is being used here. Strictly speaking, the quality of being "unanimous" is binary. Something is or is not unanimous – there are no degrees of unanimity. Here, however, Dr. Song uses the word more colloquially. It is improper, in the strict sense of the word, to essentially say that a decision was unanimous in the Department of Surgery generally, and *really* unanimous within Dr. Song's particular section.

Perhaps Dr. Song meant that, across the Department of Surgery, the view was close to being unanimously held, and within their section it was quite literally unanimously held. Or perhaps he was simply speaking a bit informally and was not choosing his words quite so carefully. In any event, Plaintiff's ability to point to two evaluators within the Department of Surgery who, arguably, might have dissented from this view does not render the statement demonstrably false and therefore outside of the protection afforded statements of opinion. One can imagine a context where use of the word "unanimous" would allow a statement to be proven true or false and thus actionable. That is not the case here.

The other two statements are vulnerable to the same critique, where the language is again too imprecise to place the statements outside the category of non-actionable opinion. What does it mean for Plastic and Reconstructive Surgery to "just not be the best fit" for Plaintiff?

7

Although she contests to the contrary, her assertion that one doctor in the department, Dr. Edwin Kaplan, stated that Plaintiff "will make a fine resident as she gains more experience and gains more confidence" does not undermine the allegedly defamatory statement in the memo. Dr. Kaplan could certainly still have agreed, not inconsistent with his initial statement, that plastic and reconstructive surgery was not the best fit for Plaintiff.

The complaint alleges that another doctor in the department, Dr. Peter Angelos, wrote an evaluation that stated "despite [certain] weaknesses, she improved during the rotation." As a formal matter, this appears to render the third allegedly defamatory statement from the memo false. I am not persuaded, however, that this is sufficient to render the statement actionable. Taken in context, this is an expression of Dr. Song's views on Plaintiff's performance, and his views on the assessments of others. Plaintiff cites to *Moriarty v. Greene*, 315 Ill.App.3d 225, 233 (1st Dist. 2000), for the proposition that "where a statement can be proven as true or false, it is actionable." But that is not what the *Moriarty* Court held. Stated correctly, the *Moriarty* Court held that "[o]nly statements capable of being proven true or false are actionable." *Id*. The distinction is clear; Plaintiff's formulation of the principle confuses a necessary condition with a sufficient condition. In any event, Dr. Angelos' observation that Plaintiff did in fact show improvement is not enough to controvert a finding that Dr. Song's statement is non-actionable opinion.

2. The April Letter

Plaintiff's claims regarding allegedly defamatory statements in the April Letter fare no better. By April, it appears Dr. Song's view of Plaintiff's performance had deteriorated considerably. Plaintiff complains of three statements contained in the letter:

1) You have continued to exhibit disruptive and unprofessional behavior.

8

    2) You have failed to fully participate in the Endocrine assignment.

    3) Any further incidents of unprofessional behavior, insubordination, harassment, threats or dereliction of your responsibilities will result in your immediate termination from the program.

The complaint alleges that these statements are false. But again, such statements amount to no more than a supervisor's assessment and opinion of an employee's performance. Drs. Song and Artunduaga may disagree as to what it means to "fully" participate in an Endocrine assignment, and they may not see eye to eye as to what constitutes "disruptive" behavior. And that is precisely the point – these statements are matters of opinion. As such, though they may be defamatory, they are not actionable.

Plaintiff also complains of allegedly defamatory statements made by Dr. Song at the May, 2012 grievance hearing. I note that Plaintiff makes no mention of these statements in her briefing, but these allegations are, in any event, similarly without merit.

Taken as a whole, this is an employer expressing his views on the unsatisfactory performance of an employee. Dr. Artunduaga has clearly suffered an adverse employment action, and, alleging that this action was motivated by animus toward her national origin, she has brought a § 1981 action against her employer. But even if those allegations are true, and all of the above is mere pretext for an unlawful termination, the statements here still do not create a cause of action for defamation.

Counts III and V, Plaintiffs *per se* and *per quod* defamation claims against Dr. Song are therefore dismissed. Because Counts IV and VI against UCMC are derivative of Counts III and V on the basis of *respondeat superior*, Counts IV and VI are also dismissed.

**B. Intentional Interference With Employment**

    Finally, Plaintiff has alleged intentional interference with employment against Dr. Song.

9

In order to state such a claim, a plaintiff must show "(1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 511 (1991).

      This claim fails as well because Plaintiff has not demonstrated a reasonable expectation of having her contract renewed. The language in her residency contract was explicit: "The Resident/Fellow understands and acknowledges that this Agreement expires no later than the date set forth in Section 1 and that UCMC makes no commitment to renew this Agreement." The one-year term of Plaintiff's residency contract was fulfilled. "[T]he mere hope of continued employment, without more, does not constitute a reasonable expectancy as must exist to state a cause of action for tortious interference." *Werblood v. Columbia College of Chicago*, 180 Ill.App.3d 967, 976 (1st Dist. 1989).

## CONCLUSION

      For the foregoing reasons, Defendant's motion is granted, and Counts III, IV, V, VI, and VII of the First Amended Complaint are therefore dismissed.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: May 16, 2013