# EXHIBIT A

# Litigation

| | |
|---|---|
| **From:** | Maria Artunduaga <martunduaga@gmail.com> |
| **Sent:** | Thursday, August 09, 2012 9:05 AM |
| **To:** | Ricardo Garcia; Antonio Copete |
| **Cc:** | angiear86@gmail.com; Mami |
| **Subject:** | Fwd: Analysis |
| **Attachments:** | Analysis of Claims.docx; Untitled attachment 05356.htm |

Begin forwarded message:

> **From:** Madeline Engel <m.engel@caffarelli.com>
> **Date:** August 9, 2012 9:32:55 AM EDT
> **To:** "Maria Alexandra Artunduaga, M.D. (martunduaga@gmail.com)" <martunduaga@gmail.com>
> **Cc:** Alejandro Caffarelli <a.caffarelli@caffarelli.com>
> **Subject: Analysis**
>
> Maria,
>
> Attached please find the document we have put together outlining the elements and caselaw pertaining to each claim we believe you may be able to bring against UCMC.
>
> We will need your assistance in identifying the evidence that will support each element of each claim. Once you have done this, we will be in a position to determine which causes of action we want to raise at the mediation, and calculate the damages you may demand for each one.
>
> We look forward to speaking with you this afternoon.
>
> Madeline
>
> **Madeline K. Engel**
> Caffarelli & Siegel Ltd.
> Two Prudential Plaza
> 180 N. Stetson Ave, Suite 3150
> Chicago, Illinois 60601
> T: (312) 540.1230
> F: (312) 540.1231

1

MA003221

ATTORNEY-CLIENT PRIVILEGED
ATTORNEY WORK PRODUCT

Maria Artunduaga v. UCMC – Potential Causes of Action

Title VII – National origin discrimination, retaliation (SOL – 90 days after receiving Notice of Right to Sue)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| Discrimination<br>1. P is member of a protected class<br>2. P was meeting employer's legitimate performance expectations<br>3. P suffered an adverse employment action<br>4. Other similarly situated employees who were not members of protected class were treated more favorably<br><br>Retaliation<br>1. P engaged in a statutorily protected activity (i.e., complaints about discrimination)<br>2. P suffered a materially adverse employment action (i.e., termination)<br>3. Causal connection exists between (1) and (2)<br>   a. Alternative to (3), may show that<br>      i. P was meeting employer's legitimate expectations and<br>      ii. P was treated less favorably than employees who did not complain | |
| **Caselaw** | |
| Comments about accent can support N.O. discrimination claim, as accents are "generally recognized as a manifestation of national origin." A few remarks alone will not establish discrimination, but provide indirect evidence; must link disparaging comments about accent to adverse employment action, prove that stated reason for termination was pretext for discrimination. *Hasham v. Calif. State. Bd. of Equalization*, 200 F.3d 1035, 1044, 1050 (7th Cir. 2000).<br><br>An employer may base an employment decision upon an individual's accent if the accent "interferes materially with job performance." *Fragante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989). | |

1

MA003222

ATTORNEY-CLIENT PRIVILEGED
ATTORNEY WORK PRODUCT

But evaluations of communication skills are highly subjective and therefore subject to the scrutiny of a court or jury to determine whether the criticism of communications skills is "not just an attempt to disguise national origin discrimination." *E.E.O.C. v. Teleservices Marketing Corp.*, 405 F.Supp. 2d 724, 728 (E.D. Tex. 2005).

Jury may determine itself whether accent would adversely affect employee's ability to do her job; evidence that employer made comments on employee's cultural background and communication skills may be evidence of national origin discrimination. *E.E.O.C. v. Orkin Exterminating Co.*, 63 F. Supp. 2d 684, 692 (D. Md. 1999).

Issue of whether "communications skills" was a legitimate problem should go to jury; question remains as to what documentation UCMC can produce to support claims regarding unsatisfactory performance.

**42 U.S.C. § 1981\*** – Race discrimination, retaliation (SOL – 4 years)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| Same as Title VII | |

**Caselaw**

National origin claims not recognized, but race defined broadly, includes "identifiable classes of persons who are subjected to discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraki*, 481 U.S. 604, 614 (1987).

§ 1981 claims analyzed under same rubric as Title VII claims. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

**Breach of Contract\*** (SOL – 10 years)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| 1. Identify contract term(s)<br>2. Identify breach | |

2

MA003223

ATTORNEY-CLIENT PRIVILEGED
ATTORNEY WORK PRODUCT

Defamation* (SOL – 1 year)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| 1. False statement about P<br>2. Statement published to third party<br>3. Plaintiff was damaged by statement | |
| **Caselaw** | |
| Communication of interoffice reports, i.e., information submitted during grievance process, constitutes a publication for purposes of a defamation claim. *Gibson*, 292 Ill. App. 3d at 276.<br><br>Where employer is investigating allegations of "suspicious conduct," statements made in the course of investigation are privileged and cannot be used to support defamation claim. Privilege can be defeated if plaintiff can show employer abused privilege.<br><br>If no privilege exists, must only show that defendant was negligent in making defamatory statements. *Kuwik v. Starmark Star Marketing*, 156 Ill.2d 16, 24 (1993).<br><br>Potential weakness: Performance evaluations can be subjective, i.e., difficult to establish as false information. | |

Illinois Whistleblower Act* (SOL – 5 years)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| 1. P engaged in protected activity by either<br>   a. Refusing to participate in activity that violates state or federal law, rule or regulation, or<br>   b. Disclosing information that P reasonably believes amounts to violation of state or federal law, rule, or regulation, and<br>2. P suffers adverse employment action as result of 1(a) or (b) | |
| **Caselaw** | |
| Employees are not protected from retaliation where they only complain to their employer. *Riedlinger v. Hudson Respiratory Care, Inc.* 478 F.Supp.2d 1051, 1056 (N.D. Ill. 2007).<br><br>An employee does not have a valid claim under the Act if he/she does not demonstrate that he/she refused to participate in the activities. | |

3

MA003224

ATTORNEY-CLIENT PRIVILEGED
ATTORNEY WORK PRODUCT

*Sardiga v. Northern Trust Co.*, 409 Ill.App.3d 56, 948 N.E.2d 652 (2011).

Potential weakness: If 1(a), may be unable to prove refusal was to engage in unlawful activity (lack of knowledge re Medicare funding may make it difficult to show actual violation of law, rule, or reg, and ACGME standards do not fall into law, rule, or reg category); if 1(b), no outside disclosure of violation.

Qui Tam/False Claims Act – Medicare Fraud* (SOL – 3 years)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| 1. False statement/claim submitted to the government (i.e., Medicare) | |
| 2. Government (either itself or through a third party) paid for the false claim | |
| 3. False statement is made knowingly (actual knowledge, reckless disregard, or deliberate ignorance that statement is false) | |
| **Caselaw** | |
| The reporting employee must be an "original source" under the FCA in order to have a valid claim; the employee cannot simply synthesize information that is publicly available. *U.S. ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492 (7th Cir. 2003). | |
| Inadequate supervision of residents for Medicare-covered treatment amounts to false claims, because Medicare payments are for "services rendered by the [teaching physician]," and hospitals are already paid for residents' services through grants rather than service-specific payments. *U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 933-34 (7th Cir. 2012). | |
| Relator (individual bringing FCA claim on behalf of government) must be an original source, defined as "an individual who has <u>direct and independent knowledge</u> of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). | |
| Potential weakness: Maria has no independent knowledge that unsupervised surgeries were paid for with Medicare funds, so likely does not qualify as an original source. | |

4

MA003225

ATTORNEY-CLIENT PRIVILEGED
ATTORNEY WORK PRODUCT

Intentional Infliction of Emotional Distress* (SOL – 2 years)

| Elements | Facts, Documents, & Witnesses |
|---|---|
| 1. D engaged in extreme and outrageous conduct<br>2. D intended to cause or disregarded probability of causing emotional distress<br>3. P suffered severe or extreme emotional distress<br>4. D's conduct actually and proximately caused emotional distress | |
| **Caselaw** | |
| In determining whether conduct is "extreme and outrageous," courts analyze the behavior from an objective standard. Mere insults, threats, annoyances, etc. will not constituted extreme and outrageous behavior. *Miller v. Linden*, 172 Ill. App. 3d 594, 596, 527 N.E.2d 47, 49 (1988). Conduct is evaluated on a case-by-case basis, making the outcome less predictable.<br><br>To establish severe or extreme emotional distress, the distress must be so severe that no reasonable person could be expected to endure it. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90 (Jan. 28, 1977). | |

*Not covered by current representation agreement

5

MA003226