# EXHIBIT C

March 23, 2012

Dr. David H. Song
Professor of Surgery
Vice Chairman, Department of Surgery
Chief, Section of Plastic and Reconstructive Surgery
Director, Residency Training Program
University of Chicago Medical Center
5841 S. Maryland Avenue, MC 6035
Chicago, IL 60637

    I would like to use this letter as an opportunity to summarize from my perspective the overall progress and conclusions about the probation period that is about to end, how I believe the goals set have been accomplished, as well as to address a few issues that have arisen during this period. It is my hope that you and the faculty members in charge of reviewing my probation will take this into consideration when deciding whether to lift my probationary status.

    Even though I made clear that I disagreed with the appropriateness of such a severe sanction as probation at this point in my training, for all the reasons I presented at length in my November 18th letter, I decided to embrace this as a challenge that looking back at this period I now realize has helped me grow and mature both as a person and as a professional. Regarding the probation goals itemized on your November 15th letter, I believe I have met or exceeded all of them as has been widely acknowledged in numerous weekly performance evaluations, some of which I am quoting below:

    *"She does perform at a comparable level to her peers. Overall, we were pleased with Dr. Artunduaga's performance on our busy service as far as her work ethic, positive attitude, and willingness to learn and to pursue continual self-improvement. These traits should serve her well in her professional development and maturation. Her struggles early in internship can likely be attributed to needing some time to adjust to an unfamiliar clinical environment. She continues to make progress in all facets of her job and has the insight to understand the areas she should focus on improving. She has the raw tools to mature into an excellent clinician. With time, experience, and mentorship from senior residents or attendings, she should develop into a fine resident and surgeon."* Michael Shao, Vascular Surgery Fellow

    *"I think Maria did a great job in Vascular Surgery, I would be happy to have her on my team again in the future. She is easy to get along with, a good communicator, and very enthusiastic. If she has had problems in the past with efficiency, she has clearly made progress, because I would never make that complaint about her."* Jennifer Paruch, General Surgery Resident

    *"I have been with Maria since earlier in the year on Kaplan service, we then were together again on Vascular and now Transplant. Therefore, I have had the opportunity to see her grow over several months. She has exponentially improved since our initial encounter. She*

1

UCMC00001445

*has efficiently done everything she has been asked to do, she has learned to reflexively double check any information she passes on, she's dramatically improved when presenting patients, and she continues to be enthusiastic and always has a smile on her face regardless of her current situation, which would make anyone else stressed. I have seen interns do much more egregious acts to warrant this type of probation and having spent the most time with her of any resident, she has not shown any evidence of being a threat to patients. She has effectively managed the Transplant service for a week and a half while the PA was on vacation without any issues. I say this because: 1. Transplant is a service that we don't manage often as General surgery residents, therefore we have very limited experience and 2. Many of the interns before Maria have had the PA as the main floor person. I have otherwise enjoyed working with her and I know she will continue to improve. She is a great person and a great doctor if given the chance. She takes feedback well and is willing to learn. It's just sad that no one wants to take the time to teach."* Irma Fleming, General Surgery Resident

"*She is excellent at prioritizing her work. She pays attention to details and follows things up very well. I think she is an extremely good clinician for her level. In the transplant service, I've worked with her more than anyone else and I think she's is exceptional, way above average, very enthusiastic and has improved tremendously over the past weeks. I have no concerns whatsoever about her clinical competence. Arguably one of the best interns I've worked with on the transplant service.*" Dolamu Olaitan, Transplant Surgery Fellow

In regards to the confidentiality of the probation that you said in writing you were concerned for my sake that I had been infringing upon, I would like to remind you that a fair number of residents and attendings in the Department of Surgery knew about my struggles because you took the step of discussing your concerns with them prior to making your decision. During my Thoracic Surgery rotation in November, my superiors did not allow me to perform my intern floor duties or to perform junior level cases because they "knew about my issues." When I asked you for your help, you said you could not intervene on my behalf because I had a "bad reputation" and that I should work things out on my own. Therefore, as it became clear to me that information about my perceived performance had not been kept confidential by other people, I felt compelled to talk openly about it in future rotations, and that of course included discussing my probationary status. In my conversations, my overriding intention was only to ask to be given the same opportunities as others and to be fairly evaluated, as I stated in my letter from November 18th. I did not, nor would I ever ask for special favors on my behalf since it is my belief that in Medicine no one would ever risk their professional credibility by saying good things about a bad performer.

The proactive attitude I have taken has indeed helped blunt the preconceptions the attendings and residents would otherwise have about me, as proven by the attitude of some of those with whom I did not have the opportunity to discuss my situation beforehand. As an example of this, one of the attendings during my probation period believed she had seen enough of me based on the limited interactions I had with her during only three service rounds, and submitted her evaluation 10 days before she was supposed to do so. In her review, she graded me poorly on several aspects, even on areas that she had never supervised me on.

2

UCMC00001446

When I expressed my bewilderment to her, she said to me that she had assumed that I was not good because I was under probation, and that she was grading me based on other people's comments, some of whom in fact later told me they had never spoken with her about me. Her prejudgment also clearly had other negative effects on my interactions with her, for instance when during one of my night-float shifts, she decided not to communicate with me in regards to a case, preferring instead to call a senior resident on-call, despite knowing that it was me who was covering her service and that I should be the one taking care of her patient.

At the same time, I have also made mistakes I do recognize, but which I would ask you to contrast against the seriousness of the accusations against me that led to the meeting and letter from November 2nd. A few weeks ago, I behaved inappropriately towards Dr. Alison Tothy when I abruptly ended a conversation where I felt she was speaking very rudely to me, despite the fact I had already examined her patient and so far had followed proper procedure with him. I also had another incident with Dr. Nora Jaskowiak who admonished me due to an antibiotic prescription that I was asked to refill outside of my regular duties, but which I filled out incorrectly when there did not exist any documentation in the electronic chart and I instead decided to do based on the information the patient gave to me. I also had difficulty with time management during my Transplant Surgery rotation because I was concentrating so much on going the extra mile on my work that I sometimes failed to make appropriate arrangements to leave the hospital on time before being over-hours. While I acknowledge these and other mistakes, I also have to say that being on probation has put an additional amount of stress to my daily routine that I have had to learn to cope with only gradually over time.

In conclusion, as I believe my weekly evaluations attest, despite the occasional difficulties the record shows that my performance is entirely comparable to that of my intern class, even well above average in some instances. I understand that Plastic Surgery residents are expected to do better than General Surgery residents, but given the point where I started and which I made fully transparent when I first applied to this Program, I believe my strong rate of progress is unmistakable as I hope you and the faculty committee will recognize. I am certain that with my abilities and hard work ethic, aided by your mentorship and guidance, I can become the resident you want and expect me to be. I just want to have the same opportunities to develop my skills as other residents are having. I hope you find my performance satisfactory in order to remain in this Program, and furthermore I would urge you to consider removing any trace of this disciplinary action from my permanent record, as you have the power to do.

Sincerely,

*[signature]*

Maria Alexandra Artunduaga, M.D.

C.C. Probation committee members

3