# TAB 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO MEDICAL CENTER,<br><br>Defendant. | No. 12 C 8733<br><br>Judge James B. Zagel<br>Magistrate Judge Sidney I. Schenkier |

## **DECLARATION OF DR. KEVIN ROGGIN**

I, Dr. Kevin Roggin, M.D., declare under penalty of perjury under the laws of the United States and the State of Illinois as follows:

1. I have personal knowledge of the facts set forth below.

2. I am over the age of 18 and a resident of the State of Illinois.

3. I was born in the United States.

4. I attended medical school at Georgetown University from 1992 to 1996. I was a categorical general surgery resident at Brown University from 1996 to 1998 and spent two years in surgical research there from 1998 to 2000. I concluded my residency at University of Alabama Hospitals from 2000 to 2003. After completing my residency, I did a fellowship in Surgical Oncology at Memorial Sloan Kettering Cancer Center from 2003 to 2005.

5. In 2005, I joined the University of Chicago Medical Center as an Attending Physician in the Section of General Surgery and have held that position ever since. I also held the position of Assistant Professor of Surgery and Cancer Research from 2005 to 2010, and in 2011 I became Associate Professor of Surgery and Cancer Research.

6. On October 1, 2011, I became Program Director of the General Surgery residency program.

7. From the time I became General Surgery Program Director, decisions relating to the selection, appointment, discipline, remediation, probation, and contract renewal of residents in the Plastic and Reconstructive Surgery ("PRS") were made and carried out by the PRS program. I did not make or carry out and was not responsible for such decisions for PRS residents. Likewise, the PRS section did not make or carry out and was not responsible for such decisions for residents in the General Surgery residency program.

8. I was not responsible for determining whether Dr. Maria Artunduaga was making adequate progress in the PRS program or in the decisions to place Dr. Artunduaga on probation and not to offer her a second year residency contract.

9. In March 2012, Dr. David Song told me that the PRS section had decided not to offer Dr. Artunduaga a second year residency contract and to remove her from clinical duties. In early April, he told me that Dr. Artunduaga had asked to be restored to clinical duties for the remainder of the residency year and asked whether there were General Surgery rotations to which she could be assigned.

10. Dr. Song and I decided that it would be possible to assign her to the endocrine side of the Kaplan Service. Dr. Song then told Dr. Artunduaga that she would be assigned to work on the endocrine side of the Kaplan Service starting in early April 2012.

11. After Dr. Artunduaga was assigned to the endocrine side of the Kaplan Service, I received complaints about her from the Chief Resident on the service, Dr. Eric Grossman, and from other residents. In light of those complaints, in late April 2012 I consulted with Dr. Song and told him that I had decided that I did not want Dr. Artunduaga to continue on the Kaplan Service. He concurred and advised her that she would be removed from the Kaplan Service.

12. Dr. Reza Salabat was a second year resident in the General Surgery residency program during the 2011-12 academic year. He was continued in the program during the 2012-13 academic year and is currently a resident in the program.

-2-

13. Dr. David Song did not make or carry out and was not responsible for decisions relating to the selection, appointment, discipline, remediation, probation or contract renewal of Dr. Salabat.

14. At her request, I met with Dr. Artunduaga on November 10, 2011. Exhibit A is a copy of a memorandum I prepared summarizing the meeting. At no time during the meeting or at any other time did Dr. Artunduaga complain to me that she was being harassed or discriminated against because she was from Colombia or because of her national origin or that she was being retaliated against because she had complained about discrimination or harassment because she was from Colombia or because of her national origin.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/18/15 , 2015

By: _____
Dr. Kevin Roggin, M.D.

# EXHIBIT A

Maria Artunduaga Note

I met with Maria Artunduaga, at her request on 11/10/2011. She contacted me by e-mail to ask for advice. She was trying to understand the,"... importance of feedback sessions"for her general surgery rotations. She acknowledged that she received a letter from Dr. Song on 11/4/2011 that suggested she consider transferring into another program, resigning her position, or being placed on academic/clinical probation.

Briefly, she expressed her concern over her performance to date. She recalled several examples of the types of problems she had been having on her prior rotations. She felt that her lack of experience in the US residency system, four year hiatus from medical care, and "high expectations"have contributed to her subpar performance to date. Maria felt that expectations and responsibilitieshave varied between services, communication has been difficult, and she has been held responsible for things that were "not her fault". She told me that she had never known that she could check the evaluations that had been written about her until she did so today.

I explained to Maria that there are clear expectations for our residents that are outlined in the "Goals and Objectives" for each rotation; this information is published on the Department of Surgery intranet. I also explained that there is a team education coordinator for each service who is responsible for providing constructive feedback to the residents on their services. We have stated numerous times to the interns and residents that the goals and objectives are to be reviewed, the TEC appointments to be scheduled by the residents to provide verbal feedback for each rotation, and that all evaluation should be signed by the residents. Maria said that she was unaware that these processes existed. I reminded her that this was explained to all of our interns during the "Intern Orientation" and that we have reminded the interns and residents of this multiple times during the year.

Maria believes that she is an "excellent resident" and has no problem understanding the duties of being an intern at the University of Chicago. I reinforced to her that she should formally respond to Dr. Song as soon as possible.

David Song, M.D.
Section of Plastic Surgery
MC 6035

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER          UCMC00010391