# TAB 26



VINEETA PRASAD, Plaintiff, vs. ACXIOM CORPORATION, Defendant.

No. 10 C 5943

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2013 U.S. Dist. LEXIS 82237; 118 Fair Empl. Prac. Cas. (BNA) 1259*

June 12, 2013, Decided
June 12, 2013, Filed

**PRIOR HISTORY:** *Prasad v. Acxiom Corp., 2012 U.S. Dist. LEXIS 20587 (N.D. Ill., Feb. 17, 2012)*

**COUNSEL:** [*1] For Vineeta Prasad, Plaintiff: Christopher C. Cooper, LEAD ATTORNEY, Law Office of Christopher Cooper, Inc., Chicago, IL; Joseph Albert Baldi, LEAD ATTORNEY, Baldi Berg & Wallace, Ltd., Chicago, IL.

For Acxiom Corporation, Defendant: Paul A. Patten, LEAD ATTORNEY, Sean C. Herring, Jackson Lewis, LLP, Chicago, IL; Robert E. Arroyo, LEAD ATTORNEY, Klein Tools, Inc., Lincolnshire, IL.

**JUDGES:** MATTHEW F. KENNELLY, United States District Judge.

**OPINION BY:** MATTHEW F. KENNELLY

**OPINION**

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Vineeta Prasad, an Indian-American woman, has sued her former employer, Acxiom Corporation, alleging discrimination and harassment on the basis of race, national origin, and gender, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e-2(a) & 2000e-3(a)*. Prasad also alleges breach of contract and a violation of the Equal Pay Act, *29 U.S.C. § 206(d) (EPA)*. Acxiom has moved for summary judgment on all of Prasad's claims. For the reasons stated below, the Court grants Acxiom's motion on all claims other than the breach of contract claim.

### Background

Acxiom is a customer information management company headquartered in Little Rock, Arkansas. On [*2] July 9, 2007, Acxiom hired Prasad as a client representative. She received her offer letter from James Coy, who had also interviewed her. Prasad's offer letter stated that she would report to Coy and that she would be assigned to work from her home office in Chicago. She was assigned to the Data Division of High Tech Vertical, and her job was to sell Acxiom data products.

Prasad received a copy of a "Compensation Plan" at the time she was hired. Section 1.2 of the Plan, entitled "Commissions," states:

> Commissions reflecting a designated percentage of base pay are earned based on attainment of *fiscal year recognized revenue quotas*. After 100% attainment of annual quota, a commission of 7.5% will be paid on any additional revenue generated on assigned accounts. All *net-new data business* is also paid at 7.5% regardless of quota attainment; however, such payments will not result in a reduction of *quota* but will reduce performance *targets*.

Pl.'s Ex. 35.

Coy, the head of the Data Division, functioned as Prasad's direct supervisor. The other Acxiom employees who worked with Prasad in the data sales group under Coy were Brent Sinclair, Steven Johnston, Brian Poppe,

Case: 1:12-cv-08733 Document #: 81-26 Filed: 05/22/15 Page 3 of 8 PageID #:2080

Page 2

2013 U.S. Dist. LEXIS 82237, *; 118 Fair Empl. Prac. Cas. (BNA) 1259

Anthony Tuffile, Roger Marcus, [*3] and Andrew Ketch. Coy was also the "dotted line" supervisor of Justin Keogh, who, like Prasad, was a client representative. John Finnell, Coy's peer who worked on the services side of Acxiom, was the head of the High Tech Vertical and Prasad's "dotted line" supervisor. In March 2008, Michael Donovan replaced Finnell.

Prasad alleges that during her tenure at Acxiom, various non-Indian male colleagues discriminated and harassed her based on her race, national origin, and gender. She alleges, among other things, that she was asked out on a date, called "baby" on multiple occasions on conference calls, and asked to introduce a female client prospect to one of her married male colleagues. Prasad also states that her colleagues mocked and imitated Indian accents and made disparaging comments about Indians in her presence.

Prasad claims that as a result of this discrimination and harassment, she complained about her colleagues' behavior to Coy via e-mail on November 30, 2007. Concerned about putting sensitive information in writing, Prasad alleges that she followed up the e-mail with a phone call to Coy in which she described the racial, ethnic, and sexual harassment she had been experiencing. [*4] Prasad states that sometime in December 2007, she also told her human resources manager, Vicki Fraser, about the discriminatory conduct.

On November 30, 2007, the date of Prasad's complaint to Coy, Finnell sent Prasad an e-mail regarding her work on the Microsoft account. In his e-mail, Finnell explained that it was his understanding that despite being asked not to forward certain materials to Microsoft, Prasad had done so anyway. Finnell stated that although he appreciated Prasad's "aggressive pursuit of this opportunity," he had to "insist that [Prasad] refrain from direct, unilateral contact with the client and that [Prasad] work within the team structure." Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Stat. of Material Facts ¶ 29. He further noted that John Farmer was the point person for the Microsoft Acxiom team and that he "should concur and authorize all customer interactions BEFORE they occur." Id.

On December 13, 2007, Prasad responded to an e-mail from Farmer regarding the scheduling of a meeting with Microsoft by stating. "I do not have time to debate." Id. ¶ 30. The next day, December 14, 2007, Coy sent Prasad an e-mail explaining that based on the team's two-hour conference call [*5] the night before and Prasad's December 13, 2007 e-mail to Farmer, he felt it had "become too difficult for [Prasad] to team and to be objective with the other members of the Acxiom Microsoft Team." Id. ¶ 31. Coy removed Prasad from the Microsoft account and asked her to have no further contact with Microsoft.

Prasad alleges that at the end of February 2008, Acxiom denied her approximately $27,000 in commission payments that she claims was owed for making approximately $400,000 worth of data sales to Gateway. Coy testified that under the compensation plan, Prasad could not be paid the commission because she had not met her quota and because Gateway was not a new client. Prasad alleges that she did meet her quota and that although Gateway was an existing client when she started working for Acxiom, it became a new client when it merged with Acer.

On March 5, 2008, Prasad received an associate counseling form from Coy for "ineffective teaming." Id. ¶ 37. The comments section of the form states, among other things, that Prasad "need[s] to listen more on conversations in order to understand the whole picture and not just the data aspect," that she has "not established a good working relationship [*6] with internal Acxiom associates," and that when receiving constructive feedback, Prasad is "defensive and always [has] excuses." Id. ¶ 38. The counseling form also specifically mentions Prasad having problems working on the Microsoft and the Hewlett-Packard accounts. Prasad disputed and did not sign the associate counseling form.

On the night of April 23, 2008, Coy sent Prasad an e-mail stating that they needed to discuss his belief that a conference call with Hewlett-Packard that evening had gone poorly. The next day, April 24, 2008, Prasad sent Coy an electronic meeting invitation for a call with Karen Zhang at Hewlett-Packard scheduled for April 25, 2008. Coy responded that it would unnecessary for Prasad to join the scheduled call because Zhang had asked to have Prasad taken off the account due to the April 23 call. Coy explained that he appreciated Prasad's effort but felt he had no other recourse but to remove her from the Hewlett-Packard account.

Coy testified that the next day, April 25, 2008, Michael Donovan told him that Karen Zhang had reported that Prasad had tried to contact her. On April 30, 2008, Coy terminated Prasad, citing unsatisfactory performance and failure to follow [*7] a directive.

## Discussion

Acxiom has moved for summary judgment on all of Prasad's claims. On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co., 629 F.3d 653, 656 (7th Cir. 2010)*. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and [that] the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; *Celotex Corp. v. Catrett, 477*

Case: 1:12-cv-08733 Document #: 81-26 Filed: 05/22/15 Page 4 of 8 PageID #:2081

Page 3

2013 U.S. Dist. LEXIS 82237, *; 118 Fair Empl. Prac. Cas. (BNA) 1259

*U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. Summary judgment must be granted "[i]f no reasonable jury could find for the party opposing the motion." *Hedberg v. Ind. Bell. Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995)*.

**1. Discrimination claim**

Prasad contends that Acxiom discriminated against her because of her race, ethnicity, and gender. Under Title VII, a plaintiff can establish discrimination by using either the direct or indirect method of proof. *Farrell v. Butler, 421 F.3d 609, 612-13 (7th Cir. 2005)*. Prasad seeks to prove discrimination via the indirect method of proof, which requires her to show that she is a member of a protected class, [*8] was performing her job satisfactorily, suffered adverse employment action, and was treated less favorably than similarly situated employees outside of her protected class. *Id. at 613*.

The Court need not address the first three factors of the test because Prasad has failed to identify a similarly situated employee. Although there is no magic formula, courts typically require a plaintiff alleging that a similarly situated employee was given better treatment to "at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe, 667 F.3d 835, 847 (7th Cir. 2012)* (internal quotation marks omitted). The plaintiff's burden in a case like this one "includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc., 589 F.3d 357, 366 (7th Cir. 2009)*.

Prasad argues that Justin Keogh, who was also a client representative, was similarly situated to her but was treated more favorably. In support of this argument, Prasad [*9] points out that she was terminated despite having exceeded sales goals but that Keogh was not fired until two years after having received an associate improvement plan for failing to achieve sales goals. This misses the point. Because Acxiom claims to have terminated Prasad based on misconduct, a similarly situated employee would be one who was claimed to have engaged in comparable misconduct. Prasad does not contend that Keogh committed any misconduct comparable to that of which Prasad was accused. No reasonable fact finder could find that a failure to meet a sales goal is comparable to violating a supervisor's directive or the other misconduct of which Acxiom accused Prasad. *See Gates v. Caterpillar, 513 F.3d 680, 690 (7th Cir. 2008)* (explaining that though the plaintiff need not show that other employees are "explicitly *identical*," she must at least show that they engaged in "similar conduct."). Because Prasad cannot make out a prima facie case of discrimination, Acxiom is entitled to summary judgment on that claim.

**2. Hostile work environment claim**

Prasad contends that she was subjected to a hostile work environment based on her race, national origin, and gender. To avoid summary [*10] judgment, Prasad must provide evidence from which a reasonable jury could find that her work environment was both objectively and subjectively offensive; the conduct was either severe or pervasive; it was based on her membership in a protected class; and there is a basis for employer liability. *Vance v. Ball State Univ., 646 F.3d 461, 469 (7th Cir. 2011)*. In evaluating the issues of severity and pervasiveness, the Court considers "all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offense utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)*.

With respect to sexual harassment, Prasad's primary contention is that Keogh called her "baby" during a number of weekly calls. She also cites the following incidents:

> o While on a business trip, John Farmer came to the hotel restaurant one night where Prasad was eating. She was not expecting to see him and have him join her at her table, so she excused herself and went to her room. The next morning in the lobby, Farmer said, "Where have you been? [*11] I have been waiting for you."

> #x2022; A colleague once stated to Prasad that he did not want her "trampling" around Symantec, one of Acxiom's clients.

> #x2022; After asking Keogh if he was able to meet with a client during a business trip he answered, "No Vineeta, I am not as beautiful as you are."

> #x2022; While attending a conference, a male colleague suggested to Prasad that his brother, who is a hairdresser, "fix" Prasad's hair color.

> #x2022; During a sales rally, a colleague said he "preferred younger women" and asked Prasad if she wanted to have dinner with him.

Case: 1:12-cv-08733 Document #: 81-26 Filed: 05/22/15 Page 5 of 8 PageID #:2082

Page 4

2013 U.S. Dist. LEXIS 82237, *; 118 Fair Empl. Prac. Cas. (BNA) 1259

#x2022; After asking Coy if a client was pleased with her presentation, he answered yes but stated that the client was disappointed that she did not stay for dinner and additionally stated that the she was "the only one [the client] wanted to have dinner with."

#x2022; During a conference call, Coy asked Prasad to set up a client prospect, a woman at Motorola, with Keogh. Prasad stated, "I thought [Keogh] was married," and her supervisor responded, "No, not when Justin is Elvis." Prasad's supervisor and Keogh then laughed.

Pl.'s Resp. to Def.'s *L.R. 56.1(a)(3)* Stat. of Material Facts ¶ 54. No reasonable jury could find that, taken [*12] together, these alleged incidents amount to pervasive or severe harassment. Calling Prasad "baby" was certainly inappropriate. The Court also agrees that being called beautiful by a male colleague, getting asked out on a date by another, and receiving unsolicited advice on how to fix one's hair color would make any reasonable woman in Prasad's position uncomfortable. However, courts evaluating similar or arguably more extreme claims have found them insufficient to rise to the level of actionable harassment. *See, e.g., Moser v. Indiana Dep't of Corrs., 406 F.3d 895, 902 (7th Cir. 2005)* (no hostile work environment claim where male colleague made a reference to plaintiff's breasts, told male employees to watch out because plaintiff liked good-looking men, and asked plaintiff if she had gotten a new set of legs); *Patt v. Family Health Sys., Inc., 280 F.3d 749, 754 (7th Cir. 2002)* (finding plaintiff's complaints of eight gender-related comments during course of her employment, including that "the only valuable thing to a woman is that she has breasts and a vagina," insufficient to demonstrate hostile work environment); *Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995)* [*13] (reversing jury verdict for plaintiff where over a seven month period, supervisor called plaintiff "pretty girl," said "all pretty girls [should] run around naked," made grunting noises and masturbation gestures, and referred to plaintiff as "my Anita Hill"); *Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993)* (no actionable sexual harassment where defendant asked plaintiff on dates, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs in her work area, and attempted to kiss her in a bar); *Cherry v. City of Chicago, 833 F. Supp. 2d 907, 912 (N.D. Ill. 2011)* (no actionable harassment claim where manager implied that he found the plaintiff sexually desirable and directed lewd comments laced with sexual innuendo toward her).

Prasad's racial / national origin harassment claim likewise is insufficiently supported. According to Prasad, John Finnell once stated at a rally that "no one with a last name like Amireddy could be a leader," knowing that Amireddy (a client at Symantec) and Prasad are both Indian. Keogh and Finnell also allegedly mocked and imitated Indian accents on weekly sales calls on which Prasad participated. Such behavior, [*14] though undoubtedly offensive, falls into the "simple teasing" and "offhand comments" category of non-actionable harassment. *See Faragher, 524 U.S. at 788; Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003)* (holding racial jokes, ridicule of plaintiff's accent, and act of pulling eyes back to imitate or mock the appearance of Asians insufficient to create an actionable hostile work environment). Acxiom is therefore entitled to summary judgment on Prasad's hostile work environment claims.

### 3. Retaliation claims

Prasad also claims that Acxiom retaliated against her after she allegedly complained about racial, national origin-based, and sexual harassment. A plaintiff may prove retaliation using either the direct or indirect method of proof. *See Tomanovich v. City of Indianapolis, 457 F.3d 656, 662 (7th Cir. 2006)*. To establish retaliation under the direct method, Prasad must present evidence, either direct or circumstantial, showing that she engaged in activity protected under the applicable statute; she suffered an adverse employment action; and there is a causal connection between the two. *See Dorsey v. Morgan Stanley, 507 F.3d 624, 627 (7th Cir. 2007)*. To establish a prima facie [*15] case of retaliation under the indirect method, Prasad must show that she is a member of a protected class; she was meeting Acxiom's legitimate expectations; she suffered an adverse employment action; and that Acxiom treated similarly situated employees who had not complained more favorably. *Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522, 657 F.3d 595, 601-02 (7th Cir. 2011)*. If Prasad can establish a prima facie case, then the burden shifts to Acxiom to articulate a legitimate, non-retaliatory reason for its action. If Acxiom does so, then Prasad bears the burden of proving that Acxiom's articulated reason is a pretext for retaliation. *Id. at 602*.

#### a. Adverse action

Under both methods of proof, Prasad must show that she suffered actionable adverse action, so the Court begins there. Adverse employment action for the purpose of Title VII retaliation claims "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)* (internal quotation marks omitted). Rather,

Case: 1:12-cv-08733 Document #: 81-26 Filed: 05/22/15 Page 6 of 8 PageID #:2083

Page 5
2013 U.S. Dist. LEXIS 82237, *; 118 Fair Empl. Prac. Cas. (BNA) 1259

the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which [*16] in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id. at 68* (internal quotation marks omitted).

Prasad alleges that she suffered adverse employment actions when, after complaining about racial, national origin-based, and sexual harassment, she was issued an associate counseling form; denied payment of a commission; removed from the Microsoft and Hewlett-Packard accounts; and terminated. It is undisputed that Prasad's termination is an adverse employment action. Acxiom argues that the associate counseling form issued by Coy does not amount to actionable adverse action. Although the form does not state that any action will be taken as a result of Prasad's alleged performance deficiencies, it is highly critical and could be interpreted as a warning sufficient to deter a reasonable employee from complaining of discrimination. *Compare Silverman v. Bd. of Educ. of City of Chi., 637 F.3d 729, 741 (7th Cir. 2011)* (teacher's negative performance evaluation could constitute an adverse employment action) *with Palermo v. Clinton, 437 Fed. Appx. 508, 511 (7th Cir. 2011)* (mostly positive evaluation with little constructive [*17] criticism does not constitute adverse employment action).

In addition, a reasonable jury could find that the denial of commission payments is an adverse employment action. Acxiom contends that Prasad did not suffer an adverse employment action when she did not receive a 7.5% commission on the sale to Acer/Gateway because, per the terms of her contract, she was not eligible to receive the commission. As discussed below with respect to Prasad's breach of contract claim, however, Prasad's entitlement to a commission presents a genuine issue of fact. Because courts consider a cut in pay a materially adverse employment action, the Court finds that a reasonable jury could find that declining to pay Prasad a commission constitutes an actionable adverse employment action. *See Smart, 89 F.3d at 441* (noting that adverse job actions include changes in pay or monetary benefits).

Prasad has also established that her removal from the Microsoft and Hewlett-Packard accounts are adverse employment actions. "[A]dverse actions can come in many shapes and sizes," *Knox v. State of Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996)*, and the analysis is fact- and context-dependent. *See Bryson v. Chi. State Univ., 96 F.3d 912, 916 (7th Cir. 1996).* [*18] Prasad's primary job responsibility was to sell data products. She testified during her deposition that being taken off accounts "blocked" her from doing her job and "affected [her] capacity to perform her job responsibilities, which meant closing the sale." Prasad Dep. at 283. The Court agrees with Prasad that a reasonable jury could find that being removed from these accounts significantly altered her job responsibilities and could have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See Burlington Northern, 548 U.S. at 68.*

### b. Direct method of proof

Under the direct method of proving retaliation, Prasad must establish a causal connection between her complaint about harassment or discrimination and the claimed adverse employment actions, either by showing an admission of retaliation or by "presenting a convincing mosaic of circumstantial evidence" that allows a jury to infer retaliation. *Coleman, 667 F.3d at 860* (internal quotation marks omitted). In her brief and her response to Acxiom's statement of facts, Prasad seems to argue that an Axciom supervisor admitted a retaliatory motive, at least for denying her a commission on the Acer/Gateway sale. [*19] *See* Pl.'s Mem. at 9. Specifically, she cites the following question and answer from her deposition:

Q: Did anyone at Acxiom ever say they're not giving you your commission on your Gateway sale because of any alleged complaints you made about race or ethnicity discrimination or sexual harassment?

A: Actually yes.

*See id.* (quoting Prasad Dep. 288:19). When one reads this testimony in context, however, Prasad conceded in response to follow-up questioning that no such direct admission of retaliation was made. Rather, she was referring to a comment that suggested to her that she was being retaliated against for complaining about not getting a commission. *See* Prasad Dep. 290-92. In short, Prasad has no evidence that a reasonable jury could consider to be an admission of retaliation violative of Title VII.

Prasad makes no argument in her brief that she has offered a "convincing mosaic" of retaliation under the direct method. She has therefore forfeited any such argument.

### b. Indirect method

One of the requirements for proving retaliation under the indirect method is evidence that Acxiom treated similarly situated employees who had not complained more favorably. *See, e.g., Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522, 657 F.3d 595, 601-02 (7th Cir. 2011).* [*20] As indicated earlier in the Court's discussion of Prasad's discrimination claims, she has not identified any employee who committed or was claimed to have committed misconduct similar to that of which she was accused, did not make a complaint about discrimination, and was treated better than she was.[1] Given

Case: 1:12-cv-08733 Document #: 81-26 Filed: 05/22/15 Page 7 of 8 PageID #:2084

Page 6

2013 U.S. Dist. LEXIS 82237, *; 118 Fair Empl. Prac. Cas. (BNA) 1259

this absence of evidence, no reasonable jury could find that Prasad has proven her retaliation claim via the indirect method.

> 1 The Court notes that Prasad contends that Coy, Keogh, Farmer, and Finnell received Acer/Gateway commissions when she did not. Prasad offers no evidence to support this contention. Indeed, there are no files or documents in the record regarding Coy or Finnell. Nor is there anything in the records provided to the Court from Keogh's personnel file or those regarding Farmer's compensation that shows that either of them got a commission on Prasad's Gateway/Acer sale.

Because Prasad cannot sustain her retaliation claim under either the direct or indirect method, Acxiom is entitled to summary judgment on that claim.

### 4. Breach of contract

Prasad contends that Acxiom breached its contract with her when it failed to pay her approximately $27,000 in commission allegedly [*21] owed under her Compensation Plan for making a sale to Acer/Gateway. Section 1.2 of the Plan, entitled "Commissions," states:

> Commissions reflecting a designated percentage of base pay are earned based on attainment of *fiscal year recognized revenue quotas*. After 100% attainment of annual quota, a commission of 7.5% will be paid on any additional revenue generated on assigned accounts. All *net-new data business* is also paid at 7.5% regardless of quota attainment; however, such payments will not result in a reduction of *quota* but will reduce performance *targets*.

Pl.'s Ex. 35. "Net-new data business" is defined as "[n]ew data revenue under contract that was not in the current run rate or not previously billed within the past 18 months." Id. at 7a. Giving the contract [2] its plain and ordinary meaning, *see Gallagher v. Lenart, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58, 314 Ill. Dec. 133 (2007)*, Prasad was therefore entitled to receive 7.5% commission on any additional revenue generated from existing accounts after meeting her quota, or 7.5% commission on all new data revenue regardless of quota attainment. Thus to prove her claim, Prasad must show either that she had met her quota, in which case she would be [*22] entitled to a 7.5% commission regardless of whether Acer/Gateway was a new or existing client, or that Acer/Gateway was a new client.

> 2 It is undisputed that the Plan constitutes a valid and enforceable contract.

Prasad contends that Acer/Gateway was a new client, or alternatively, that she had met her quota. Prasad does not dispute that Gateway was once a client or that Acxiom introduced her to people at Gateway when they first hired her. Rather, she argues that Gateway became a new client once it was bought out by Acer. In support of her argument, Prasad points to internal Acxiom documents indicating that she was a "hunter," a term given to employees who solicit new business. Coy, however, testified in his deposition that Prasad was a "farmer" and therefore only managed existing clients. Moreover, Prasad and Acxiom both point to identical spreadsheets purportedly showing whether Prasad had met her annual quota: Prasad relies on one showing that she had attained 100% of her quota, and Acxiom relies on another indicating that she had only attained 68% of her quota. *Compare* Pl.'s Ex. 7, *and* Coy Aff., Ex. 1. Because such conflicting evidence establishes a question of fact as to whether [*23] Acer/Gateway was a new or existing client, and whether Prasad met her quota, the Court declines to enter summary judgment in Acxiom's favor on this claim.

### 5. Equal Pay Act claim

Prasad alleges that Acxiom violated the Equal Pay Act when, instead of paying her, it paid commission to John Farmer and Tom Gentry on the Gateway/Acer account. To prove a violation of the EPA, a plaintiff must show: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Indiana Univ. Bd. of Trustees, 338 F.3d 693, 698 (7th Cir. 2003)* (internal quotation marks omitted). This requires a plaintiff to establish - based on actual job performance and content, and not on job titles - that the work performed is substantially equal. *Fallon v. State of Illinois, 882 F.2d 1206, 1208 (7th Cir. 1989)*.

Prasad cannot establish a prima facie case under the EPA because she has failed to provide evidence from which a reasonable jury could find that her job was substantially equal in skill, effort, or responsibilities to Farmer or Gentry's jobs. It is undisputed that neither [*24] Farmer nor Gentry worked in the data sales group with Prasad. The record also makes clear that they all had different job titles: Prasad was a data sales client representative, Farmer was a service client representative, and Gentry was an industry consultant. Although differing titles alone cannot defeat an EPA claim, Prasad

2013 U.S. Dist. LEXIS 82237, *; 118 Fair Empl. Prac. Cas. (BNA) 1259

must show that her job and those of her male colleagues involved a "common core of tasks" and that "a significant portion of the . . . jobs [are] identical." *Id. at 1209.* Because Farmer and Gentry worked in different subject matter areas of Acxiom, and Prasad has not provided evidence demonstrating that their responsibilities were largely similar, Acxiom is entitled to summary judgment on this claim.

### 6. Prasad's motion for an inference of spoliation

The [*25] Court acknowledges Prasad's motion for an inference of spoliation. In her motion, Prasad argues that certain evidentiary material was destroyed which would have helped to prove her retaliation claim by showing that she complained of racial, ethnic, and sexual harassment to Acxiom. Because Prasad's retaliation claim fails for different reasons, however, the Court denies as moot her motion for an inference of spoliation.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment in part and denies it in part [docket no. 70]. Specifically, the Court grants summary judgment in favor of defendant on counts 1, 2, 3, 4, and 6 of plaintiff's first amended complaint but declines to enter summary judgment on count 5. The Court sets the case for a status hearing on June 18, 2013, at 9:30 a.m.

/s/ Matthew F. Kennelly

MATTHEW F. KENNELLY

United States District Judge

Date: June 12, 2013