# TAB 27



**MARIYA USHERENKO AND PALINA RUBALSKY, Plaintiffs, v. BERTUCCI'S CORPORATION, Defendant.**

**CIVIL ACTION NO. 3:05-cv-756 (JCH)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

***2006 U.S. Dist. LEXIS 92726*; *99 Fair Empl. Prac. Cas. (BNA) 1015***

**December 20, 2006, Decided**

**COUNSEL:** [*1] For Mariya Usherenko, Palina Rubalsky, Plaintiffs: Alexander Lumelsky, LEAD ATTORNEY, Lumelsky & Mogilevich, LLP, Farmington, CT.

For Bertucci's Corp, Defendant: Christopher T. Vrountas, Leonard D. Zamansky, LEAD ATTORNEYS, Nelson, Kinder, Mosseau & Saturley, Manchester, NH; Johanna Gordon Zelman, Michael J. Rose, LEAD ATTORNEYS, Howd & Ludorf, Hartford, CT.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINION BY:** Janet C. Hall

**OPINION**

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE AND/OR FOR SANCTIONS [Doc. Nos. 77, 117, 121]**

The plaintiffs, Mariya Usherenko and Palina Rubalsky, bring this action against their former employer, Bertucci's Corporation ("Bertucci's"), the defendant. In their Amended Complaint [Doc. No. 4], the plaintiffs allege discrimination and harassment based on their national origin and gender as well as retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *42 U.S.C. § 2000e et seq.*; *42 U.S.C. § 1981*; and *Conn. Gen. Stat. § 46a-60*. They also allege a claim of intentional infliction of emotional distress under Connecticut [*2] state law.

The defendant has filed a Motion for Summary Judgment [Doc. No. 77] pursuant to *Rule 56 of the Federal Rules of Civil Procedure*.

**I. STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*; *White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000)*. Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson, 477 U.S. at 255*, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. *Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000)*.

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. *Anderson, 477 U.S. at 255*; *Graham, 230 F.3d at 38*. "This remedy that [*3] precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000)*. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000)*.

**II. FACTS** [1]

1 For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiffs, where there is evidence to support their allegations.

Mariya Usherenko worked at the West Hartford, Connecticut Bertucci's as a Host/Take Out coordinator from late August 2002 until late June or July 2003. [2] *See* Def.'s Loc.R.Civ.P. 56(a)2 Statement ("Def.'s Stat.") at PP 1, 5 [Doc. No. 79]. Usherenko was sixteen years old at the time and is [*4] from a foreign country. *See* Def.'s Stat. at P 49, 82. Palina Rubalsky is also from a foreign country and worked at the same Bertucci's from April 2003 until late June or July 2003, when she resigned. [3] *See id.* at P 2, 47, 60. Craig T. Wilson was the General Manager of this Bertucci's during the relevant time period and was responsible for terminating Usherenko's employment. *Id.* at PP 6-7.

2 There appears to be a dispute regarding the precise date of termination. According to Usherenko, her last day of work was June 27, 2006. *See* Plf.'s Loc.R.Civ.P. 56(a)2 Statement ("Plf.'s Stat.") at P 1 [Doc. No. 110]. However, for purposes of this motion, the court finds that the precise date of termination is irrelevant. The same is true for the dates of Rubalsky's employment.

3 The parties dispute the reason for Rubalsky's resignation, with Rubalsky alleging it was due to manager Brandon Dixon's inappropriate behavior and Bertucci's alleging it was due to her plans to attend dental hygienist school. *See* Plf.'s Stat. at P 47; Def.'s Stat. at P 47.

[*5] Prior to Usherenko's termination, a customer had complained via an e-mail that a Bertucci's Hostess had refused to re-seat her family away from a loud birthday party. *Id.* at P 8-9. Wilson testified that, based on Bertucci's schedule, he determined that Usherenko was the Hostess on duty at the time of this incident. *Id.* at P 11. Wilson spoke with one or more managers regarding the customer complaint, *id.* at P 13; Plf.'s Stat. at P 13, and subsequently told Usherenko he needed to talk to her when she next came in to collect her paycheck, Def.'s Stat. at P 16.

Usherenko was accompanied by her father in the meeting with Wilson. *Id.* at P 17. Wilson asked her about the customer complaint, [4] and reminded her that, according to company policy, customers' requests to move to another table should be complied with. *Id.* at P 19. At this meeting, Wilson terminated Usherenko. [5] *Id.* at P 22. At the end of the meeting, Usherenko's father spoke up about allegations of sexual harassment by Usherenko's manager, Brandon Dixon. *Id.* at P 23. According to the defendant, before this meeting Usherenko had complained only once about Dixon's jokes, without any allegations of them [*6] being sexual or vulgar in nature. *See id.* at PP 29-35. Usherenko disputes this and claims instead that she and her father complained specifically to both Dixon and Wilson about Dixon's sexually harassing behavior at several different times. *See* Plf.'s Stat. at P 28. In response to the one complaint about Dixon's joking, which is acknowledged by the defendant, Wilson told Usherenko (who was accompanied by Patricia Ortego) that he would speak to Dixon, after which Dixon's behavior ceased for one or two weeks. *See* Def.'s Stat. at P 35; Plf.'s Stat. at 36.

4 According to Usherenko, Wilson did not listen to her side of the story. She claims that she had told the customer that there were no servers available in the other sections of the restaurant, but that if the family wanted to wait until she found the manager, she might be able to re-seat them. Usherenko further asserts either that she could not find the manager, Brandon Dixon, or that he refused to re-seat the customers. She also testified that, if she had re-seated them on her own, Dixon would have told her she was "stupid." *See* Plf.'s Stat. at P 20-21.

[*7]

5 The parties dispute the extent to which Usherenko's performance prior to this incident was satisfactory. *See* Def.'s Stat. at P 38-46; Plf.'s Stat. at P 38-46. The parties also dispute the reason for Usherenko's termination, with Usherenko alleging that her termination was "a direct consequence of Mr. Dixon's abuse and mistreatment of Usherenko, and not as a result of her job performance." *See* Plf.'s Stat. at P 7. Bertucci's maintains that Usherenko was terminated as a result of her poor performance and the customer complaint. *See* Def.'s Stat. at P 7-8.

## III. DISCUSSION [6]

6 In Counts V and VI of their Amended Complaint, the plaintiffs also bring the same claims of employment discrimination under *Conn. Gen. Stat. § 46a-60(a)(1)*. Since claims under the Connecticut Fair Employment Practices Act are analyzed under the same substantive principles as claims brought under federal employment discrimination law, *see Craine v. Trinity College, 259 Conn. 625, 637 n.6, 791 A.2d 518 (2002)*, the analysis and outcome in Part III(A)-(C) will also apply to plaintiffs' identical state law statutory claims.

### [*8] A. Disparate Treatment (Counts I & II)

Analyzing whether the defendant subjected the plaintiffs to disparate treatment must be done under the burden-shifting framework of *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See Fitzgerald v. Henderson, 251 F.3d 345, 356*

*(2d Cir. 2001)*. A plaintiff is first required to establish a prima facie case of discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*. A prima facie case for disparate treatment is made out by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed her job adequately; (3) the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. *Burdine, 450 U.S. at 254*.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *See id.* Upon the employer's articulation of a nondiscriminatory reason for the employment action, [*9] the presumption of discrimination that arises with the establishment of the prima facie case drops out. *See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)*. The burden then shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against him in the employment action. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105, (2000)*. In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. *Id.*

A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. *Schnabel v. Abramson, 232 F.3d 83, 89-91 (2d Cir. 200)* (citing *Reeves, 530 U.S. at 142*). The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. [*10] '" *Schnabel, 232 F.3d at 90* (quoting *Reeves, 530 U.S. at 143, 120 S.Ct. 2097*). The plaintiff need not show that sex or national origin was the only factor motivating any adverse employment actions she suffered in order to make a showing of employment discrimination. *See 42 U.S.C. § 2000e-2(m)*; *Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)*. "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive. *Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997)*.

**1. National Origin Discrimination**

Regarding Usherenko's national origin discrimination claim, Bertucci's challenges it at the pretext stage, asserting that Bertucci's terminated her for a legitimate, nondiscriminatory reason, *i.e.,* her failure to accommodate a customer's request to move to another table. *See* [*11] Def.'s Memorandum in Support of their Motion for Summary Judgment ("Mem. in Supp.") at 4 [Doc. No. 78]. Usherenko attempts to rebut this reason by stating that she was never spoken to by management regarding poor performance prior to this incident, and that Wilson's disinterest in hearing Usherenko's side of the story evidences that his decision to terminate her was based on a discriminatory reason. *See* Plf's. Mem. in Opp. at 8. Usherenko also claims that her supervisor, Brandon Dixon, made "comments" that made fun of her accent and that she heard other people say that Dixon and another supervisor "do not like Russian people, Ukranian." *See* Plf's. Stat. at P 50, Usherenko Dep. at 215.

Such allegedly discriminatory remarks, however, are only sufficient to show that Bertucci's reasons are pretextual if Usherenko can "demonstrate that a 'nexus' exists between the statements alleged to be discriminatory and the defendant's decision to . . . terminate the plaintiff." *Young v. Pitney Bowes, Inc., 2006 U.S. Dist. LEXIS 20788, at *59 (D. Conn. 2006)*. Indeed, courts have generally held "that stray remarks," without more, "even if made by a decisionmaker, do not constitute [*12] sufficient evidence to make out a case of employment discrimination." *Danzer v. Norden Sys., 151 F.3d 50, 56 (2d Cir. 1998)* (citing *Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994))*. As the decision in *Young* elaborated, to determine if comments are evidence of unlawful discrimination or merely stray remarks, the following factors are considered: "(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Young, at *59-60* (citations omitted). The Second Circuit has also emphasized that, even if one stray remark is by itself insufficient proof, it may "'bear a more ominous significance' when considered within the totality of all the evidence." *Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000)* (citations omitted).

Considering together all the evidence before the court, the court finds [*13] that, while Usherenko's allegations of national origin-based comments create issues of fact that could support a finding of discrimina-

tion, Usherenko has presented no evidence that the disparate treatment and remarks were in any way connected to the decision-maker, Craig Wilson. Indeed, there is no evidence that Wilson, the individual responsible for terminating her, made any national origin-related remarks. Thus, Usherenko has not shown that Bertucci's reason for terminating her because of failing to accommodate a customer request was a pretext for unlawful national origin-based discrimination.

Bertucci's also challenges Rubalsky's prima facie case of national origin discrimination by asserting that she did not suffer an adverse employment action. It claims that, because she resigned from her job "for the stated reason that she was returning to school, and she never complained about sexual harassment or discrimination," there was no adverse employment action. *See* Def.'s Mem. in Supp. at 5. However, the Second Circuit has held that "[a] 'discharge,' in satisfaction of the third element of the prima facie case, may be either an actual termination of the plaintiff's employment [*14] by the employer or a 'constructive' discharge." *Stetson v. NYNEX Service Co., 995 F.2d 355, 360 (2d Cir. 1993).*

Nonetheless, even if the court assumes for the purposes of this motion that Rubalsky satisfied her prima facie case, she has presented no more evidence than has Usherenko that would support her claim of national origin discrimination. She refers to "comments" by Dixon that made fun of her accent and that he once called her country of origin, Belarus, an "island." *See* Plf.'s Stat. at P 60. As with the above, this court finds these comments are themselves insufficient to rise to the level of national origin discrimination. *See Jackson v. Health Res. of Rockville, Inc., 357 F. Supp. 2d 507, 515 (D. Conn. 2005)* (granting summary judgment despite plaintiff being made fun of and called "monkey" because of her national origin). Moreover, Rubalsky has admitted that "other than Dixon making fun of her accent, and stat[ing], 'What is that, an island,' there is no other reason for [sic] fact she knows of that forms the basis of her belief that she was discriminated against" on the basis of her national origin. *See id. at P 61.*

Based on [*15] the foregoing, the court concludes that there is no evidence upon which a jury could find that the plaintiffs' treatment at Bertucci's was discriminatory on the basis of their national origin. The defendant's Motion for Summary Judgment on these claims is therefore granted.

**2. Sex Discrimination**

Regarding Usherenko's gender discrimination claim, Bertucci's has presented the same arguments in challenging this claim, *i.e.,* that she did not provide evidence that would support her allegation that Bertucci's reason for terminating her was discriminatory or pretextual. In support of her claim, Usherenko has provided evidence regarding numerous sex-related comments and acts by her supervisor, Brandon Dixon, including placing his hands or head on her chest/breast, waist, or back, inquiring into her personal life, and trying to persuade her to date his friends. *See* Def.'s Stat. at PP 52-57. She also claims that she complained to Wilson about Dixon's behavior on several occasions. *See* Plf.'s Stat. of Disputed Facts, at P 12.

Considering all the evidence before it, the court finds that Usherenko has not created a genuine issue of material fact regarding her claim that Wilson's [*16] termination of her was a pretext for gender discrimination. Even if the court accepts Usherenko's assertion that Wilson was disinterested in hearing her side of the story before terminating her, Usherenko can only speculate that Wilson's termination was, in fact, a pretext for gender discrimination-i.e., that it was "Dixon's harassment-permitted by Wilson-that directly caused Usherenko's termination." *See* Plf.'s Stat. of Disputed Facts, at P 34. "The law is 'well established that 'conclusory statements, conjecture, or speculation" are inadequate to defeat a motion for summary judgment." *Woodman v. WWOR-TV, Inc., 411 F.3d 69, 85 (2d Cir. 2005)* (citations omitted).

As for Rubalsky's gender discrimination claim, Bertucci's only challenges it on the basis of its same argument that Rubalsky failed to establish her prima facie case because she voluntarily resigned. However, as noted above, the third element of the prima facie case can be established by actual termination or by constructive discharge. *See supra* at 8. A constructive discharge occurs when "the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable [*17] that the employee is forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983)* (citations omitted). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." *Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004).* For constructive discharge claims based on discrimination or harassment, the conditions must be "harsh enough to justify diverting from the supposition that the underlying policies of Title VII 'will be best served if, whenever possible, unlawful discrimination is attacked within the context of the existing employment relationship.'" *Ternullo v. Reno, 8 F. Supp. 2d 186, 192 (N.D.N.Y. 1998)* (citations omitted). Indeed, both the Supreme Court and the Second Circuit have emphasized that "a constructive discharge claim must entail something more than what is required for an ordinary sexual harassment or hostile-environment claim."

*Lupacchino v. ADP, Inc., 2005 U.S. Dist. LEXIS 1687, 2005 WL 293508, *6 (D. Conn. 2005).*

Since the standard for constructive discharge requires an evaluation of how a reasonable [*18] employee would behave "'in the employee's shoes,'" the issue should generally be left to the trier of fact. *Halbrook v. Reichhold Chemicals, Inc., 735 F. Supp. 121, 125 (S.D.N.Y. 1990)* (quoting *Pena, 702 F.2d at 325*). On the other hand, the "reasonable person" standard is an objective standard that "does not depend on such traditionally triable issues as the subjective reaction of any particular employee to changed working conditions." *Id. at 126.* Even if certain factors, standing alone, are "legally insufficient to support constructive discharge," *Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 90 (2d Cir. 1996)*, the various conditions should not be treated as "separate and distinct rather than additive," since "a reasonable person encounters life's circumstances cumulatively and not individually." *Id.*

The court finds that Rubalsky has presented an issue of fact as to whether she was constructively discharged. She has provided evidence of verbal and physical harassment by Dixon: he made inappropriate sexual bodily gestures or facial expressions around her, inquired about her married life, "belly danced" before her, called [*19] her "sexy blondie" after she dyed her hair blond, and "lit a cigarette lighter and put it to [her] butt." *See* Def.'s Stat. at PP 62-69. Rubalsky further claims that she complained to Wilson about his behavior, but that after her complaint "nothing changed." *See* Plf.'s Stat. of Disputed Facts, at P 43. Viewing the evidence in the light most favorable to the plaintiff, the court finds that a reasonable jury may find that Bertucci's deliberately created the intolerable working conditions. *See Petrosino, 385 F.3d at 229* (stating that, if a plaintiff cannot show specific intent, "he or she must at least demonstrate that the employer's actions were 'deliberate' and not merely 'negligent or ineffective[]'") (citations omitted). While the evidence is not strong, "[s]ummary judgment should be used 'sparingly' when . . . state of mind or intent are at issue." *Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir. 1998).* Moreover, since the standard for constructive discharge requires an evaluation of how a reasonable employee would behave "in the employee's shoes," the court finds that this issue should be left in this case to the trier of fact. [*20] [7]

> 7 The court notes again that this is the only grounds on which Bertucci's challenges Rubalsky's sex discrimination claim-that is, that Rubalsky failed to establish a prima facie case because she did not suffer an adverse employment action. Thus, the court's decision on this issue is limited to the defendant's challenge on this ground.

**3. *Section 1981* claims** (Counts III & IV)

Although not raised by the parties, this court will dismiss the plaintiffs' claims of intentional discrimination brought under *42 U.S.C. § 1981*, because that statute does not cover discrimination on the basis of national origin or gender. *Section 1981* prohibits discrimination based on race "in the making and enforcement of contracts," which "encompasses discrimination based on ancestry or ethnic characteristics." *Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998)* (holding that *§ 1981* also prohibits private alienage discrimination). It does not prohibit discrimination on the basis of gender. [*21] *See id.* Even though "'the line between discrimination based on 'ancestry or ethnic characteristics,' and discrimination based on 'place or nation of. . . origin,' is not a bright one," *Long v. Marubeni America Corp., 406 F.Supp.2d 285, 289 (S.D.N.Y. 2005)*, because plaintiffs' appear to characterize their allegations as one of "national origin discrimination," this court will dismiss their claims of discrimination brought pursuant to *§ 1981*.

**B. Harassment/Hostile Work Environment** [8] (Counts I & II)

> 8 The necessary showing to maintain either a harassment or hostile work environment claim are functionally identical. *See Hayut v. State Univ. of New York, 352 F.3d 733, 745 (2d Cir. 2003)* (noting that sexual harassment and hostile work environment claims are considered using the same theory and jurisprudence).

To establish a Title VII claim of discriminatory harassment or hostile work environment, the plaintiffs must show that they were subjected to harassment "sufficiently [*22] severe or pervasive to alter the conditions of [her] employment and create a hostile working environment," *Harris v. Forklift Systems, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)*, and that the harassing conduct occurred because of their sex or national origin, *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201* (holding that Title VII "is directed only at "discriminat[ion] . . . *because of* . . . sex") (emphasis added); *see also Jackson v. Health Resources of Rockville, Inc., 357 F. Supp. 2d 507, 519 (D. Conn. 2005)* (discussing harassment based on national origin).

In order for the harassment of the plaintiffs to be actionable, the harassing conduct must have been so severely "permeated with 'discriminatory intimidation, ridicule, and insult' . . . to alter the conditions of the victim's employment." *Harris, 510 U.S. at 21* (citations

omitted). The workplace must have been both objectively and subjectively hostile.

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's [*23] purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id. at 21-22*. In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id. at 23*. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)* (quoting *Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997))*.

**1. National Origin-Based Harassment**

Regarding the plaintiffs' claims of harassment based on their national origin, the court finds that they have not presented sufficient evidence to create [*24] a material issue of fact that the alleged harassment was sufficiently severe or pervasive to create an objectively hostile work environment. Their claim is based on comments allegedly made by Dixon that made fun of their accents and belittled their national origin, *see supra* at 6, 8, and they have indicated that they complained to Wilson about Dixon's behavior. *See* Plf.'s Stat. of Disputed Facts, at P 12, 14. Although this is a close case, the court finds that, "[w]hile . . . offensive name-calling might rightfully offend the average person, it hardly amounts . . . to the type of 'discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Jackson v. Health Resources of Rockville, Inc., 357 F. Supp. 2d 507, 519 (D. Conn. 2005)* (citing *Harris, 510 U.S. at 21*). Under the totality of circumstances, the plaintiffs have failed to come forward with sufficient evidence for a jury to find that their work environment was objectively hostile. Thus, their claim of national origin harassment fails.

**2. Sex-Based Harassment**

[*25] The court reaches the opposite conclusion on plaintiffs' claim of harassment based on their gender, as the plaintiffs have presented evidence of substantially more severe verbal and physical conduct by Dixon. Usherenko testified that Dixon placed his hands on various parts of her body, including her breast, made sexual jokes ("your boyfriend would rather play games than sexual activities") and other sexual comments (calling her a "ho"). *See* Plf.'s Stat. at Usherenko Aff., P 15. Rubalsky also claims that Dixon made inappropriate sexual bodily gestures or facial expressions around her, inquired about her married life, "belly danced" before her, called her "sexy blondie" after she dyed her hair blond, and "lit a cigarette lighter and put it to [her] butt." *See* Def.'s Stat. at PP 62-69. Considering the totality of circumstances, the court finds that these allegations present an issue of fact as to whether they were "sufficiently severe or pervasive to alter the conditions of [their] employment and create a hostile working environment." *Harris v. Forklift Systems, 510 U.S. at 21*.

Moreover, both plaintiffs have also presented evidence that they complained to [*26] Wilson on several occasions. *See* Plf.'s Stat. of Disputed Facts, at P 12, 43. The defendant counters that the plaintiffs never specifically complained about Dixon's *sexually* harassing behavior, and that, regardless, Wilson spoke to Dixon after Usherenko complained to him about Dixon's inappropriate jokes. However, the plaintiffs claim the harassing behavior appeared to stop only "for one or two weeks." *See* Plf.'s Stat. at P 36.

In its Reply Memorandum, at 4 [Doc. No. 120], Bertucci's for the first time argues that plaintiffs failed to follow company procedure of calling the Bertucci's 800 hotline to report the alleged harassment. However, based on the plaintiffs' evidence regarding their complaints to Wilson, Bertucci's General Manager, the court finds that there is a genuine issue of fact as to whether Wilson was made aware of Dixon's sexually harassing behavior and yet did not take any action to remedy the situation. *See Mack v. Otis Elevator Co., 326 F.3d 116, (2d Cir. 2003)* (discussing *Faragher/Ellerth* affirmative defense). [9] Thus, the defendant's motion for summary judgment on the plaintiffs' sexual harassment claim is denied.

> 9 The court notes that the defendants have not raised the *Faragher/Ellerth* affirmative defense in their motion for summary judgment, and that they raised the plaintiffs' failure to follow company policies in reporting the harassment for the first time in their Reply Memorandum. Thus, the court will not further address this issue.

[*27] **C. Retaliation** (Counts I & II)

A plaintiff's retaliation claim is examined applying the same *McDonnell Douglas* burden-shifting analysis used for discrimination claims. *See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003)*. A plaintiff makes a prima facie showing of retaliation by establishing "participation in a protected activity known to the defendant; an employment action disadvantaging the plaintiff; and a causal connection between the protected activity and the adverse employment action." *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)* (quoting *Tomka v. Seiler Corp, 66 F.3d 1295, 1308 (2d Cir. 1995))*. Within the context of Title VII claims, a "'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)* (citing *42 U.S.C. § 2000e-3*). Once a plaintiff has satisfied her prima facie burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for their action. *See Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004)*. [*28]

Bertucci's initially characterized the basis for Usherenko's retaliation claim as: "she was terminated as the result of her rejection of Mr. Dixon's advances." *See* Def.'s Mem. in Supp. at 13. According to Usherenko, this is a misstatement of her claim; instead, she alleges that she was terminated "as a result of her complaints about Dixon's sexual harassment." *See* Plf.'s Mem. in Opp. at 16. The court finds that Usherenko's characterization of her claim comports with the allegations in the Amended Complaint; and thus will address Usherenko's retaliation claim as based on her complaints to Wilson about Dixon's behavior.

Bertucci's has failed to address this allegation in its Reply Memorandum, but it did address it in a short footnote in its original Memorandum in Support. *See* Def.'s Mem. in Supp. at 14 n.1. In that footnote, it argued that Usherenko's claim must fail, not only because Usherenko never complained about Dixon's harassing behavior until after she was terminated, but also because any alleged complaints by Usherenko to Wilson were made too far apart from the date of her termination.

Since the court has already found that there is an issue of fact as to whether [*29] Usherenko complained to Wilson regarding Dixon's behavior, *see supra* at 15, it need only address the causal connection element of the prima facie case.

> "Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct . . . or directly through evidence of retaliatory animus directed against a plaintiff by the defendant."

*DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir.1987)*. The Second Circuit has not established a bright line rule for determining whether retaliatory conduct "followed closely" a plaintiff's protected activity. *See Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001)*. It has concluded that two years is too long a time to support an inference of a causal connection. *Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999)*. The Second Circuit, as well as district courts within the Second Circuit, have rejected [*30] finding a causal inference when there were gaps of three months, six months, eight months, one year, and eleven months between the filing of the complaint and the alleged retaliation. *White v. Whitman, 2002 U.S. Dist. LEXIS 7508, 2002 WL 776589, at *12 (S.D.N.Y. 2002)* (citing cases).

According to Bertucci's, the time period between any alleged complaint by Usherenko and her termination was five months. [10] However, Usherenko testified in her. deposition that she "kept complaining" to Wilson, at least two times, between March 2003 and June 2003, *see* Plf.'s Stat. at Ex. A, Usherenko Dep. at 124-26. Based on this evidence, the court finds there is an issue of fact as to whether Usherenko has established a causal connection between her complaints and her termination. Since the defendants do not further address Usherenko's retaliation claim, based on the evidence before it the court will deny summary judgment on this claim.

> 10 This time period is based on Usherenko allegedly complaining to Wilson in February 2003 and being terminated in July 2003. However, this time period should be shortened, according to Usherenko, since she claims that she was terminated on June 27, 2003. *See* Plf.'s Stat. at P 1.

[*31] However, the court finds there is no issue of material fact as to Rubalsky's retaliation claim. Bertucci's argues that Rubalsky suffered no adverse employment action, and thus is unable to establish a prima facie case of retaliation. Although Rubalsky asserts that a constructive discharge is an adverse employment action, the court does not find that there is a causal connection between Rubalsky's complaining to Wilson and her leaving Bertucci's. Indeed, Rubalsky indicated that, after she complained to Wilson in April 2003, "there was no change in Mr. Dixon's demeanor." *See* Amended Complaint at P 47; Plf.'s Stat. at Ex. B, Rubalsky Dep. at 76. While there remains an issue of fact as to whether Dixon sexually harassed Rubalsky, the court finds that Rubalsky has not

established that she was retaliated against for having complained to Wilson about Dixon's behavior.

**D. Intentional Infliction of Emotional Distress** (Counts VII & VIII)

In order to maintain a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must show that: (1) the defendant intended to inflict emotional distress on her or knew, or should have known, that emotional distress [*32] was the likely result of its actions; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct is the cause of the plaintiff's emotional distress; and (4) the emotional distress sustained is severe. *See Appleton v. Bd. of Educ. of the Town of Stonington, 254 Conn. 205, 210, 757 A.2d 1059 (2000)*. Whether Bertucci's conduct was extreme and outrageous is the initial question for the court to address. *See id.* "Only where reasonable minds disagree does it become an issue for the jury." *Id.*

To be extreme and outrageous, Bertucci's conduct must exceed "all bounds usually tolerated by decent society . . . ." *See id.* (quotation omitted). In fact,

> [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* (quoting *RESTATEMENT (SECOND) OF TORTS § 46* [*33] *cmt. d, 73* (1965)). Bertucci's asserts that it did not engage in any extreme or outrageous conduct and that reasonable minds cannot disagree in this situation.

The plaintiffs argue that their intentional infliction of emotional distress claim is based on their allegations of Dixon's sexually harassing conduct. Courts in this district have found that "conduct amounting to sexual harassment may give rise to a claim for intentional infliction of emotional distress," although "sexual harassment is [not] *per se* extreme and outrageous." *Kilduff v. Cosential, Inc., 289 F. Supp. 2d 12, 22 (D.Conn. 2003)*; *see also Rodrigue v. Hartford Fire Ins. Co., 1997 U.S. Dist. LEXIS 18889, 1997 WL 736525, at *4 (D.Conn. 1997)* (noting that "it is not at all uncommon for claims of intentional infliction of emotional distress to be pled and tried in conjunction with claims of sexual harassment").

As the court noted above in denying summary judgment on their sexual harassment claims, the plaintiffs have alleged instances of sexual comments and offensive touching by their supervisor, Dixon. If these claims of harassment are proven at trial, "a reasonable jury could find the defendant's conduct [*34] to be sufficiently outrageous and extreme to sustain a claim of intentional infliction of emotional distress." *Rodrigue, 1997 WL 736525, at *4*. Therefore, the court denies Bertucci's motion for summary judgment on these counts.

**IV. CONCLUSION**

Based on the foregoing analysis, the defendant's Motion for Summary Judgment **[Doc. No. 77]** is GRANTED in part and DENIED in part. It is DENIED as to Usherenko's claims of sexual harassment, retaliation, and intentional infliction of emotional distress (Counts I, V, & VII) and Rubalksy's claims of sex discrimination, sexual harassment, and intentional infliction of emotional distress (Counts II, VI & VIII). It is GRANTED as to Usherenko's claims of national origin discrimination, sex discrimination, and national origin-based harassment (Count I & V), and Rubalksy's claims of national origin discrimination, national origin-based harassment, and retaliation (Count II & VI). The plaintiffs' claims under *42 U.S.C. § 1981* are DISMISSED (Counts III & IV). Additionally, because the court's analysis above did not rely on any evidence that is part of Bertucci's Motions to Strike **[Doc. Nos.** [*35] **117 & 121]**, the court will DENY the Motions to Strike as moot.

Finally, Bertucci's Motion for Sanctions **[Doc. No. 117]** is DENIED. However, the court finds that the plaintiffs' counsel violated *Rule 5(b)* of the Federal Rules of Civil and Rule 5(b) of the Local Rules of Civil Procedure for the District of Connecticut by failing to list the names, and including instead only the names of the respective law firms, of the defense attorneys to whom the Re-Notice of Deposition was intended to be mailed. *See* Plf.'s Memorandum in Opposition to Defendant's First Motion to Strike and for Sanctions, at Ex. 1 [Doc. No. 133]. Federal *Rule 5(b)* states that service must be made "on the attorney," and Local Rule 5(b) requires that "[w]here proof of service is made by certificate or affidavit, the certificate or affidavit shall list the *name* and address of each person served" (emphasis added). Although the court will not currently sanction plaintiffs' counsel, it will order sanctions if counsel again violates this Rule in the future. Moreover, the court orders that, even though discovery is over, defense counsel be permitted to take Craig [*36] Wilson's deposition, if they so desire.

**SO ORDERED.**

Page 9

2006 U.S. Dist. LEXIS 92726, *; 99 Fair Empl. Prac. Cas. (BNA) 1015

Dated at Bridgeport, Connecticut this 20th day of December, 2006.

/s/ Janet C. Hall

United States District Judge