**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DR. MARIA ARTUNDUAGA,

Plaintiff,

v.

THE UNIVERSITY OF CHICAGO
MEDICAL CENTER,

Defendant.

No. 12 C 8733

Judge Amy J. St. Eve
Magistrate Judge Sidney I. Schenkier

**DEFENDANT'S SUBMISSION REGARDING
PLAINTIFF'S EXHIBIT 29**

Pursuant to this Court's December 21, 2016 Order, Defendant The University of Chicago Medical Center ("UCMC") hereby submits its position regarding the privileged nature of Plaintiff's Exhibit 29 ("PX 29"). PX 29 reflects the legal advice of UCMC's legal counsel, is the result of requests for legal advice and was received by persons seeking such advice on behalf of UCMC. It therefore is privileged and inadmissible at trial.

**I.    FACTS**

1.      At his October 2, 2015 deposition in the case of *Dr. Maria Artunduaga v. The University of Chicago Medical Center*, Case No. 2014-L-008678 (the "Deposition"), Dr. David Song testified that Joint Exhibit ("JX") 26 (identical to Exhibit 14 the Deposition) is the final probation letter he issued to Plaintiff. (Deposition 162 (Exhibit A), "Deposition Exhibit 14 (Exhibit B)," JX 26 (Exhibit C)).

2.      Prior to drafting JX 26, Dr. Song consulted with and sought the legal advice of UCMC's then in-house legal counsel, Jane McAtee, regarding Plaintiff and appropriate

probation-related documentation for her. (Deposition p. 167; January 13, 2017 Declaration of Dr. David Song ("Song Dec.") ¶ 4, (Exhibit D)).

3.  Dr. Song then prepared a draft of the probation letter with the assistance of PRS Residency Coordinator and Office Manager Akilah Williams, who reported to Dr. Song and, as part of her regular duties, prepared and revised correspondence regarding PRS residents – including Plaintiff. (Song Dec. ¶¶ 5-6; Deposition of Akilah Williams 17-18, 20 (Exhibit E)).

4.  Dr. Song directed Ms. Williams to consult with Mr. Kamin, then Executive Director for Graduate Medical Education and ACGME Designated Institutional Officer ("DIO"), regarding the draft probation letter, and informed Ms. Williams that they would consult with Ms. McAtee about the letter before it was finalized. (Song Dec. ¶ 5; Deposition of Barry Kamin p. 8-9 (Exhibit F)). Dr. Song believed that in his role as DIO, Mr. Kamin would have the information and background appropriate to assist with the preparation and revision of the probation letter. (Song Dec. ¶ 7).

5.  As reflected in the unredacted version of UCMC 29779-88 provided to the Court for *in camera* review,[1] Dr. Song, Mr. Kamin and Ms. Williams consulted with Ms. McAtee and sought her advice regarding the probation letter on, as is pertinent here, November 15, 2011. (*See* Deposition 162-67; Song Dec. ¶ 8).

6.  That same day, Ms. McAtee returned a draft of the probation letter to Dr. Song, Mr. Kamin and Ms. Williams into which she incorporated her legal advice. (Song Dec. ¶ 8 (Exhibit C); Deposition Exhibit 15 (UCMC 18195-96, at Exhibit B); *see in camera* copy of UCMC 29779-88, provided to the Court without redactions).

---

[1] Additional copies can be provided to the Court upon request.

7.     At the Deposition in October 2015, Plaintiff's counsel asked Dr. Song about Deposition Exhibit 15, which is the draft of the probation letter reflecting Ms. McAtee's advice (Facts ¶ 5-6) and which is currently on Plaintiff's exhibit list as PX 29.  (Deposition Exhibit 15; PX 29 (UCMC 18195-96, at Exhibit G); Deposition Exhibit 15).

8.     Specifically, Plaintiff's counsel asked Dr. Song about the following highlighted statement in Exhibit 15: "Define who makes this decision in Plastics."  (Deposition 163; PX 29; Deposition Exhibit 15).  Dr. Song testified that he believed the statement "was legal's advice" and that it was "input from legal."  (Deposition 163-64).

9.     Upon realizing that the document was privileged and had been inadvertently produced, UCMC's counsel objected to further questioning about it and Plaintiff's counsel expressly refrained from asking such questions.  (Deposition 163-64).

10.     On January 7, 2016, UCMC produced a redacted version of the cover email to which PX 29 was attached with PX 29 attached and redacted in full. (1/7/2016 Letter (Exhibit H); UCMC 29779-88 (Exhibit I)).

11.     In April 2016, and pursuant to Paragraph 22, Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5)(B), which protect and provide for the claw back of inadvertently produced privileged documents, UCMC again identified PX 29 as privileged to Plaintiff's counsel.  (April 13, 2016 Email (Exhibit J)).[2]

12.     On November 4, 2016, UCMC sent Plaintiff updated  privilege logs for the instant case and the sister case brought by Plaintiff pending in the state court (Case No. 2014-L-008678) (the "State Case").

---

[2] UCMC's counsel inadvertently stated that PX 29 was prepared by Barry Kamin and sent to Jane McAtee and Dr. Song when, in fact, it was revised by Jane McAtee and sent to Barry Kamin, Dr. Song and Akilah Williams.

(a)     The federal log provides that the document marked on the log and initially withheld as PRIV338 had since been produced at UCMC 29779-86 with redactions, and that the attachment (initially produced at UCMC 18195-96 (PX 29, Deposition Ex. 15) was privileged and prepared by Ms. McAtee on November 15, 2011, and appeared on the State Court Case privilege log as PRIV24/UCMC 29787-88.  (*See* Exhibit K and p. 1 (row 2), p. 2 (row 3) of federal privilege log).[3]

(a)     The state log reflects that the redacted portion of UCMC 29779-86 contains email exchanged by custodians Dr. Song, Ms. Williams, Mr. Kamin and Ms. McAtee on November 15, 2011 in which legal advice and a draft legal document were provided and requested regarding probation.  (*See* Exhibit K and entry for UCMC00029779-86 on the State Case privilege log).  The state log also reflects that UCMC 29787-88 (PX 29, Deposition Exhibit 15) is the November 15, 2011 attachment to the email by Jane McAtee providing legal advice and a draft legal document regarding probation.  (Exhibit K and 11/4/2016 update for PRIV724 (UCMC 29787-88)).

## II.     PX 29 IS PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE

Federal law governs the assertion of the attorney-client privilege in this matter because Plaintiff's Title VII action is based on federal law.  *Nw Mem. Hosp. v. Ashcroft,* 362 F.3d 923, 925 (7th Cir. 2004) (state-law privilege does not apply in federal question suits); *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (applying federal common law where claim arose out of federal Sherman Act).   Federal attorney-client privilege law protects "confidential communications made by a client to his lawyer where legal advice of any kind is sought from a professional legal advisor in his capacity as such."  *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal citations omitted).  It also protects "statements made by the lawyer to the client…in circumstances where those communications rest on confidential information

---

[3] The privilege logs were sent to Plaintiff in full as attachments to the November 4, 2016 email, but are produced here only in part for the Court's viewing convenience.

obtained from the client or where those communications would reveal the substance of a confidential communication by the client." *Id.* "The privilege applies to communications between in-house counsel and corporate employees to the same extent as communications between outside counsel and a client." *Scurto v. Commonwealth Edison Co.*, No. 97 C 7508, 1999 WL 35311, at *1 (N.D. Ill. Jan. 11, 1999) (internal citations omitted).

Federal privilege law rejects the "control group" test, which made privileged only communications between counsel and senior management "who play a substantial role in deciding or directing a corporation's legal response," because the test frustrates "the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." *Upjohn Co. v. U.S.*, 449 U.S. 383, 390-93 (1981). Instead, the privilege extends to any corporate employee who communicates with counsel at the direction of his or her superiors for the purpose of securing legal advice. *Id.* at 394. *See also Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. Nov. 2, 2007) ("privilege can extend to any employee who communicates with counsel at the direction of her superiors, regarding matters within the scope of her duties"); *Am. Nat'l Bank & Trust Co. v. AXA Client Solutions*, No. 00 C 6786, 2002 WL 1058776, at *10 (N.D. Ill. Mar. 22, 2002) ("In the corporate context, it is well settled that the privileged nature of a communication does not lose its status as such simply because it was disseminated among numerous employees of the corporation."); *United States v. Dish Network, LLC*, 283 F.R.D. 420, 425 (C.D. Ill. 2012) (finding privilege not waived when "privileged communications were properly limited to employees who reasonably needed the information to perform their duties for the corporation").

Here, Plaintiff contends that PX 29 is not privileged because it "appears to have been attached to an 11/11/11 email between Akilah Williams and Barry Kamin, neither of whom are attorneys." (Docket No. 189-5 p. 5 (PX 29 Plaintiff Statement of Admissibility)).

As reflected in the Facts, however, PX 29 is a draft of the probation memo which incorporates Ms. McAtee's comments, as sent to Dr. Song, Mr. Kamin and Ms. Williams on November 15, 2011. (Facts ¶ 5, 6, 12). Ms. Williams, Mr. Kamin and Dr. Song corresponded with Ms. McAtee about the probation memo in order to obtain her legal advice regarding same, and Ms. Williams had assisted and been involved in the drafting of the probation letter and coordinated same with Mr. Kamin (who at the time was an Executive Director and the DIO) at Dr. Song's explicit direction. PX 29 was also disseminated by Ms. McAtee only to the UCMC personnel working on the preparation and finalization of the probation memo. PX 29 is therefore privileged, and inadmissible at trial. *See Rehling*, 207 F.3d at 1019 (in-house counsel communications privileged because they advised the employer on how to accommodate plaintiff employee); *see McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000); *Am. Nat'l Bank & Trust Co.*, 2002 WL 1058776, at *6 (holding that draft letters containing legal advice and opinions of in-house counsel were privileged).

## III.  CONCLUSION

Because PX29 is protected by the attorney-client privilege, Plaintiff should be barred from utilizing PX 29 at trial.

CHICAGO/#2933234.8

Dated:  January  13, 2017

Respectfully submitted,

THE UNIVERSITY OF CHICAGO
MEDICAL CENTER


By:    s/ Elizabeth N. Hall
                   One of Its Attorneys

Edward C. Jepson, Jr.
Elizabeth N. Hall
Emily C. Fess
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 (312) 609 7500

CHICAGO/#2933234.8

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify that a true and correct copy of the foregoing document,

DEFENDANT'S SUBMISSION REGARDING THE PRIVILEGED NATURE OF EXHIBIT

29, was served on January 13, 2017 via the Court's CM/ECF system on the following:


Jamie S. Franklin
The Franklin Law Firm LLC
53 W. Jackson Boulevard, Suite 803
Chicago, IL 60604
jsf@thefranklinlawfirm.com

Cynthia H. Hyndman
Robinson, Curley & Clayton, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL  60606
chyndman@robinsoncurley.com


s/ Elizabeth N. Hall
Elizabeth N. Hall