IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA, | |
| Plaintiff, | |
| v. | No. 12 C 8733 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, | Judge Amy J. St. Eve<br>Magistrate Judge Sidney I. Schenkier |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS BILL OF COSTS**

It is Plaintiff's burden to establish that the costs requested by The University of Chicago Medical Center ("UCMC") are not appropriate. *See Ayala v. Rosales*, No. 13-cv-04425, 2016 WL 2659553, at *1 (N.D. Ill. May 9, 2016) (citing *Blackwell v. Kalinowski*, No. 08-C-7257, 2011 WL 3555770, at *1 (N.D. Ill. Aug. 11, 2011)). UCMC replies to Plaintiff's Objections to UCMC's bill of costs as follows:

A.  **SCHEDULES A AND B TO UCMC'S BILL OF COSTS**

Plaintiff does not contest that UCMC is entitled to the costs sought under Schedule A, and they should be awarded. Plaintiff seeks to reduce from Schedule B subpoena service fees incurred for service of subpoenas on Drs. Dantz and Velander, but that request should be denied.

First, the invoice associated with service of the subpoena on Dr. Dantz reflects that service was attempted twice (and, per Exhibit A hereto, at two locations) and that in each instance UCMC was charged $59 for standard service (less than the $65/hour allowed) and $39 for rush service, or $98 per attempt. (Docket No. 284-1 p. 34). Costs for both service attempts are recoverable. *Williams v. Fico*, No. 11 C 1105, 2015 WL 3759753, at *4 (N.D. Ill. June 15, 2015); *Ayala*, 2016 WL 2659553, at *4. In addition, the documents relating to service on Dr.

Velander reflect that vendor Legal Wings charged a total of $95 to serve the subpoena and file it with the court. (Docket No. 284-1 p. 36, 37). Per the Legal Wings invoice, $50 was for the courier amount (less than the $65/hour allowed (Pl. Obj. 1, 2)), and $45 was presumably the cost of filing. (Docket No. 284-1 p. 39 ("Reimb. Amt.")). Both the service and filing costs are recoverable (although the latter should have been submitted under Schedule A). Accordingly, UCMC requests that the Court award the full amount requested under Schedule B.

### B. SCHEDULE C TO UCMC'S BILL OF COSTS

Plaintiff asks this Court to reduce its request for witness fees to account for the $2,340 in preparation fees incurred due to Dr. Cohen's preparation for his deposition. (Pl. Obj. 2). Plaintiff does not contest that the 5.2 hours Dr. Cohen spent preparing for his deposition is reasonable in length and no binding precedent states that an expert's invoice must reflect exactly what was done to prepare in order for preparation costs to be recovered. Indeed, this Court has previously agreed that the "key" aspect of its inquiry is whether the amount of time spent by the expert preparing (without comment as to what the expect in fact did to prepare) was reasonable. *Fairley v. Andrews*, No. 03-C-5207, 2008 WL 961592, at *4-5 (N.D. Ill. Apr. 8, 2008) (relied upon by Plaintiff). Here, the amount of time Dr. Cohen spent was inherently reasonable in light of the length of his deposition and the complexities of the case, including those which required him to counter the calculations and rationale behind the report of Plaintiff's expert, Dr. Killingsworth, and the costs sought for it should be awarded. *See Goldberg v. 401 N. Wabash Venture LLC*, No. 09-C-6455, 2013 WL 4506071, at *5 (N.D. Ill. Aug. 23, 2013).

### C. SCHEDULE D TO UCMC'S BILL OF COSTS

#### 1. Deposition Transcripts and Court Reporter Fees

Plaintiff does not contest UCMC's request for the costs associated with obtaining the transcripts of the depositions of Plaintiff (2014), Antonio Copete, Ms. Raju or Drs. Dantz,

-2-

Fleming (2016), or Keough, and UCMC therefore requests that this Court award the associated costs as outlined in Schedule D.

Plaintiff challenges UCMC's request for the costs associated with obtaining the deposition transcripts of a variety of other witnesses, based on her "assum[ption]" that UCMC ordered "copies" of every deposition taken by Plaintiff. (Pl. Obj. 5 n. 3 Ex. A). That unsupported contention cannot defeat UCMC's request for costs. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005) ("the losing party bears the burden of an affirmative showing that taxed costs are not appropriate"). Further, following receipt of Plaintiff's Objections, UCMC has confirmed that many of the depositions Plaintiff claims should be taxed as copies were in fact originals. (*See* Exhibit B (Exhibit 5 court reporter email confirming $4.95 per page charge for originals, $2.80 for copies); *see* Docket No. 284-1 pp. 93, 95, 96, 105 (invoices for deposition transcripts of Simon, Roggin, Song (2015) and Simpson charged at $4.95 per page); *see* Exhibit C (Professional Shorthand Reporters (PSR) confirmation of original transcript charge ($350 minimum for 81 page Velander transcript (at $4.32 per page)); Docket No. 284-1 p. 108 (PSR invoice for Velander transcript at $4.32 per page))[1]. This Court should therefore award the costs associated with obtaining the original transcripts of Ms. Simpson and Drs. Simon, Roggin, Song (2015) and Velander. (Exhibit D; Schedule D).

In addition, UCMC seeks $940.90 for Plaintiff's original expedited deposition transcript from 2016 (Docket No. 284-1 p. 103), and Plaintiff gives no justification for reducing that amount to $598.60 (which itself is inconsistent with the $3.65 per page allotted for an original

---

[1] Despite the fact that UCMC requested the Velander transcript on an expedited basis and believed that it paid for an expedited transcript, PSR has since stated (Exhibit C) that UCMC was only charged the minimum of $350 for receipt of the original transcript, and UCMC therefore modifies its request for Dr. Velander's transcript from $349.92 to $295.65. (Exhibit D).

-3-

transcript (which she admits it is)).[2] Plaintiff has not met her burden to warrant any reduction. *Beamon*, 411 F.3d at 864. Further, UCMC's request for an expedited copy of Dr. Killingsworth's transcript was justified as it was promptly needed following his October 27, 2015 deposition given that UCMC's own expert disclosures and report in response to Dr. Killingsworth were due on November 12, 2015. (Docket Nos. 113; 284-1 p. 98). UCMC's rush request for these transcripts[3] was therefore reasonable and the costs should be awarded.

UCMC otherwise agrees, based on the information provided by the court reporters and identified by UCMC only after Plaintiff's submission of her Objections, that it inadvertently requested the cost of "original" transcripts for a number of transcripts which should be taxed as copies (*e.g.* for the Curell, Kamin, Williams, Song (2013 (2)), Dickie, Kaplan, Umanskiy, Angelos, Ferguson, Grossman, Jaskowiak, Lusardi, Fleming (2014), Posner, and Cohen depositions), and asks that this Court award the modified amounts for each as outlined in Exhibit D hereto. UCMC also hereby revises its request for the court reporter fees to which Plaintiff objected to comport with the $110 allowed for half day depositions and the $220 allowed for full day depositions, as provided by Plaintiff and as reflected in Exhibit E hereto.

### 2. Video Deposition Costs

Plaintiff does not contest the costs associated and requested for obtaining the videos of the depositions of Drs. Grossman, Fleming (2016), Velander or Meghan Keough, and UCMC therefore requests that this Court award the costs for obtaining those videotaped depositions, as reflected in Schedule D.

---

[2] Even if the Court agrees that the cost should only be for an original, ordinary delivery transcript, the appropriate amount for a 194 page deposition is $708.10.
[3] UCMC hereby modifies its request for an original, expedited copy of Garcia's transcript to one for an original, ordinary transcript (from $839.05 to $631.45 (Exhibit D)).

-4-

Plaintiff contends that UCMC is not entitled to the costs of obtaining the videotaped depositions of Drs. Lusardi or Fleming (2014) because Plaintiff, and not UCMC, played those videos at trial. (Pl. Obj. 4). However, the reasonableness of obtaining a videotaped deposition is established when there is uncertainty of whether a witness will appear for trial, *Oleksy v. GE*, No. 06-cv-1245, 2016 WL 7217725, at *6 (N.D. Ill. Dec. 12, 2016), and Plaintiff deposed those witnesses and videotaped those depositions, making it "[] unfair to allow Plaintiff[] access to video recordings of transcripts for possible use at trial and to deny [UCMC] the right to obtain those same video tapes (and, of course, to tax the Plaintiff[] for them upon prevailing)." *See In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015). Here, UCMC only ordered the Lusardi and Fleming (2014) videos after Plaintiff relayed that she would call them by video at trial. (*See* Docket No. 284-1 p. 84 (Fleming (2014) invoice, dated 1/11/17), p. 82 (Lusardi invoice, dated 11/17/2016); Exhibit F (11/8/2016 email from Plaintiff's counsel confirming witness list)). Accordingly, UCMC reasonably obtained these video depositions and the associated costs should be awarded.

In addition, when it requested Ms. Raju's videotaped deposition, UCMC was unsure if she would appear for trial (Docket Nos. 137 and 139), and, therefore, under *Oleksy*, the costs of obtaining that video should also be awarded.[4] *See* 2016 WL 7217725, at *6-7. Further, while Plaintiff did not list Antonio Copete as a trial witness, as of the date of his deposition he worked in Boston and lived in Cambridge, Massachusetts (Exhibit G (Copete Dep. 12-13, Copete subpoena)) and UCMC could have reasonably expected that he would have been called at trial (for Plaintiff in her case or on rebuttal, given his attendance at the grievance hearing) (Exhibit G (Copete Dep. 19)). It was also reasonable for UCMC to obtain the video depositions of Dr. Song

---

[4] Notably, Plaintiff does not provide a specific reason as to why the $769.25 for the Joly Raju video should not be awarded to UCMC.

(2013 and 2015) and Plaintiff (2014 and 2016). (Docket No. 284-1 pp. 66, 68; UCMC Memo 4). Plaintiff deposed Dr. Song and took his video depositions at the time; preventing UCMC from having access to and recovering the costs of the videotaped depositions of Dr. Song is inherently unfair, per *In re Dairy Farmers of America, Inc.*, cited above. Moreover, Dr. Song is *not* a party as Plaintiff claims, and, regardless, contrary to Plaintiff's assertion, in the *Fairley* case this Court *allowed* a party to recover costs of his own videotaped deposition. *See* 2008 WL 961592, at *11; (Pl. Obj. 4). Plaintiff has not met her burden to defeat UCMC's requests for the costs associated with obtaining the video of Dr. Song's depositions or of Plaintiff's depositions.[5] Finally, Plaintiff's contention that UCMC cannot recover the costs of the videotaped depositions of Drs. Dantz or Killingsworth is not supported by binding case law, and should be rejected. (Pl. Obj. 4-5; UCMC Memo 4-5).

### 3. Daily Trial Transcripts

This Court should also reject Plaintiff's request that it disallow the $9,475.55 in daily transcript costs sought by UCMC. First, the fact that the jury found against Plaintiff in approximately one hour does not mean that the issues presented to the jury were not complex (Pl. Obj. 5 n. 3). Indeed, it may just mean that the jury concluded with ease following the presentation of extensive exhibits and twenty plus witnesses over eight days that Plaintiff's claims were without merit. Second, the number of witnesses called during the trial, which was lengthy itself, is significant, and added to the complexity of the issues at hand. Further, UCMC's counsel took careful notes, but it was through a review of the daily transcripts that counsel was able to appropriately track testimony given by Plaintiff and others and to thereafter prepare questions for its own witnesses (not only Dr. Umanskiy) to counter same. And, the damages cap

---

[5] Based on the description in the transcript invoice, UCMC inadvertently requested $824.50 for the video of Plaintiff's 2016 deposition, but the invoice for the video itself (not originally attached) reflects a cost of $332.50 (Exhibit H), and UCMC hereby modifies its request for that video accordingly.

(Pl. Obj. 6) is irrelevant to the Court's consideration here – the jury still could have rendered a verdict for Plaintiff well in excess of the cap (and over the $9 million plus she sought), an issue of significant importance to UCMC (and apparently to Plaintiff, as well, as she sought that exorbitant amount). The daily transcript costs should be awarded.

### D. SCHEDULES E AND F TO UCMC'S BILL OF COSTS

Plaintiff does not contest the costs sought by UCMC under Schedule E, and they should be awarded.

#### 1. Photocopies

A prevailing party typically may recover the cost for making three copies of pleadings and discovery materials because Section 1920 allows "recovery for materials actually prepared for use in the litigation and delivered to the court and opposing counsel." *Harkins v. Riverboat Servs.*, 286 F. Supp. 2d 976, 982-83 (N.D. Ill. 2003). The *Harkins* court said that "typically, litigation requires one copy for the defendant, one copy for the plaintiff, and one copy for the court." *Id*. *See also Roney v. IDOT*, No. 99 C 4941, 2007 WL 1100751, *2 (N.D. Ill. Apr. 12, 2007) (allowing recovery for cost of copies for prevailing party's counsel); *Am. Safety Cas. Ins. Co. v. City of Waukegan*, No. 07 C 1990, 2011 WL 6437535, at *8 (N.D. Ill. Dec. 20, 2011) (allowing recovery for cost of three copies - two for prevailing party's two attorneys and one for the court). Contrary to Plaintiff's position, Section 1920 and Local Rule 54.1 "do not bar recovery for any hard copies for the attorneys' use, just excessive copies." *Am. Safety Cas. Ins.*, 2011 U.S. Dist. LEXIS 145994, at *8; *see also Barton v. Zimmer, Inc.*, No. 06-CV-208-TS, 2010 WL 3168403, at *3 (N.D. Ind. Aug. 10, 2010) (holding that the "attorney convenience" principle bars recovery for "duplicate copies of documents simply to accommodate multiple lawyers," but allows for the printing of a copy "of a document that is otherwise only viewable by electronic means.") UCMC's request for two copies of all pleadings – at the rate of only $.07 per page –

should therefore be awarded. (Pl. Obj. 7). UCMC otherwise agrees to withdraw its request for the costs ($2,143.05) associated with copying its production.

### 2. Trial Technologist

Plaintiff argues – absent reference to *any* case law – that UCMC cannot recover costs for the time Michael Newell spent on database management and in court because UCMC's counsel or its employees should have performed Mr. Newell's duties. (Pl. Obj. 8-9). Plaintiff has not satisfied her burden to show that the costs should not be awarded. *See Beamon*, 411 F.3d at 864. Mr. Newell's work was critical to UCMC's presentation of voluminous evidence in an efficient and sound manner, and nothing supports Plaintiff's claim that using his services was a "luxury" for which costs should be disallowed. (UCMC Memo 7-8). Indeed, Plaintiff ignores a decision of this Court and another in the Northern District of Illinois allowing costs for the type of work Mr. Newell performed for UCMC. *See LG Elec. U.S.A., Inc. v. Whirlpool Corp.,* No. 08 C 0242, 2011 WL 5008425, at *7 (N.D. Ill. Oct. 20, 2011); *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, No. 07 CV 623, 2014 WL 125937, at *7 (N.D. Ill. Jan. 14, 2014). UCMC's costs attributable to Mr. Newell's work should be awarded in full.

### 3. Demonstrative Exhibits at Trial

The costs UCMC incurred for the demonstrative timelines are recoverable. First, UCMC utilized a litigation consulting company, DecisionQuest, to prepare the timelines, and Plaintiff cites no case law supporting her position that the DecisionQuest rates were unreasonable or should be reduced. (Pl. Obj. 8-9). Moreover, the timelines were *not* argument (and if they were, Plaintiff would have presumably objected to their use during opening statements). Indeed, the timelines illustrated numerous important events relevant to the time periods before, during and after Plaintiff's residency which casted doubt on her credibility, the veracity of her contentions and UCMC's defenses. The "PRS Residency" timeline alone catalogued over 50 events pertinent

to Plaintiff's claims – including those that highlighted UCMC's attempts to help her during the probationary period (such as the mentor meetings, called out in a different color) – that occurred over a nine month period. (Docket No. 284-1 p. 145). UCMC utilized the timeline format to boil down the vast amount of evidence the jury was to consider over eight days of trial, and to illustrate the significance of the sheer number of events and the facts pertinent to same.

Further, DecisionQuest did not bill for the "research and analysis" reflected in the timelines, as Plaintiff asserts. (Pl. Obj. 9-10). Indeed, UCMC provided DecisionQuest with the data points to include in the timeline, and DecisionQuest charged for the costs associated with creating and producing the illustrative demonstratives. (*See* e.g. Docket No. 284-1 p. 142 ("computer graphic design & layout, set style and layout three timelines [,] graphics consulting, *review client timeline entries*" (emphasis added)). And, the entries describing how the DecisionQuest consultants spent their time is detailed and spelled out in the invoice. *Id.*

Finally, UCMC should recover the cost of the timeline boards themselves. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 981 (N.D. Ill. 2010) (finding the "cost of actually preparing the exhibit itself" to be recoverable) (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000)). In *Cefalu*, the Seventh Circuit found that the "means of presentation" were not excluded from the definition of "exemplification" as long as they "furthered the illustrative purpose of the exhibit." 211 F.3d at 428 (allowing cost of multimedia system to display exhibits to jury). Here, UCMC used the boards in opening so that the jury could view them up close and, in particular for the PRS Residency timeline board, all entries therein at once, which best served the purpose of the timelines.[6] The costs of the timelines (boards included) should be awarded.

---

[6] Plaintiff must agree that the use of physical demonstratives is appropriate even in light of technology, as she chose to use a blown up calendar on an easel during a portion of her own case.

-9-

### 4. Electronic Discovery Costs

UCMC has sought costs for e-discovery as permitted by this Court's prior rulings and decisions of other relevant courts. The monetary value of the costs UCMC seeks for e-discovery pales in comparison to what UCMC in fact paid to conduct e-discovery and produce electronically stored information (ESI) responsive to Plaintiff's discovery requests. Despite Plaintiff's pleas to the contrary, the fact that the e-discovery costs constitute the "largest category" of costs sought by UCMC is irrelevant to the Court's consideration of whether those costs should be awarded. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 11-cv-2450, 2015 WL 351244, at *1 (N.D. Ill. Jan. 27, 2015) (noting that "[t]he largest component of Defendants' Bill of Costs is…related to e-discovery" and still awarding related costs). And, they should be.

First, David Siarny's affidavit spells out the costs incurred for tasks associated with converting ESI into a format that is readable and/or searchable, and the Courts in this Circuit have held that the cost of converting ESI into a readable format is recoverable by the prevailing party. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming the award of costs for converting data "into a readable format in response to plaintiffs' discovery requests"); *Bagwe*, 2015 WL 351244, at *6 (holding that converting documents and information into a readable format are "akin to providing photocopies of responsive documents to the requesting party."); *see also Chi. Bd. Options Exch., Inc.*, 2014 WL 125937, at *8-9 (awarding ESI conversion, OCR and bates labeling costs); Siarny Aff. ¶ 3(a)-(f) (Docket No. 284-1 p. 148-51). Indeed, UCMC *necessarily* incurred the costs associated with converting ESI into a readable format because Plaintiff's counsel (current and former) requested just that – that UCMC identify, review and produce ESI from a multitude of custodians identified by Plaintiff. (UCMC Memo Exhibit 4). Any contention by Plaintiff that UCMC did <u>not</u> necessarily incur the conversion

costs outlined in Exhibit F and the exhibits thereto should be rejected out of hand. (Pl. Obj. 11-12).

Plaintiff's specific contention that UCMC is not entitled to the over $11,000 in conversion costs associated with UOFC00001-000856091 is also specious. The "UOFC" numbers reflect the initial control numbers affixed by Advanced Discovery (AD) to the data uploaded to the AD e-discovery database and which were part of the universe of documents to be converted in order to make them readable. (Siarny Aff. ¶ 3(a), Exhibit A; Supp. Siarny Aff. ¶¶ 3, 4 (Exhibit I)). The fact that UCMC only produced 30,000 plus pages of documents (with the prefix UCMC) is irrelevant to this conversion cost, as converting the ESI into a readable format was necessary to determine which of the 800,000 plus documents were in fact to be produced. Those conversion costs are recoverable exemplification. *Bagwe*, 2015 WL 351244, at *6 (refusing to award only the cost of the thumb drive the electronic documents were produced on as "to award only the cost of the USB drive would be akin to awarding to the prevailing party only the cost of paper if photocopies of paper documents were provided"); *Allen v. City of Chi.*, No. 10 C 3183, 2016 WL 1070828, at *8 (N.D. Ill. Mar. 16, 2016) (citing *Intercont'l Great Brands LLC v. Kellog N. Am. Co.*, No. 13 C 321, 2016 WL 316865, at *6 (N.D. Ill. Jan. 26, 2016) (collecting cases) and quoting *Hecker*, 556 F.3d at 591).

UCMC's request for hosting charges is also reasonable. Indeed, as the numbers above show, UCMC had to host an enormous amount of data in order to convert the ESI into a readable format and/or to produce it. Absent the existence of the e-discovery systems and this hosting, UCMC would not have had a means by which it could in fact exemplify the ESI demanded by Plaintiff. *Cefalu*, 211 F.3d at 427-28 (means of exemplification included in "exemplification" definition). To be certain, Vedder's own Relativity records reflect that over 100 file types of

data are present on the Relativity system for this case; without hosting and conversion, a number of those files would not have been readable by counsel.[7] (Supp. Siarny Aff. ¶ 5). And, notably, Plaintiff's counsel was not required to host, search for, review or produce ESI from <u>any</u> custodian but her own client – she simply did not have to "maintain[] the same set of documents" as she claims. (Pl. Obj. 12). Further, Plaintiff's prior counsel (at least, at the outset), apparently had Plaintiff's husband identify and search for Plaintiff's responsive ESI himself, while UCMC was required to identify, review and produce the ESI of over 20 custodians. (Docket No. 285-4 pp. 2-8; Exhibit J hereto, Garcia Dep. pp. 16-17; UCMC Memo Exhibit 4). The hosting costs, therefore, should be awarded. *See Goldberg*, 2013 WL 4506071, at *7; *see also LG Electronics U.S.A., Inc.*, 2011 WL 5008425, at *8.

In addition, Plaintiff is incorrect that UCMC (a) cannot recover for the conversion and bates labeling/endorsement costs outlined in Mr. Siarny's initial affidavit and that it (b) failed to "segregate the line-item costs directly associated with 'exemplifying' the electronic documents in question. (Pl. Obj. 13). Again, the costs for conversion and bates labeling are recoverable. *Bagwe*, 2015 WL 351244, at *6; *see also Chi. Bd. Options Exch., Inc.*, 2014 WL 125937, at *8-9. Second, Mr. Siarny distinguished between which tasks in the AD invoices (attached to the Bill of Costs as part of the exhibits to Schedule F (Docket No. 284-1 pp. 153-181)) were for conversion, and which applied to bates labeling/endorsement. (Siarny Aff. ¶¶ 3, 4). UCMC then, in Schedule F, tallied up each conversion, endorsement and OCR charge (the last of which is also recoverable, *see* UCMC Memo 8-9), linking each to the description in the particular invoice.

---

[7] Many of the documents produced in this case were produced prior to 2015, as Plaintiff contends (Pl. Obj. 15). However, UCMC also produced documents and ESI thereafter which the parties agreed were fair game for the instant litigation and for which UCMC utilized the e-discovery systems for hosting.

-12-

### E. CONCLUSION

For the reasons stated above and previously set forth in UCMC's Memorandum in Support of its Bill of Costs, UCMC's Bill of Costs should be approved subject to the modifications requested herein.[8]

Dated: March 31, 2017

Respectfully submitted,

THE UNIVERSITY OF CHICAGO
MEDICAL CENTER


By:   s/ Elizabeth N. Hall
            One of Its Attorneys

Edward C. Jepson, Jr.
Elizabeth N. Hall
Emily C. Fess
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 (312) 609 7500

---

[8] To the extent necessary and appropriate, as determined by the Court, UCMC hereby requests leave to submit an Amended Bill of Costs and associated Schedules to reflect the modified amounts requested herein.

# **CERTIFICATE OF SERVICE**

I, the undersigned, certify that a true and correct copy of the foregoing DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS BILL OF COSTS was served on March 31, 2017 via the Court's CM/ECF system on the following:

Jamie S. Franklin
The Franklin Law Firm LLC
53 W. Jackson Boulevard, Suite 803
Chicago, IL 60604
jsf@thefranklinlawfirm.com

Cynthia H. Hyndman
Robinson, Curley & Clayton, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL  60606
chyndman@robinsoncurley.com

                                         s/ Elizabeth N. Hall
                                             Elizabeth N. Hall