IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. MARIA ARTUNDUAGA, | ) |
|           Plaintiff, | ) |
| v. | ) Case No. 12 C 8733 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, | ) |
|           Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Dr. Maria Artunduaga brought national origin discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against Defendant University of Chicago Medical Center ("UCMC"). After a nine-day jury trial, the jury returned a verdict in favor of Defendant UCMC. As the prevailing party, UCMC brought the present bill of costs pursuant to Federal Rule of Civil Procedure 54(d)(1). For the following reasons, the Court awards UCMC $75,383.94 in costs.

## BACKGROUND

Dr. Artunduaga was born and raised in Colombia, graduated from a Colombian medical school, practiced medicine in Colombia for three years, and completed a post-doctoral research fellowship at Harvard Medical School in 2011. In late June 2011, Dr. Artunduaga began working at Defendant UCMC as a resident in the Section of Plastic and Reconstructive Surgery ("PRS") – a residency that lasts six years. In 2011, Plaintiff signed a one-year residency contract that was subject to renewal in spring 2012. In this lawsuit, Dr. Artunduaga asserted that beginning in July 2011 she was subjected to discrimination at UCMC based on her national

origin. Further, Dr. Artunduaga alleged that she complained about this national origin discrimination to various individuals at UCMC. In mid-November 2011, UCMC placed Dr. Artunduaga on probation, and in March 2012, PRS faculty decided not to renew Dr. Artunduaga's one-year residency contract. UCMC denied that it subjected Dr. Artunduaga to any discrimination and argued that Dr. Artunduaga did not complain about national origin discrimination until after UCMC decided to terminate her from the residency program. The jury returned a verdict in UCMC's favor on all counts.

## LEGAL STANDARD

Rule 54(d)(1) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." *See* Fed.R.Civ.P. 54(d)(1); *see also Richardson v. City of Chicago,* 740 F.3d 1099, 1102 (7th Cir. 2014) ("Rule 54 entitles prevailing parties to recover their costs"). The list of recoverable costs pursuant to 28 U.S.C. § 1920, includes (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees under 28 U.S.C. § 1923, and (6) compensation for court-appointed experts and interpreters. *See Harney v. City of Chicago,* 702 F.3d 916, 927 (7th Cir. 2012). Rule 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party," *Myrick v. WellPoint, Inc.,* 764 F.3d 662, 666 (7th Cir. 2014), but gives "the district judge discretion to decide whether an award of costs is appropriate." *Chesemore v. Fenkell,* 829 F.3d 803, 816 (7th Cir. 2016). Taxing costs against the non-prevailing party requires two inquiries – whether the cost is recoverable and whether the amount assessed is reasonable. *See U.S. Neurosurgical, Inc. v. City of Chicago,* 572 F.3d 325, 333 (7th Cir. 2009); *Little v. Mitsubishi Motors N. Am., Inc.,* 514 F.3d 699, 702 (7th Cir. 2008)

2

(per curiam). Also, "[a]ny party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 906 (7th Cir. 2009). District courts have considerable discretion in determining whether a particular cost is reasonable and necessary. *See Myrick,* 764 F.3d at 666; *U.S. Neurosurgical, Inc.,* 572 F.3d at 333.

## ANALYSIS

### I. Fees for Summons and Subpoena – 28 U.S.C. § 1920(1)

UCMC seeks $291.00 in costs associated with service fees pursuant to 28 U.S.C. § 1920(1). Service fees may not exceed the amount charged by the United States Marshal Service, which is $65.00 per hour, as well as any travel costs and out-of-pocket expenses. *See Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996); *see also* 28 C.F.R. § 0.114(a)(3) (establishing fees for service of summons). The first bill attached to Defendant's bill of costs is associated with the service of a subpoena on Dr. Bezalel Dantz and reflects that service was attempted twice charging $59 for each attempt – along with $39.00 for "immediate rush service" – totaling $98.00 for each attempt. The Court reduces the amount to $65.00 per attempt for a total of $130.00 for the service associated with Dr. Dantz's subpoena. The next invoice indicates that $95.00 was billed for a subpoena served on Dr. Jennifer Velander. The Court reduces this amount to $65.00 pursuant to 28 C.F.R. § 0.114(a)(3). The Court therefore awards a total of $195.00 for costs under 28 U.S.C. § 1920(1).

### II. Court Reporting Fees – 28 U.S.C. § 1920(2)

Next, UCMC requests costs for court reporting fees pursuant to § 1920(2), which "allows parties to recover only the transcript expenses that can be considered reasonable, that is, '[f]ees

for ... transcripts necessarily obtained for use in the case.'" *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014) (quoting 28 U.S.C. § 1920(2)). Under Northern District of Illinois Local Rule 54.1(b), transcript costs shall not exceed the regular copy rate established by the United States Judicial Conference. *See* N.D.Ill.L.R. 54.1(b). Judicial Conference rates for depositions are $3.65 per page for ordinary transcripts, $4.25 per page for fourteen day transcripts, $4.85 per page for seven day transcripts, $6.05 per page for daily transcripts, $7.25 per page for hourly transcripts, and $.90 per copy. In addition, attendance fees are recoverable under § 1920(2). *See Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 727 (7th Cir. 2008). These fees include $110.00 for one half-day (four hours or less) and $220.00 for a full day. *See Gracia v. Sigmatron Int'l, Inc.,* No. 11 C 7604, 2016 WL 6892861, at *6 (N.D. Ill. Nov. 23, 2016).

    **A.**    **Deposition Transcripts and Court Reporter Appearance Fees**

UCMC seeks to recover the costs of stenographic transcripts, and, after considering Plaintiff's objections, UCMC adjusted the costs of certain transcripts that were copies and not originals. Accordingly, Plaintiff's remaining challenges as to stenographic transcript costs concern the expedited delivery of her 2016 deposition and the expedited delivery for Dr. Killingsworth's deposition.[1] In its legal memoranda, UCMC sufficiently explains that an expedited delivery was necessary for Dr. Killingsworth's deposition because its own expert disclosures were due three weeks after Dr. Killingsworth's deposition. As for Plaintiff's 2016 deposition, UCMC offers no explanation for the expedited delivery charges, and therefore, the

---

[1] UCMC adjusted the expedited delivery charges for Ricardo Garcia's and Dr. Verlander's depositions.

Court deducts $232.80 from the requested $940.90 for a total of $708.10 for Dr. Artunduaga's January 8, 2016 deposition. The Court awards UCMC a total of $9,313.10 for stenographic deposition charges after considering UCMC's adjustments made in its reply brief. Also in its reply brief, UCMC adjusted the court reporter fees to reflect half day costs at $110.00, and thus the Court deducts $591.88 from the original charge of $1,251.88 and awards $660.00 in court reporter fees.

**B.    Videotaped Transcripts**

Also, UCMC moves for costs related to videotaped depositions. Under § 1920(2), costs for both videotaped and stenographic transcripts may be taxed to the losing party if the video and transcript are necessarily obtained for use in the case. *See Little*, 514 F.3d at 702; *see, e.g., National Diamond Syndicate, Inc. v. Flanders Diamond USA, Inc.*, No. 00 C 6402, 2004 WL 1557765, at *2 (N.D. Ill. July 8, 2004). A prevailing party may establish the reasonableness of obtaining a videotaped deposition if there is an uncertainty of whether the witness will appear for trial. *See Oleksy v. Gen. Elec. Co.*, No. 06 C 1245, 2016 WL 7217725, at *6 (N.D. Ill. Dec. 12, 2016).

Here, Defendant explains why it seeks costs for certain video depositions, including that it did not order the video depositions of Dr. Lusardi and Dr. Fleming until Plaintiff decided to call them by video at trial. Further, Defendant was unsure whether Joly Raju or Antonio Copete would be called at trial. Therefore, the costs associated with these videotaped depositions are recoverable. As to the video depositions of Dr. Song, Plaintiff, Dr. Killingsworth, and Dr. Dantz, Defendant fails to explain why both stenographic and videotaped depositions were "necessarily obtained for use in the case." The Court does not award costs for these video

5

depositions and deducts $6,549.20 for these costs. Consequently, the Court awards UCMC $3,259.13 in costs associated with videotaped depositions.

### C. Daily Trial Transcripts

UCMC also claims $9,475.55 for daily trial transcripts. "Costs associated with daily trial transcripts may be recovered where the trial is 'lengthy and complex.'" *Rawal v. United Air Lines, Inc.,* No. 07 C 5561, 2012 WL 581146, at *2 (N.D. Ill. Feb. 22, 2012). On the other hand, "[c]osts for daily transcripts generally are not reasonably necessary, and thus may not be recovered, where the case is short and simple." *Id.* Plaintiff argues that this case was a simple, straight-forward employment discrimination case – although approximately twenty witnesses testified during the nine-day trial. Under the circumstances, including the length of the trial and the importance of witness credibility, Defendant's costs associated with the daily trial transcripts are recoverable and reasonable. *See Ayala v. Rosales,* No. 13 C 4425, 2016 WL 2659553, at *6 (N.D. Ill. May 9, 2016). The Court awards $9,475.55 as requested.

### III. Witness Fees – 28 U.S.C. § 1920(3)

UCMC requests $2,340.00 for the 5.2 hours defense expert Dr. Malcom Cohen prepared for his deposition pursuant to Rule 26(b)(4). Courts in this district have concluded that costs associated with the time spent preparing for a deposition are recoverable. *See Waters v. City of Chicago,* 526 F.Supp.2d 899, 900-01 (N.D. Ill. 2007); *Profile Prod. v. Soil Mgmt. Tech., Inc.,* 155 F.Supp.2d 880, 886 (N.D. Ill. 2001). In this district, courts look to the preparation time in relation to the deposition time to determine whether the preparation time was reasonable. *See Chicago United Indus., Ltd. v. City of Chicago,* No. 05 C 5011, 2011 WL 4383007, at * 2 (N.D. Ill. Sept. 20, 2011) (collecting cases). "These courts have concluded that a ratio of 3 to 1

preparation to deposition time is reasonable in complex cases[.]" *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *5 (N.D. Ill. Oct. 20, 2011).

Dr. Cohen spent 5.2 hours for a 3.33 hour deposition, which falls well within the 3 to 1 ratio. Further, the time Dr. Cohen spent in preparation of his deposition was reasonable based on the complexity of the damages calculations and his detailed rebuttal to Plaintiff's damages expert Dr. Mark Killingsworth. The basic proposition under Rule 26(b)(4) "is relatively straightforward – a party that takes advantage of the opportunity afforded by Rule 26(b) [] to prepare a more forceful cross–examination should pay the expert's charges for submitting to this examination." 8 Wright, Miller, and Marcus, Federal Practice & Procedure § 2034. The Court therefore awards the full amount of $2,340.00 for Dr. Cohen's deposition preparation.

## IV.     Exemplification and Photocopying Costs – 28 U.S.C. § 1920(4)

Next, Defendant seeks a total of $183,122.33 in photocopying and exemplification costs pursuant to § 1920(4), which allows the Court to tax as costs "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(4). Courts interpret § 1920(4) to mean that photocopying charges for discovery and court copies are recoverable, but copying charges made for attorney convenience are not. *See Montanez,* 755 F.3d at 558; *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000). "The district court has discretion to determine which copies were necessary." *Montanez,* 755 F.3d at 558.

### A.     Photocopying Costs

First, UCMC requests $4,072.92 in photocopying costs, which reflects two copies of its pleadings, (for UCMC/the Court) and discovery requests, responses, subpoenas and deposition

7

notices (for UCMC, Plaintiff and/or the witness). In addition, UCMC seeks the costs of two copies (for UCMC/Court) of each deposition transcript that included trial designations or that were used to impeach (Ricardo Garcia and Plaintiff), and one copy of every other transcript that UCMC's counsel used during the case to prepare for summary judgment and/or witness testimony, to have present at trial for possible impeachment and refreshing recollection, and/or for trial arguments. Last, UCMC requests costs for one copy of Plaintiff's trial exhibits (used by UCMC at trial), two copies of UCMC's exhibits and the joint exhibits (for UCMC/Court), and one copy of the admitted UCMC and joint exhibits (for the jury).

Plaintiff takes issue with the fact that Defendant made photocopies for itself asserting that these copies were merely for attorney convenience. Despite this argument, "[t]ypically, litigation requires one copy for the defendant, one copy for the plaintiff, and one copy for the court." *Harkins v. Riverboat Servs., Inc.,* 286 F. Supp. 2d 976, 983 (N.D. Ill. 2003). Indeed, it is not unusual for courts to tax as costs two sets of photocopies – one for each side's lawyers. *See Kulumani,* 224 F.3d at 685 ("Two copies of every document filed with the court or provided to opposing counsel makes sense; it is easy to see why each is useful."). Therefore, Plaintiff's argument is without merit.

Further, UCMC agrees to withdraw its request of $2,143.05 associated with photocopying its document production for trial. The Court therefore awards Defendant $1,929.87 in costs associated with photocopying.

**B.      Trial Technology**

Further, UCMC seeks $12,460.00 for the services provided by Michael Newell of Legal Visual Services under § 1920(4). Mr. Newell provided technology assistance to UCMC before

8

and during the jury trial, namely, database management, video editing, and in-court trial technology assistance. Unlike the Court's decision in *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.,* No. 08 C 0242, 2011 WL 5008425, at *7 (N.D. Ill. Oct. 20, 2011), in which the exemplification costs reflected a multi-media presentation explaining complex, technical issues, UCMC seeks "exemplification costs" to pay for an additional staff member to assist at trial. Mr. Newell, for example, assisted counsel with presenting evidence at trial and billed such tasks as "legal support" – work that is usually performed by counsel, paralegals, or law firm staff. The Court will not award costs for this work. Mr. Newell's video-editing, however, is reasonable and recoverable because not only did UCMC present the videos at trial, but courts in this district have awarded costs for preparing video depositions as such. *See Stollings v. Ryobi Techs., Inc.,* No. 08 C 4006, 2015 WL 4100479, at *5 (N.D. Ill. July 6, 2015). The Court therefore awards Defendant $510.00 for the six hours for video editing provided by Mr. Newell.

### C. Demonstrative Exhibits

In addition, UCMC asks for $5,577.50 associated with the demonstrative timelines shown to the jury during opening statements and closing arguments that visually demonstrated the series of events relevant to Plaintiff's claims. As the Seventh Circuit teaches:

> Among the factors that the judge might consider in evaluating the necessity of a particular type of exemplification is whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed. In other words, was the exemplification vital to the presentation of the information, or was it merely a convenience or, worse, an extravagance?

*Cefalu v. Village of Elk Grove,* 211 F.3d 416, 428-29 (7th Cir. 2000).

Plaintiff contends that the Court should reject the entire amount requested because the timelines were purely argumentative. *See Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*,

873 F. Supp. 2d 939, 949 (N.D. Ill. 2012) ("demonstrative materials that merely illustrate expert testimony, other evidence or argumentative matters are not taxable."). Although the timelines were used during closing arguments, they were not argumentative on their face. Rather, the timelines aided the jury's understanding of the temporal issues in this matter. Nevertheless, Plaintiff also asserts that the timelines were not necessary because there were no difficult or complex technical matters for the jury to absorb. On the contrary, the jury trial lasted nine days, included over twenty witnesses, and the parties relied upon countless exhibits in presenting their case. The timelines provided a helpful tool for the jury to put the events into context. *See Cefalu,* 211 F.3d at 428.

Turning to the actual charges, according to the invoice provided by Defendant, $4,037.50 of these charges reflect the computer and graphic design and layout, whereas $1,540.00 of the costs were for the actual exhibit boards. Plaintiff argues that the per hour rates for the graphic design work were unreasonable, but fails to suggest a reasonable hourly rate for these services. Plaintiff also argues that the $1,540.00 for the boards themselves is unreasonable because counsel should have presented the information on the video screens in the courtroom. The "means of presentation," however, are recoverable as long as they further "the illustrative purpose of the exhibit." *Id.*; *Armstrong v. BNSF Ry. Co.*, No. 12 C 7962, 2016 WL 7240751, at *10 (N.D. Ill. Dec. 15, 2016). Defendant explains that it used boards so that the jury could see the details of the timelines up close, which supports counsel's choice of boards over the video screens. As such, the Court awards Defendant $5,577.50 for the demonstrative timelines.

### D. Electronic Discovery Costs

"[T]he Seventh Circuit has not fully addressed the extent to which e-discovery costs may be taxed against a non-prevailing party under 28 U.S.C. § 1920." *Allen v. City of Chicago,* No. 10 C 3183, 2016 WL 1070828, at *8 (N.D. Ill. Mar. 16, 2016). Courts in this district have concluded that "ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF (if agreed upon by the parties to be the production format), are compensable under § 1920(4)." *Massuda v. Panda Express, Inc.,* No. 12 CV 9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) (collecting cases); *see also Rawal,* 2012 WL 581146, at *2 ("Cost[s] may be awarded under § 1920(4) for electronically scanning and processing documents because the 'electronic scanning of documents is the modern-day equivalent of 'exemplification and copies of paper.'"); *see also Hecker v. Deere & Co.,* 556 F.3d 575, 591 (7th Cir. 2009) (Prevailing parties may recover "costs for converting computer data into a readable format in response to [a] discovery request."). On the other hand, costs related to the "gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to 'making copies" and therefore, are not compensable. *Massuda*, 2014 WL 148723, at *6 (quotation omitted).

#### 1. Monthly Hosting Charges

UCMC provides the Court with a schedule of its electronic discovery costs, which includes monthly hosting charges in the total amount of $118,498.15. Hosting charges reflect the fees for storing electronic documents on a third-party server. As discussed directly above, under § 1920(4), "a party may not recover electronic discovery costs unless the party can show

that those costs were tantamount to 'making copies' and were "reasonable and necessary.'" *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.,* No. 13 C 321, 2016 WL 316865, at *7 (N.D. Ill. Jan. 26, 2016). Therefore, "costs may be recoverable only if hosting amounted to 'copying' of ESI for production." *Massuda,* 2014 WL 148723, at *6.

Here, UCMC provides a chart listing two vendors, Advanced Discovery and Relativity, and the costs associated with hosting. The chart separates out the costs for the conversion of data – costs that are recoverable under § 1920(4) – as discussed below. *See Rawal,* 2012 WL 581146, at *2. Defendant also provides invoices for the "hosting" charges, which describe the costs as monthly hosting or monthly storage. Without more, UCMC has not demonstrated that the "hosting costs" were anything more than storage on its vendors' servers. As such, the Court will not award the hosting charges of $118,498.15. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* No. 11 C 2450, 2015 WL 351244, at *6 (N.D. Ill. Jan. 27, 2015) ("e-discovery costs are recoverable only when they are clear analogues of copying costs"); *see also Massuda,* 2014 WL 148723, at *6 ("§ 1920(4), for better or worse, is not concerned with attorney efficiency or convenience").[2]

---

[2] Since the Court last determined whether hosting costs were allowable under Rule 54(d)(1), the law is more fully developed in this area. *See, e.g., Intercontinental Great Brands LLC v. Kellogg N. Am. Co.,* No. 13 C 321, 2016 WL 316865 (N.D. Ill. Jan. 26, 2016); *Massuda v. Panda Express, Inc.,* No. 12 CV 9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014). Indeed, in one of the Court's earlier decisions, the Court recognized that "there is scant legal authority in this circuit and district giving litigants guidance in seeking" electronic discovery costs. *Goldberg v. 401 N. Wabash Venture LLC,* No. 09 C 6455, 2013 WL 4506071, at *7 (N.D. Ill. Aug. 23, 2013).

### 2. Conversion Costs

Furthermore, Defendant seeks $39,570.00 in costs associated with scanning or otherwise converting files into an electronic version, which are costs that are recoverable. *See Massuda*, 2014 WL 148723, at *6. UCMC provides the affidavit of counsel's eDiscovery manager who explains in detail how these costs were incurred for tasks associated with converting ESI into a format that is readable and/or searchable. Courts in this district have concluded that any such costs are recoverable. *See Bagwe,* 2015 WL 351244, at *7 ("Costs for 'exemplification and the costs of making copies' through photocopying and the conversion of ESI into a readable format are two sides of the same coin: namely, the pre-and-post digital era approach to 'copying,' or creating readable documents that may be transmitted to the party requesting the information."). Plaintiff's argument that UCMC only produced approximately 30,000 documents out of the 800,000 that were converted is of no moment because it was necessary to convert all of the documents before counsel could determine which documents should be produced. *See id.* at 6 ("to award only the cost of the USB drive would be akin to awarding to the prevailing party only the cost of paper if photocopies of paper documents were provided."). Because UCMC has established that the conversion costs were reasonable and necessary, the Court awards it $39,570.00 in conversion costs.

### 3. Bates Labeling Costs

Next, Defendant requests $584.73 in costs associated with Bates-labeling, which is "generally considered a necessary and taxable expense in this district." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.,* 52 F. Supp. 3d 893, 903 (N.D. Ill. 2014) (collecting cases). As such, the Court awards this $584.73 cost.

### 4. OCR Costs

Defendant also seeks costs associated with adding optical character recognition ("OCR") to the digital files in the amount of $1,848.36. Because this process is fundamental to ensuring that the digital documents were readable and searchable, the Court awards these costs. *See Hecker,* 556 F.3d at 591; *CBOE v. Int'l Sec. Exch., LLC,* No. 07 CV 623, 2014 WL 125937, at *9 (N.D. Ill. Jan. 14, 2014) (prevailing party "may recover all of its conversion costs and associated costs (making files readable through optical character recognition, scanning, creating CD–Roms, and associated activities).").

## V. Other Costs

Last, UCMC asks for $120.70 associated with parking and transportation costs for certain deponents. These costs are recoverable as witness fees pursuant to § 1920(3) and 28 U.S.C. § 1821(c). The Court therefore awards $120.70 in travel costs.

### CONCLUSION

For the these reasons, the Court awards Defendant $75,383.94 in costs under Rule 54(d)(1).

**Date:** April 13, 2017

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**